The Honorable James L. Robart

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| JANE AND JOHN DOES 1-10, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF WASHINGTON, a Washington public corporation; DAVID DALEIDEN, and individual; and ZACHARY FREEMAN, an individual,<br><br>Defendants. | No. 2:16-cv-01212<br><br>BRIEF IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>NOTED FOR: August 26, 2016<br><br>ORAL ARGUMENT REQUESTED |

Defendant David Daleiden respectfully opposes Plaintiffs' motion for class certification. Plaintiffs propose a class consisting of: "All individuals whose names and/or personal identifying information (work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by the UW that are related to fetal tissue or donations." Doc. No. 16, Mtn for Class Certification ("MCC"), 2:20-22; *see also* Doc. No. 23, Second Amended Complaint ("SAC"), 6:6-9 (same definition).

"A district court may certify a class only if all of the requirements of Federal Rule of Civil Procedure 23(a) are met, including '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 631 (W.D. Wash. 2011) (quoting Fed. R. Civ. P. 23(a)). "The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). "In addition to meeting the Rule 23(a) prerequisites, the party seeking class certification must also fall into one of the three categories under Rule 23(b)." *Id.* at 632. A party seeking class certification "must satisfy through evidentiary proof at least one of Rule 23(b)'s provisions." *Comcast Corp. v. Behrand*, 133 S. Ct. 1426, 1432 (2013). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

As described below, Plaintiffs cannot satisfy the "commonality" or "typicality" prongs of the Rule 23(a) inquiry, and thus their motion for class certification must be denied. Moreover, Plaintiffs have not established that their proposed class action is proper under any subsection of Rule 23(b). The Court should thus deny Plaintiffs' Motion for Class Certification as a matter of law, or in the alternative, the Court should grant Defendant targeted discovery on the Motion. And, regardless of discovery, Plaintiffs have advanced a defective construction of the proposed class here, in a way that sweeps in numerous individuals who have no standing or injury. Finally, as this Court's jurisdiction has been challenged by Defendant, those jurisdictional issues should be addressed prior to adjudicating this Motion.

**I. With Regard to Plaintiffs' Constitutional Claims, Plaintiffs' Proposed Class Cannot Satisfy the "Commonality" Requirement of Rule 23(a), Because the Resolution of Each Class Member's Claim Would Require Unique and Particularized Factual Determinations.**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (quotation omitted). Rather, "[t]heir claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.  This inquiry "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (quotation omitted).[1]  "Courts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." *Stone v. Advance Am.*, 278 F.R.D. 562, 569 (S.D. Cal. 2011) (quotation omitted).

Here, Plaintiffs have failed to establish the commonality required to satisfy Rule 23(a). The very nature of the privacy claims at issue here require highly individualized, plaintiff-specific analysis that makes it impossible to resolve a common question "that is central to the validity of each of one the claims in one strike." *Wal-Mart*, 564 U.S. at 350.  In constitutional privacy claims involving the disclosure of information in public records,[2] the Court must

---

[1] Plaintiffs claim that "[t]his requirement is 'construed permissively' and poses a 'limited burden' because it 'only requires a single significant question of fact.'" Doc. 16, at 5 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs' selective quotations from a pre-*Wal-Mart* case lack merit.  As the Supreme Court explained in *Wal-Mart*, the commonality inquiry involves a "rigorous analysis." *Wal-Mart*, 564 U.S. at 351.  Whatever permissiveness might have predated *Wal-Mart*, the Supreme Court has made clear that courts must apply "rigorous analysis" when considering whether plaintiffs have established commonality. *See Comcast*, 133 S. Ct. at 1432.

[2] Defendant does not concede that any such constitutional right exists.  The Supreme Court has called the very existence of such a right into question. *See NASA v. Nelson*, 562 U.S. 134, 146-47 (2011) (declining to decide whether such a right exists, but noting that the Court had not hinted at the existence of such a right since "the waning days of October Term 1976"); *id.* at

"engage in the delicate task of weighing competing interests to determine whether the government may properly disclose private information." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) (rejecting constitutional privacy challenge to law requiring public disclosure of the social security numbers of persons preparing bankruptcy petitions). This "delicate" balancing of interests almost exclusively involves factors that will vary significantly among members of the putative class here. *See id.* Resolving these claims will depend almost entirely "on factual determinations that will be different for each class plaintiff," making class certification improper. *Stone*, 278 F.R.D. at 569.

For example, the Court must consider the specific information contained in the documents sought to be released. *Id.*; *see also Woodland v. City of Houston*, 940 F.2d 134, 139 (5th Cir. 1991) (holding that constitutional privacy claim required consideration of specific "factual questions, such as what questions were asked during the named plaintiffs' polygraph tests"). This factor likely will differ for every single putative class member, because the content of each document—many of which may be email threads—will inevitably vary significantly among documents. This is not a situation in which every putative class member faced the public disclosure of precisely the same information. *Compare Crawford*, 194 F.3d at 959 (considering a privacy challenge to disclosure of social security numbers). Instead, the Court will need to

---

162 (Scalia, J., concurring in the judgment) (concluding that "there is no constitutional right to informational privacy"); *see also, e.g.*, *Am. Fed'n of Gov't Employees v. Dep't of Housing & Urban Dev.*, 118 F.3d 786, 791 (D.C. Cir. 1997) ("We begin our analysis by expressing grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information."). The Ninth Circuit has not revisited the existence of this right since *Nelson*. In addition, the informational-privacy rights under the Washington Constitution are identical to those under the United States Constitution. *See In re Meyer*, 142 Wash.2d 608, 619-20 (2001) ("[T]he Washington Constitution provides no more protection than the federal constitution in the context of the interest in confidentiality, or the nondisclosure of personal information. . . . Thus, the right of privacy guaranteed by the Washington Constitution in this setting has the same boundaries as that guaranteed by the federal constitution."). Moreover, such a right cannot plausibly be asserted with respect to information that Plaintiffs voluntarily generated by doing business with an entity whom ***they knew or should have known was subject to open-records requests***. Assuming such a constitutional right exists, however, it is not amenable to class adjudication in this case for the reasons stated herein.

DEFENDANT DALEIDEN'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -- *Page 4 of 18*

*SONKIN & SCHREMPP, PLLC*
12715 Bel Red Road #150
Bellevue  WA  98005
Telephone  425-289-3440

separately consider each email or document relating to each class member to assess the nature of information disclosed and the privacy interest asserted as to such information. Only after such a fact-intensive and individualized analysis can the Court conduct the "delicate" balancing of interests necessary for constitutional informational-privacy claims. *See Crawford*, 194 F.3d at 959. Given that each putative class member's claim will depend on the outcome of this balancing test *as it relates specifically to the documents implicating him or her*, it is impossible to conclude that "[t]heir claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Similarly, the Court must consider "the potential for harm in any subsequent nonconsensual disclosure." *Crawford*, 194 F.3d at 959. This factor, too, will vary significantly among members of the putative class. Plaintiffs rely primarily on the risk of physical and emotional harms that they speculate will be caused by third parties if their identities become publicly known. *See, e.g.*, Doc. 6, ¶¶ 15-16; Doc. 7, ¶ 14; Doc. 8, ¶¶ 12-16. To the extent that consideration of such risks involves anything more than mere speculation, it will entail a highly and necessarily individualized analysis. In a related context, the Fifth Circuit explained that "if the merits of each class member's . . . claims depends on an individualized inquiry regarding the harm or risk of harm experienced by each class member from the State's practices, then 'dissimilarities within the proposed class' would appear to prevent the class claims from asserting a common question of law that 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 843 (5th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). Likewise, in this case, the harm-related individualized inquiries that the Court would need to conduct to adjudicate these privacy claims defeat Plaintiffs' claim of commonality. For example, if the documents in question merely copy an individual on an email regarding several topics, only one of which implicates fetal-tissue

procurement, there is an extremely low likelihood that this information would inflame any third parties.  But making such an assessment requires an individualized analysis for each putative class member, taking into account precisely what the documents involving that putative class member say.  This sort of inquiry plainly is not one "that is capable of classwide resolution," such that it would resolve "the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  Moreover, the putative class members' specific positions and situations may also affect the likelihood that they will experience harm from any disclosures.  Plaintiffs plainly cannot satisfy the commonality requirement of Rule 23(a).

Moreover, certain individuals' involvement in fetal-tissue research has been widely and publicly reported.  Most importantly, the eight individuals directly implicated by Defendant's public-records request are all widely known for their involvement in fetal-tissue procurement and related matters.  *See* Declaration of David Daleiden, Doc. 50-1, ¶¶ 28-39 (citing publicly available sources identifying these eight individuals); *see also, e.g.*, Scott Sunde, *UW Lab in Eye of Fetal-Research Storm*, Seattle Post-Intelligencer (Aug. 19, 2001) (noting Alan Fantel's involvement in controversial fetal-tissue research); Nov. 12, 2015 Memorandum to Attorney General Bob Ferguson (identifying Karl Eastlund and Ian Glass as being involved with fetal-tissue procurement in the State of Washington).  These individuals' privacy claims will differ substantially from those of putative class members whose involvement with fetal-tissue procurement is not similarly well-known.  "[T]he interests in privacy fade when the information involved already appears on the public record."  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975).

As yet another example of the lack of commonality, the Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," especially where that third party is *the government*.  *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *see also, e.g.*, *United States v. Miller*, 425 U.S. 435, 443 (1976); *see also Nelson v. NASA*, 568 F.3d 1028, 1044-45 (9th Cir. 2009) (en banc)

(Callahan, J., dissenting from denial of rehearing en banc) (collecting cases), *rev'd* by 562 U.S. 134.  It appears that many of the putative class members voluntarily disclosed their involvement in fetal-tissue research to the government, including some who proactively reached out to a state entity to establish ongoing business relationships.  Indeed, many of the putative class members may be state employees, who will have an even more diminished expectation of privacy in this context.  *See City of Ontario v. Quon*, 560 U.S. 746, 758 (2010) ("[C]ompliance with state open records laws . . . bear[s] on the legitimacy of a[] [public] employee's privacy expectation.").  In contrast, some persons may be named in the documents at issue without any affirmative conduct on their part, and without their knowledge.  These significant dissimilarities among putative class members and the respective extents of their legitimate expectations of privacy undermine any claim of commonality and "impede the generation of common answers" necessary to justify class treatment.  *Wal-Mart*, 564 U.S. at 351 (quotation omitted).

Plaintiffs' constitutional association claim similarly cannot satisfy Rule 23(a)'s commonality requirement.  Like informational-privacy claims, association claims involving the compelled disclosure of information about one's associates require courts to "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure, to determine whether the interest in disclosure outweighs the harm."  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2009) (quotations and internal citations omitted).[3]  Even assuming this claim could survive a motion to dismiss, as noted above, this fact-intensive balancing test will require the Court to consider each putative class member separately to determine whether or to what extent the contemplated disclosures will prevent them from associating with some groups.  *See id.*  The Court will also have to consider each

---

[3] Plaintiffs' association analysis relies heavily on *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000).  *See, e.g.*, Doc. 61, 7-8.  However, *Dale* addressed the impact of "forced inclusion of an unwanted person in a group" on associational interest.  530 U.S. at 648.  That analysis is inapposite here.  The associational claims here—that disclosure of certain information will chill constitutionally protected association—is more properly analyzed under the framework developed in *Perry* and in *NAACP v. Alabama*, 357 U.S. 449 (1958).

document separately to assess the importance of the information contained in those documents, and whether the benefit of disclosure outweighs whatever associational burden might flow from disclosure. *See id.* This individualized, fact-specific balancing plainly will not enable the Court to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Moreover, Plaintiffs have not identified any single group with which all putative class members currently associate but which they might be deterred from associating with in the future if the contemplated disclosures occur. If different putative class members' claims depend on association with different organizations or groups, this would result in yet another layer of disparities among putative class members making it impossible for the Court to resolve central elements of all class members' claims "in one stroke." *Id.* Thus, the association claim cannot satisfy Rule 23(a)'s commonality requirement.

In their motion for class certification, Plaintiffs largely ignore these critical considerations. Instead, they blithely assert that "[a]ll [putative class members] rely, at a minimum, on the right to privacy and association that would be violated should their personal identifying information be released in response to the Requests." Doc. 16, at 5. The Supreme Court has directly rejected the notion that such questions stated at this high level of generality can satisfy Rule 23(a)'s commonality requirement. To establish commonality, putative class members cannot "merely [assert] that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350. Here, Plaintiffs offer nothing more than the assertion that they have all suffered a violation of the same provision of law, that is, of the constitutional rights to privacy and association. This plainly does not suffice. *See id.* (explaining that the commonality requirement would not be satisfied where all class members claimed "that they have suffered a Title VII injury, or even a disparate-impact Title VII injury"). Because Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement, the Court should deny their motion for class certification. *Fosmire*, 277 F.R.D. at 631.

### II. With Regard to Plaintiffs' PRA Claim, Plaintiffs' Proposed Class Cannot Satisfy the Commonality or Typicality Requirements of Rule 23(a).

The nature of Plaintiffs' state-law Public Records Act ("PRA") claim similarly does not permit certification of the class proposed by Plaintiffs. First, Plaintiffs cannot satisfy the commonality requirement of Rule 23(a). The PRA prohibits disclosure of "personal information in files maintained for employees" only if the "disclosure would violate [the employees'] right to privacy." RCW 45.56.230(3). To determine whether a contemplated disclosure would violate a public employee's right to privacy, a court must consider the specific information to be disclosed in order to determine whether it implicates "matters concerning the private life" of the employee. *Predisik v. Spokane Sch. Dist. No. 81*, 182 Wash.2d 896, 904-05 (2015) (holding that investigation into public employee was subject to public disclosure under the PRA, and rejecting the claim that such an investigation fell within any "right to privacy").[4] Thus, to resolve Plaintiffs' PRA claim, the Court must review each document separately to assess whether it reveals any of the highly personal information that qualifies under the PRA's "right to privacy." *See id.* This highly individualized analysis cannot "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Instead, the Court will have to conduct a specific analysis for each member of the putative class. "[W]here the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff," class certification is improper. *Stone*, 278 F.R.D. at 569 (quotation omitted). Because the proposed class does not satisfy Rule 23(a)'s commonality

---

[4] Defendant disputes whether any of the contemplated disclosures would implicate the narrow class of highly personal matters that the Washington Supreme Court has held to fall within the scope of RCW 45.56.230(3). *See Predisik*, 182 Wash.2d at 905. For example, a matter that "arises exclusively from the employee's *public* employment" does not fall within the "right to privacy" under the PRA. *Id.* (emphasis in original). Here, there is no indication that any of the contemplated disclosures involve any information other than information that arises from the employees' public employment. "[T]he PRA will not protect everything that an individual would prefer to keep private." *Id.*

DEFENDANT DALEIDEN'S BRIEF IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION -- *Page 9 of 18*

*SONKIN & SCHREMPP, PLLC*
12715 Bel Red Road #150
Bellevue WA  98005
Telephone  425-289-3440

requirement, the Court should deny Plaintiffs' Motion for Class Certification. *Fosmire*, 277 F.R.D. at 631.

Moreover, it is unclear how many members of the putative class are actually public employees. To date, Plaintiffs have only identified three public employees who are members of the class—Does 2, 7, and 8. *See* Doc. 2, at 13. Because RCW 45.56.230(3) applies only to public employees, it would provide no basis for halting disclosure of information as to the numerous non-public-employee members of the putative class. To the extent that these other class members make any statutory claim at all, it is identical to the constitutional claims discussed in Part I above. *Cf. Roe v. Anderson*, No. 3:14-CV-05810 RBL, 2015 WL 4724739, at *3 (W.D. Wash. Aug. 10, 2015) (noting that the PRA does not permit disclosure of information whose disclosure would violate the state or federal Constitutions). And for the reasons stated in Part I, resolving such claims would necessitate highly individualized and fact-intensive analyses that make it impossible for Plaintiffs to satisfy Rule 23(a)'s commonality requirement.

Second, Plaintiffs also cannot satisfy Rule 23(a)'s typicality requirement. "A named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Fosmire*, 277 F.R.D. at 632. As noted above, three of the proposed class representatives are public employees. These individuals' PRA claims will rely primarily on statutory arguments, while the PRA claims of other class members will rely on arguments that merge into their constitutional arguments. *Cf. Roe*, 2015 WL 4724739, at *3. Thus, the public-employee class representatives will be occupied with matters unique to their own claims, making their claims atypical of the claims of other putative class members. *See Fosmire*, 277 F.R.D. at 632.[5]

---

[5] Does 9 and 10 also are not proper class representatives for any claims. Neither the Complaint nor any declaration provides information regarding these individuals necessary to establish that their claims are typical of those of other putative class members, or that they would adequately represent the putative class as a whole. *See* Fed. R. Civ. P. 23(a).

Because Plaintiffs cannot satisfy Rule 23(a), the Court should deny their motion for class certification. *Id.* at 631.

### III. Plaintiffs Have Not Shown That Their Putative Class Claims Fall within Rule 23(b)(2).

Beyond the shortcomings noted above, Plaintiffs also have failed to satisfy Rule 23(b). As noted above, "[i]n addition to meeting the Rule 23(a) prerequisites, the party seeking class certification must also fall into one of the three categories under Rule 23(b)." *Fosmire*, 277 F.R.D. at 632. In their Motion for Certification, Plaintiffs rely solely on Rule 23(b)(2).[6] As the Supreme Court stated in *Wal-Mart*, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful ***only as to all of the class members or as to none of them***." *Wal-Mart,* 564 U.S. at 360 (emphasis added). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Numerous aspects of Plaintiffs' requested relief fail this standard. As noted above, each putative class member's claim will depend on an individualized and fact-specific balancing of interests that will differ—often significantly—from person to person. It is quite likely that, even if some class members are entitled to some sort of relief, many others will be entitled to significantly different relief or no relief at all. Moreover, Plaintiffs do not seek redaction merely of specific information such as names, addresses, and phone numbers. Rather, they urge broad

---

[6] Plaintiffs assert in a footnote, without any argument or factual support, that "[t]he proposed Class could be certified under any of the Rule 23(b) class types." Doc. 16, at 7 n.2. This cursory and unsupported assertion does not suffice to establish that the putative class here satisfies the other portions of Rule 23(b). *See Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ."). Moreover, as described in Part I above, Plaintiffs have failed to establish the existence of common questions of law or fact that satisfy Rule 23(a)(2). If such common questions do not exist at all, then they plainly cannot "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Comcast*, 133 S. Ct. at 1432 ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").

redaction of all "personal identifying information"—an open-ended classification for which the Plaintiffs fail to provide any precise definition.[7]

Implementing an injunction requiring the redaction of "personal identifying information" will require separate review of every document to consider precisely what "personal identifying information" is disclosed in the document.  The Court would then need to assess the degree to which such information would enable a third party to divine the identity of the participants in the communication.  This inquiry will vary significantly among putative class members.  Even if one accepts Plaintiffs' evidently overbroad definition of "personal identifying information," its import will necessarily vary widely for individual class members.  For example, disclosure of institutional affiliation presents a greater risk of being "personally identifying" for individuals who work at single-member or tiny organizations than for those who work for international conglomerates.  To implement Plaintiffs' requested injunction, the Court will need to consider these and numerous similar individualized inquiries.

The Court cannot simply enter a single injunction that applies equally to all class members.  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360.  A proposed class action "does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and relief are made." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012).  Plaintiffs have not established—and *cannot* establish—that their putative class action satisfies Rule 23(b)(2).  Thus, the Court should deny their motion for class certification. *Fosmire*, 277 F.R.D. at 631.

---

[7] . Indeed, the PRA request at issue here does not seek names (save the names of eight well-known individuals) or personal contact information of any individuals, including direct work phone numbers, work e-mails, personal addresses, and personal cell phone numbers, but instead states that such information should be redacted. *See* Doc. No. 54, at 7-8; Doc. 44, at 3, 11-12; Wash. Rev. Code 42.56.070(1).

### IV. The Court Should Resolve Defendant's Motion to Dismiss Based on Subject-Matter Jurisdiction Prior to Resolving Class Certification.

Courts ordinarily should resolve challenges to their Article III jurisdiction before ruling on a motion for class certification. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 154 F. Supp.3d 918, 923 (N.D. Cal. 2015).[8] Defendant has filed a motion to dismiss Plaintiff's claims based on lack of subject-matter jurisdiction. *See* Doc. 49. The Court should "be sure of its own jurisdiction before" entertaining Plaintiffs' proposal for class adjudication. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). And because the Court lacks subject-matter jurisdiction over this case, *see* Doc. 49, the Court should dismiss Plaintiffs' claims without the need to reach the question of class certification.

### V. Plaintiffs' Proposed Class Is Impermissibly Overbroad.

Even if the Court were inclined to certify a class action in this case, the putative class proposed by Plaintiffs is plainly overbroad. Plaintiffs propose the following class:

> All individuals whose names and/or personal identifying information (work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by the UW that are related to fetal tissue research or donations.

Doc. 16, at 2. This proposed class is not limited to those individuals whose identities and other information is implicated by the records requests at issue here. Rather, the proposed class sweeps far more broadly, encompassing individuals whose names and identifying information appears only in documents *that have not been requested*. *See, e.g.*, Doc. 6, at 7 (Daleiden public-records request) (seeking "documents that relate to the purchase, transfer, or procurement of human fetal tissues, human fetal organs, and/or human fetal cell products"). This is plainly

---

[8] The exception to this general rule does not apply here. Where the court's jurisdiction itself depends on class certification—such as under the Class Action Fairness Act—courts may resolve the "logically antecedent" class-certification questions before considering other jurisdictional issues. *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp.3d 906, 923 (N.D. Cal. 2015). Here, the Court's subject-matter jurisdiction does not depend on whether the Court certifies Plaintiffs' proposed class.

DEFENDANT DALEIDEN'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -- *Page 13 of 18*

*SONKIN & SCHREMPP, PLLC*
*12715 Bel Red Road #150*
*Bellevue WA 98005*
*Telephone 425-289-3440*

improper. All members of a class must "suffer the same injury." *Wal-Mart*, 564 U.S. at 348 (quotation omitted).

And, the proposed class improperly hinges on the inclusion in the responsive documents the class members' "names and/or personal identifying information (work addresses, work or cell phone numbers, email addresses)," despite the fact that the names and personal contact information of any individuals—including direct work phone numbers, work e-mails, personal addresses, and personal cell phone numbers—are to be redacted in any production of responsive documents. *See supra*, at n.7.

Therefore, the proposed class includes numerous individuals who suffer *no injury at all*, let alone one identical to those of other class members. Even if the Court were to reject Defendant's legal arguments against class certification, the Court still should narrow the scope of the class to only those individuals whose personal identifying information, *not including their names and personal contact information*, appears in the records that Mr. Daleiden and Mr. Freeman requested and that the University intends to produce.

### VI. If the Court Does Not Rule that Class Certification Is Improper as a Matter of Law, It Should Order Targeted Class-Certification Discovery Before Ruling on the Motion for Class Certification.

In the alternative, if the Court does not conclude that class certification is improper as a matter of law, it should order targeted discovery on the issue of class certification before ruling on Plaintiffs' motion to certify the class.

Defendant has faced a number of moving targets in this case. Plaintiffs' theory of what information they believe needs to be redacted has shifted several times, and they have now indicated that they intend to file yet another (third) amended complaint, despite not having sought leave of Court to do so. *See* Doc. 61, at 3 n.1. Moreover, Defendant has been left almost entirely in the dark as to who might be a member of the putative class, and what information might be contained in the documents at issue here. Because Plaintiffs bear the burden of

DEFENDANT DALEIDEN'S BRIEF IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION -- *Page 14 of 18*

*SONKIN & SCHREMPP, PLLC*
12715 Bel Red Road #150
Bellevue  WA  98005
Telephone  425-289-3440

establishing the propriety of class certification, their failure to provide evidence clarifying these issues should result in the denial of class certification. *See Edwards*, 798 F.3d at 1177; *Comcast*, 133 S. Ct. at 1432. But if the Court decides that the foregoing arguments do not defeat class certification, then the Court should permit Defendant to conduct targeted discovery before the Court rules on the Motion for Class Certification.

LCR 23(i)(3) states that the Court may postpone class certification "pending discovery or such other preliminary procedures as appear appropriate." W.D. Wash. LCR 23(i)(3). "[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Here, as described in Parts I-III, the resolution of class members' claims will require highly individualized and fact-specific inquiries. If this fact does not warrant denial of class certification as a matter of law, then at a minimum Defendant should have the opportunity to investigate precisely how much the putative class members' situations vary, so that Defendant can address with even greater specificity the reasons why class certification is improper. If Plaintiffs' proposed class certification is not prima facie improper for the reasons stated in Parts I-III, then there may be a host of factual issues in dispute that are or may be relevant to class certification: for example, whether the proposed class representatives Does 1-10 include the eight publicly known individuals whose names Defendant specifically cited in his public records request and whose names he has sought to have exempted from redactions in the production from UW. *See, e.g.,* Doc. No. 54, at 8; Doc. No. 50-1, Declaration of David Daleiden, ¶¶26-39, Exhibits G, K-P (description of named individuals' public identification with abortion or fetal tissue research). Moreover, declarations have been filed by proposed class representatives Does 1-8, whose factual allegations may be subject to further discovery before class certification could be warranted. Doc. Nos. 6-13. And proposed class representatives Does 9 and 10 have not provided declarations, so Defendant is at a severe disadvantage to address

their suitability as class representatives, without discovery. If the Motion for Class Certification is not to be denied outright, Defendant is entitled to discovery regarding Plaintiffs' allegations of commonality and typicality, along with Plaintiffs' allegation that they have a sufficient number of proper class members to meet the numerosity requirement of federal law. Fed. R. Civ. P. 23(a).

Finally, postponing decision regarding the motion for class certification to permit targeted certification-related discovery would not prejudice Plaintiffs in any way. *See Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 135 (2d Cir. 2013) (holding that plaintiffs were not prejudiced by holding their motion for class certification in abeyance while the district court considered the merits of an affirmative defense that would affect the propriety of class certification). Permitting the parties to conduct targeted certification-related discovery prior to considering whether this action is appropriate for class certification will ensure that the rights of all parties are protected. This includes the right of putative class members who have not joined this case as named plaintiffs, and whose substantive rights will be adjudicated without their participation in this case if the Court grants the motion for class certification.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion for Class Certification, Doc. 16.

| | |
|---|---|
| Dated: August 15, 2016 | Respectfully submitted. |
| | /s/ Theresa Schrempp<br>THERESA SCHREMPP<br>SONKIN & SCHREMPP, PLLC<br>12715 Bel Red Road #150<br>Bellevue, Washington 98005<br>(206) 275-2870<br>theresas@lawyerseattle.com |
| | /s/ Peter Breen<br>PETER BREEN*<br>THOMAS BREJCHA*<br>THOMAS MORE SOCIETY<br>19 South LaSalle Street, Suite 603<br>Chicago, Illinois 60603<br>(312) 782-1680<br>pbreen@thomasmoresociety.org |
| | /s/ Jeffery Trissell<br>JEFFREY TRISSELL*<br>FREEDOM OF CONSCIENCE DEFENSE FUND<br>Post Office Box 9520<br>Rancho Santa Fe, California 92067<br>(858) 759-9948<br>jtrissell@limandri.com<br>*Attorneys for David Daleiden* |
| | * pro hac vice |

DEFENDANT DALEIDEN'S BRIEF IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION -- *Page 17 of 18*

*SONKIN & SCHREMPP, PLLC*
12715 Bel Red Road #150
Bellevue  WA  98005
Telephone  425-289-3440

CERTIFICATE OF SERVICE

I, Peter Breen, an attorney of record herein, certify that I served this document on all counsel of record via the District Court Clerk's CM/ECF system, on August 22, 2016.

/s/Peter Breen

DEFENDANT DALEIDEN'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -- *Page 18 of 18*

*SONKIN & SCHREMPP, PLLC*
*12715 Bel Red Road #150*
*Bellevue WA 98005*
*Telephone 425-289-3440*