1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  JANE DOES 1-10, et al.,                    CASE NO. C16-1212JLR

11                          Plaintiffs,        ORDER GRANTING MOTION
                                               FOR A PRELIMINARY
12              v.                             INJUNCTION AND DENYING
                                               MOTION TO FILE A
13  UNIVERSITY OF WASHINGTON, et              SUPPLEMENTAL PLEADING
    al.,
14
                            Defendants.
15
                                **I.  INTRODUCTION**
16
        Before the court are:  (1) Plaintiffs' motion for a preliminary injunction (TRO/PI
17
    Mot. (Dkt. # 2)) and (2) Defendant University of Washington's ("UW") motion for leave
18
    to file a one-page supplemental pleading in response to Plaintiffs' motion for a
19
    preliminary injunction (MFL (Dkt. # 58)).  The court has considered the motions, all of
20
    the parties' submissions related to the motions, other relevant portions of the record, and
21
22

ORDER- 1

the applicable law.  Being fully advised,[1] the court GRANTS Plaintiffs' motion for a preliminary injunction but narrows the scope of the preliminary injunction as compared to the temporary restraining order (TRO (Dkt. # 27)) and DENIES as moot UW's motion for leave to file a one-page supplemental pleading in response to Plaintiffs' motion for a preliminary injunction.

## II.  BACKGROUND

On February 9, 2016, Defendant David Daleiden issued a request to UW under Washington State's Public Records Act ("PRA"), RCW ch. 42.56, seeking to "inspect or obtain copies of all documents that relate to the **purchase, transfer, or procurement of human fetal tissue**s, human fetal organs, and/or human fetal cell products at the [UW] Birth Defects Research Laboratory from **2010 to present**."  (Power Decl. (Dkt. # 5) ¶ 4, Ex. C (bolding in original).)  On February 10, 2016, Defendant Zachary Freeman issued a similar PRA request to UW.  (*Id.* ¶ 6, Ex. E.)  Among other documents, these PRA requests sought communications between UW or its Birth Defects Research Laboratory,

---

[1] No party requested oral argument on either motion in a manner that comports to the court's Local Rules.  Under Local Civil Rule 7(b)(4), "[a] party desiring oral argument shall so indicate by including the words 'ORAL ARGUMENT REQUESTED' in the caption of its motion or responsive memorandum."  Local Rules W.D. Wash. LCR 7(b)(4).  In contravention of this Rule, Defendant David Daleiden filed a separate pleading requesting oral argument on Plaintiffs' motion for a preliminary injunction (Req. for Arg. (Dkt. # 56)) three days after he filed his responsive memorandum (Daleiden Resp. (Dkt. # 50)).  Thus, Mr. Daleiden's request is untimely and does not otherwise adhere to the court's Local Rules.  In any event, the parties have thoroughly briefed the issues (*see* PI Mot., Daleiden Resp., Freeman Resp. (Dkt. # 47); UW Resp. (Dkt. # 45); Pltf. Reply (Dkt. # 61)), and the court concludes that oral argument would not be helpful to its disposition of Plaintiffs' motion for a preliminary injunction, *see* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").  For these reasons, the court DENIES Mr. Daleiden's request for oral argument.

1    on the one hand, and Cedar River Clinics, Planned Parenthood of Greater Washington

2    and North Idaho, or certain individuals or employees of Cedar River and Planned

3    Parenthood, on the other hand.  (*Id.* at 1; *see also id.* ¶ 4, Ex. C at 1-2.)  Mr. Daleiden's

4    PRA request specifically lists the names of eight such individuals.  (*Id.* ¶ 4, Ex. C at 1-2.)

5        On July 21, 2016, UW notified Plaintiffs that absent a court order issued by

6    August 4, 2016, it would provide documents responsive to Mr. Daleiden's PRA request

7    without redaction at 12:00 p.m. on August 5, 2016.  (Does 1, 3-4, 7-8 Decls. (Dkt. ## 6,

8    8-9, 12-13) ¶ 3, Ex. A; Doe 5 Decl. (Dkt. # 10) ¶ 3; Does 6 Decl. (Dkt. # 11) ¶ 5, Ex. A.)

9    On July 26, 2016, UW issued a similar notice to Plaintiffs regarding Mr. Freeman's

10   request and indicated that, absent a court order, UW would provide responsive documents

11   without redaction on August 10, 2016.[2]  (Does 1, 3-4, 7 Decls. ¶ 4, Ex. B.)[3]

12       On August 3, 2016, Plaintiffs filed a complaint on behalf of a putative class

13   seeking to enjoin UW from issuing unredacted documents in response to the PRA

14   requests.  (Compl. (Dkt. # 1).)[4]  Plaintiffs object to disclosure of the requested documents

16   [2] Under RCW 42.56.540, "[a]n agency has the option of notifying persons named in the
17   record or to whom a record specifically pertains."

18   [3] Jane Doe 2 omitted exhibits from her declaration, but the other Doe declarations
     sufficiently demonstrate that UW issued similar letters to the individuals implicated in the
19   relevant PRA request.

20   [4] Plaintiffs also filed an amended complaint and a second amended complaint on August
     3, 2016.  (See FAC (Dkt. # 22); SAC.)  Plaintiffs' amended complaint amends allegations
     concerning jurisdiction and venue.  (*Compare* Compl. ¶¶ 17-18 (alleging jurisdiction under
21   RCW 2.08.010 and RCW 4.28.020 and venue under RCW 42.56.540), *with* FAC ¶¶ 17-18
     (alleging jurisdiction under 28 U.S.C. § 1331 and venue under 28 U.S.C. § 1391(b)(2)).)
22   Plaintiffs' second amended complaint corrects what appear to be typographical errors in
     paragraph 18 of the amended complaint relating to venue.  (*Compare* FAC ¶ 18, *with* SAC ¶ 18.)

1  in unredacted form because the documents include personally identifying information

2  such as direct work phone numbers, work emails, personal cell phone numbers, and other

3  information.  (*See* SAC at 1 ("Doe Plaintiffs . . . seek to have their personal identifying

4  information withheld to protect their safety and privacy."); *see also, e.g.*, Doe 5 Decl. ¶¶

5  4-5 ("Any email contacts I had with the [Birth Defects Research Laboratory] would have

6  highly personal information such as my name, email address, and phone number. . . . My

7  name, email address, and phone number are information that I try to keep private when

8  related to where I work.").)

9       On the same day that they filed suit, Plaintiffs filed a motion seeking both a

10  temporary restraining order ("TRO") and a preliminary injunction against disclosure of

11  the requested documents.[5]  (*See* TRO/PI Mot.)  In addition, Plaintiffs filed a motion for

12  class certification.  (*See* MFCC (Dkt. # 16).)  Plaintiffs ask the court to certify a class

13  consisting of "[a]ll individuals whose names and/or personal identifying information

14  (work addresses, work or cell phone numbers, email addresses) are contained in

15  documents prepared, owned, used, or retained by UW that are related to fetal tissue

16  research or donations."  (*Id.* at 2.)

17       On August 3, 2016, the court granted Plaintiffs' motion for a TRO but set the TRO

18  to expire on August 17, 2016, at 11:59 p.m.  (TRO (Dkt. # 27) at 7.)  The court restrained

19  UW "from releasing, altering, or disposing of the requested documents or disclosing the

20  _____

21       [5] On the same day, Plaintiffs also filed a motion to proceed in pseudonym. (MTPP (Dkt.
# 15).)  Defendants did not oppose the motion (*see generally* Dkt.), and the court granted it on
22  August 29, 2016 (8/29/16 Ord. (Dkt. # 68)).

1   personal identifying information of Plaintiffs pending further order from this court." (*Id.*

2   at 7.)  On August 17, 2016, the court extended the TRO "until such time as the court

3   resolves Plaintiffs' pending motion for a preliminary injunction." (8/17/16 Ord. (Dkt.

4   # 54) at 2.)  Plaintiffs' motion for a preliminary injunction is now pending before the

5   court.

6       Before the court could resolve Plaintiffs' motion for a preliminary injunction,

7   however, Mr. Daleiden filed a motion to dismiss for failure to state a claim and for lack

8   of subject matter jurisdiction. (*See* MTD (Dkt. # 49).)  On October 4, 2016, the court

9   granted Mr. Daleiden's motion and dismissed Plaintiffs' second amended complaint

10  without prejudice for lack of subject matter jurisdiction. (10/4/16 Order (Dkt. # 76) at

11  12-14.)  The court also granted Plaintiffs leave to file a third amended complaint that

12  remedied the jurisdictional deficiencies identified in the court's order. (*Id.* at 14-18.)

13  Plaintiffs timely filed their third amended complaint on October 18, 2016 (TAC (Dkt.

14  # 77)), and the court concludes that Plaintiffs' third amended complaint satisfies the

15  directives of its October 4, 2016, order with respect to subject matter jurisdiction.

16  Accordingly, the court now considers Plaintiffs' motion for a preliminary injunction and

17  UW's motion for leave to file a supplemental response to Plaintiffs' motion for a

18  preliminary injunction.

19  //

20  //

21  //

22  //

ORDER- 5

# III.  ANALYSIS

## A.  UW's Motion for Leave to File a Supplemental Response to Plaintiffs' Motion for Preliminary Injunction

Mr. Daleiden and UW both filed responses to Plaintiffs' motion for a preliminary injunction on August 15, 2016.  (*See* Daleiden Resp.; UW Resp.)  Mr. Daleiden devoted a section of his response to his argument that the court lacked subject matter jurisdiction and his assertion that UW was immune from suit under the Eleventh Amendment to the United States Constitution.  (Daleiden Resp. at 1, 4.)  Mr. Daleiden filed his response to Plaintiffs' motion for a preliminary injunction the same day as he filed his motion to dismiss for lack of subject matter jurisdiction.  (*See* MTD.)  The motion to dismiss addressed the same Eleventh Amendment issue that Mr. Daleiden raised in his response to Plaintiffs' motion for a preliminary injunction.  (*See id.* at 2-3.)

On August 18, 2016, UW filed a motion seeking leave to file a supplemental response to Plaintiffs' motion for a preliminary injunction to address the jurisdictional and Eleventh Amendment issues raised in Mr. Daleiden's response to Plaintiffs' motion for a preliminary injunction.  (*See* MFL.)  UW simultaneously filed its proposed supplemental response.  (UW Supp. Resp. (Dkt. # 59).)  Mr. Daleiden opposed UW's motion for leave.  (Daleiden Resp. to MFL (Dkt. # 62).)

UW's proposed supplemental response consists of one sentence:

> With regard to the jurisdictional issue raised by [Mr.] Daleiden . . . , [UW] does not object to this [c]ourt considering the issues of declaratory judgment and/or injunctive relief as raised by . . . Plaintiffs in their complaint and motions for a temporary restraining order and preliminary injunctive relief.

1    (*Id.* at 1-2.)  UW's single-sentence statement is substantively identical to statements in

2    UW's response to Mr. Daleiden's motion to dismiss.  (*See, e.g.*, UW Resp. to MTD (Dkt.

3    # 71) at 3 ("[UW] believe[s] that this [c]ourt is an appropriate forum for this action,

4    insofar as . . . Plaintiffs are arguing federal constitutional claims . . . and . . . [UW]

5    consents to jurisdiction of the federal court for purposes of considering the issues of

6    declaratory judgment and/or injunctive relief as raised by . . . Plaintiffs."), 4 ("[UW] . . .

7    consents to jurisdiction of the federal court for purposes of considering the issues of

8    declaratory judgment and/or injunctive relief as raised by . . . Plaintiffs.").)

9         In the factual background section of the court's order addressing subject matter

10   jurisdiction, the court acknowledged UW's supplemental response to Plaintiffs' motion

11   for a preliminary injunction.  (*See* 10/4/16 Order at 6.)  However, in its analysis of the

12   Eleventh Amendment issue, the court relied solely on UW's response to Mr. Daleiden's

13   motion to dismiss.  (*See id.* at 9, 12.)  The court has ruled on Mr. Daleiden's motion to

14   dismiss for lack of subject matter jurisdiction and dismissed Plaintiffs' second amended

15   complaint without prejudice and with leave to amend.  (*Id.* at 12-18.)  Plaintiffs timely

16   filed a third amended complaint that remedied the jurisdictional deficiencies identified in

17   the court's order.  (*See* TAC.)  Accordingly, UW's motion for leave to file a

18   supplemental response directed at that issue is now moot, and the court denies the motion

19   on that basis.

20        **B.  Plaintiffs' Motion for a Preliminary Injunction**

21        Now that the jurisdictional issues resolved (*see* 10/4/16 Order; TAC), the court

22   turns to Plaintiffs' motion for a preliminary injunction.

1

### 1.   Standards for a Issuing a Preliminary Injunction

2      Under the Federal Rules of Civil Procedure, a party seeking a preliminary

3 injunction must show:  (1) a likelihood of success on the merits; (2) that irreparable harm

4 is likely, not just possible, if the injunction is not granted; (3) that the balance of equities

5 tips in its favor; and (4) that an injunction is in the public interest.  *See* Fed. R. Civ. P. 65;

6 *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Doe v.*

7 *Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (applying the Federal Rule of Civil Procedure 65

8 standard to the review of a preliminary injunction issued to prevent disclosure pursuant to

9 the PRA), *judgment affirmed by John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).  When

10 there are "serious questions going to the merits and a balance of hardships that tips

11 sharply towards the plaintiff," the court may issue a preliminary injunction "so long as

12 the plaintiff also shows that there is a likelihood of irreparable injury and that the

13 injunction is in the public interest."  *Cottrell*, 632 F.3d at 1136.[6]

14 //

15 //

16 //

17 //

18 ───────────────

19      [6] The standard for issuing a preliminary injunction under federal law is largely consistent with the standard for issuing an injunction under the PRA.  Under the PRA, the court may issue

20 an injunction prohibiting disclosure if the court "finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would

21 substantially and irreparably damage vital governmental functions."  RCW 42.56.540.  The court concludes that the outcome of this motion would be no different if the court were to consider it

22 under the standard stated in RCW 42.56.540.

ORDER- 8

1       **2. Likelihood of Success on the Merits**

2       Under the PRA, UW, as a state agency,[7] is under a general mandate to permit

3 public inspection and copying of public records. *Resident Action Council v. Seattle*

4 *Hous. Auth.*, 327 P.3d 600, 605 (Wash. 2013) (citing *Hearst Corp. v. Hoppe*, 580 P.2d

5 246, 249 (Wash. 1978)); RCW 42.56.030. The PRA defines a "public record" as "any

6 writing containing information relating to the conduct of government or the performance

7 of any governmental or proprietary function prepared, owned, used, or retained by any

8 state or local agency regardless of physical form or characteristics." RCW 42.56.010(3).

9 There is no dispute that the records at issue fall within the definition of "public records"

10 under the PRA. (*See* UW Resp. at 4.) The question, then, is whether an exemption

11 applies that would allow redaction of Plaintiffs' names and personally identifying

12 information.

13       The PRA enumerates a variety of "specific exemptions" and contains a catch-all

14 savings clause that exempts information if any "other statute . . . exempts or prohibits

15 disclosure of specific information or records." *See* RCW 42.56.070(1); *see also*

16 *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 884 P.2d 592, 602 (Wash. 1994).

17 Plaintiffs rely on the PRA's catch-all savings clause to assert that the personally

18 identifying information of Plaintiffs is exempt from disclosure based on Plaintiffs' rights

19

20

---

21       [7] There is no dispute that the UW qualifies as a "public agency" under the PRA. (*See* PI

22 Mot. at 13 ("There can be no dispute that . . . UW qualifies as a public agency."); MTD at 7 ("[T]he university is a state entity . . . .").)

1    to privacy and association under the Washington state and federal constitutions.[8]  (*See* PI

2    Mot. at 8 ("[T]he identities and/or personal identifying information of the . . . Plaintiffs

3    are exempt from disclosure based on Plaintiffs' rights to privacy and association . . . .").)

4            The Washington Supreme Court has held that the PRA must be interpreted as

5    incorporating constitutional protections against disclosure.  In *Seattle Times Co. v. Serko*,

6    243 P.3d 919 (Wash. 2010), the Court recognized that there are constitutional limits on

7    public disclosure under the PRA, even though the PRA does not include an explicit

8    exemption for the protection of constitutional rights.  Referencing both the federal and

9    state constitutions, the Court stated:  "There is no specific exemption under the PRA that

10   mentions the protection of an individual's constitutional fair trial rights, but courts have

11   an independent obligation to secure such rights."  *Id.* at 927 (citing *Gammett Co. v.*

12   *DePasquale*, 443 U.S. 368, 378 (1979)).  The *Serko* court did not find that disclosure of

13   the records would violate the defendant's rights in that instance, but signaled its readiness

14   to order the records withheld if a constitutional violation would have resulted.  *Id.* at

15   927-28.

16           More recently, in *Freedom Foundation v. Gregoire*, 310 P.3d 1252 (Wash. 2013),

17   the Washington Supreme Court "recognized that the PRA must give way to constitutional

18   ───────────────

19       [8] The only enumerated exemption potentially applicable here pertains to "[p]ersonal
     information in files maintained for employees, appointees, or elected officials of any public
20   agency to the extent that disclosure would violate their right to privacy."  RCW 42.56.230(3).
     This exemption, to the extent it is applicable, would only apply to UW employees.  *See id.*  By
21   its terms, the exemption does not apply to those Plaintiffs who are referenced in the public
     records but not employed by UW.  *See id.*  Because the court ultimately concludes that Plaintiffs
22   are likely to succeed on the merits of their constitutional claim, *see infra* § III.B.2, the court need
     not consider the application of this more limited exemption at this time.

1    mandates." *Id.* at 1258 (citing *Serko*, 243 P.3d at 927-28 (2010); *Yakima Cty. v. Yakima*

2    *Herald–Republic*, 246 P.3d 768, 783 (Wash. 2011) (noting in dictum that the argument

3    that constitutional provisions can serve as PRA exemptions "has force")).  Building on

4    that recognition, the Court held that the separation of powers in the Washington

5    Constitution creates a qualified gubernatorial communications privilege that functions as

6    an exemption to the PRA, even though there is no specific statutory exemption for that

7    privilege.  *Freedom Foundation*, 310 P.3d at 1258-59.

8         Finally, this court recently recognized that "the PRA's deference to 'other

9    statute[s]' is a 'catch all' saving clause, which does not require a disclosure that would

10   violate the Constitution."  *Roe v. Anderson*, No. 3:14-CV-05810 RBL, 2015 WL

11   4724739, at *2 (W.D. Wash. Aug. 10, 2015).  "In other words, it is not necessary to read

12   the PRA in conflict with the Constitution when the [PRA] itself recognizes and respects

13   other laws (including constitutional provisions) that mandate privacy or confidentiality."

14   *Id.* (quoting the State of Washington's brief and stating that "[t]he State is correct").  The

15   court concluded that the PRA, "by design, cannot violate the Constitution, and

16   constitutional protections (such as freedom of expression) are necessarily incorporated as

17   exemptions, just like any other express exemption enumerated in the PRA."  *Id.* at *3.

18        The plaintiffs in *Anderson* were dancers and managers at an erotic dance studio.

19   *Id.* at *1.  Pierce County required the plaintiffs to be licensed for their professions, and a

20   private citizen filed a PRA request with the Pierce County Auditor seeking the plaintiffs'

21   personal information, including true names, birthdates, and photographs. *Id.*  Similar

22   UW's actions in this case, the Auditor informed the plaintiffs that she intended to

ORDER- 11

1    disclose the information unless the plaintiffs obtained an injunction.  *Id.*  The *Anderson*

2    court found that the operative legal issue was "whether the Constitution protects [the

3    p]laintiffs' information, exempting it from disclosure under the PRA."  *Id.* at *3.  The

4    plaintiffs argued that as workers in an erotic dance studio, they engaged in a form of

5    protected First Amendment expression, and that disclosure of their information would

6    have an unconstitutional chilling effect on that expression.  *Id.*  They argued that

7    disclosure of their personally identifying information and the personally identifying

8    information of those similarly situated would render them "uniquely vulnerable to

9    harassment, shaming, stalking, or worse."  *Id.*  Relying on prior Ninth Circuit authority,

10   the court held that disclosure of the plaintiffs' personal information would have an

11   unconstitutional chilling effect and was therefore protected by the First Amendment from

12   disclosure under the PRA.  *Id.* (citing *Dream Palace v. City of Maricopa*, 384 F.3d 990,

13   1012 (9th Cir. 2004)).

14        Similar to Plaintiffs here, the plaintiff in *Planned Parenthood Association of Utah*

15   *v. Herbert*, 828 F.3d 1245 (10th Cir. 2016), asserted that its "association with other

16   Planned Parenthood providers who participate in lawful programs that allow abortion

17   patients to donate fetal tissue for scientific research . . . is protected by the First

18   Amendment."  *Id.* at 1258.  The Tenth Circuit "ha[d] little trouble in concluding" that the

19   plaintiff's assertion of First Amendment rights was "valid."  *Id.* at 1259.  Thus, the court

20   rejects Mr. Daleiden's assertion that "freedom of association rights do not even apply

21   here, as [Plaintiffs] are not here on behalf of a group engaged in first amendment [sic]

22   expression but as participants in a particular type of research activity."  (Daleiden Resp.

at 11.)  The court also concludes that "research activity" is a form of expression protected

within the ambit of the First Amendment.  *See Dow Chem. Co. v. Allen*, 672 F.2d 1262,

1275 (7th Cir. 1982) ("[W]hatever constitutional protection is afforded by the First

Amendment extends as readily to the scholar in the laboratory as to the teacher in the

classroom.").

Even if the research in which Plaintiffs participate or to which they contribute

does not fall within the ambit of First Amendment protection, the groups with which

Plaintiffs have participated or associated do engage in advocacy for the health and

reproductive rights of women.  (*See, e.g.*, Power Decl. Ex. 1 ("The mission of Planned

Parenthood of Greater Washington and North Idaho is to provide exceptional

reproductive and complementary health care services, honest education, and fearless

advocacy for all."); Cantrell Decl. (Dkt. # 4) ¶ 2 ("As a reproductive health provider since

1979, Cedar River Clinics and its employees have fought for reproductive freedom.").)

The case law upon which Mr. Daleiden relies specifically recognizes advocacy as a

category of expression that qualifies for First Amendment protection.  (Daleiden Resp. at

11 (citing *Boys Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000))); *see Dale*, 530 U.S. at

648 ("The First Amendment's protection of expressive association is not reserved for

advocacy groups.  But to come within its ambit a group must be engaged in some form of

expression, whether it is public or private.").  Based on the foregoing authorities, the

court concludes that Plaintiffs have asserted valid constitutional interests.  Thus, similar

to the court in *Anderson*, this court must assess whether those free speech and association

1  rights protect Plaintiffs' personally identifying information from disclosure under the

2  PRA.  *See Anderson*, 2015 WL 4724739, at *3.

3       The Supreme Court has stated that those resisting government- required disclosure

4  "can prevail under the First Amendment if they can show 'a reasonable probability that

5  the compelled disclosure [of personal information] will subject them to threats,

6  harassment, or reprisals from either Government officials or private parties.'"  *John Doe*

7  *No. 1 v. Reed*, 561 U.S. 186, 200 (2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 74

8  (1976)) (alterations in original).  The Court has also detailed the type of evidence upon

9  which Plaintiffs may rely:

10      The proof may include . . . specific evidence of past or present harassment
        of members due to their associational ties, or of harassment directed against
11      the organization itself.   A pattern of threats or specific manifestations of
        public hostility may be sufficient.
12
*Buckley*, 424 U.S. at 74.
13
        Here, Plaintiffs have submitted multiple declarations detailing past and present
14
   harassment due to Plaintiffs' associational ties with the various organizations at issue, as
15
   well as threats and harassment directed against the organizations themselves.  For
16
   example, Ellen Gertzog, National Director for Affiliate Security at Planned Parenthood
17
   Federation of America ("PPFA"), detailed the history of violence against abortion
18
   providers and abortion-providing facilities and the escalating nature of the threats and
19
   acts of violence since 2015.  (*See generally* Gertzog Decl. (Dkt. # 3).)  She attests that
20
   since 1977 there have been 11 murders, 26 attempted murders, 42 bombings, 185 arsons,
21
   and thousands of incidents of criminal activities directed at abortion providers.  (*Id.* ¶ 3.)
22

1    In addition, the number of reported incidents of vandalism of Planned Parenthood health

2    centers doubled from nine in 2014 to 18 in 2015.  (*Id.* ¶ 13.)  Ms. Gertzog also testifies

3    that Planned Parenthood employees have been harassed at their homes, in their

4    workplaces, over the phone, and through their online presence in social media—"all due

5    to the nature of their employment and their association with abortion."  (*Id.* ¶ 5; *see also*

6    *id.* ¶ 7.)  She concludes that, "[b]ased on [her] expertise with security risks, . . . if

7    personally identifying information for people associated with fetal tissue donation and

8    research and the Birth Defects [Research Laboratory] at [UW] is publicly released, those

9    persons will be at particular risk due to the nature of their work and the publicity

10   surrounding the fetal tissue donation."  (*Id.* ¶ 14.)

11        Likewise, Connie Cantrell, the Executive Director of Cedar Rivers Clinics,

12   testifies that as a result of its employees' reproductive freedom advocacy, Cedar River

13   Clinics "have been firebombed, vandalized, blocked, and terrorized."  (Cantrell Decl.

14   ¶ 2.)  The Cedar Rivers Renton Clinic received a bomb threat.  (*Id.* ¶ 4.)  The Clinics'

15   employees and their children "have been harassed, stalked, received death threats, and

16   persecuted at the clinics they work at, and even sometimes at their homes."  (*Id.* ¶ 2.)

17   Cedar River Clinics coordinate with the UW Birth Defects Research Laboratory to collect

18   tissue donated by those people whom Cedar River Clinics serves.  (*Id.* ¶ 5.)  The tissue is

19   collected from individuals already undergoing clinical care at a Cedar River Clinic.  (*Id.*)

20   Those donors provide the tissue pursuant to a Certificate of Confidentiality from the

21   National Institute of Health and Child Human Development, which prevents the

22   disclosure of identifying information.  (*Id.*)  However, employees of Cedar River Clinics

ORDER- 15

1    must interact with the UW Birth Defects Research Laboratory on their patients' behalves

2    in order to effectuate the transfer of information that is otherwise protected from

3    disclosure.  (*Id.*)  Ms. Cantrell attests that forcing the disclosure of the Clinics'

4    employees' private information will subject those employees to increased threats and

5    greater risk of violence from those who oppose fetal tissue research and abortion "simply

6    because [the employees] interact with a public agency."  (*Id.* ¶ 7.)

7          Plaintiffs also submit numerous declarations from various Plaintiffs who work

8    with Planned Parenthood, Seattle Children's Hospital, Cedar River Clinics, Evergreen

9    Hospital Medical Center, and the University of Washington.  (*See generally* Does 1-8

10   Decl.)  All of these Plaintiffs are aware of threats or acts of violence against individuals

11   or institutions that are involved in providing clinical abortions or conducting fetal tissue

12   research.  (*See generally id.*)  All of these Plaintiffs fear that they, their families, and their

13   colleagues will be subjected to such threats or acts of violence due to their involvement

14   with the research conducted by UW Birth Defects Research Lab if their personally

15   identifying information is released.  (*See generally id.*)

16         Mr. Daleiden attests that he and the organization with which he works "do not

17   support, have never supported, and will never support vigilante violence against abortion

18   providers."  (Daleiden Decl. (Dkt. # 50-1) ¶ 47.)  He also specifically denies that his or

19   his organization's activities "sparked" the recent tragic shooting and killings at a Planned

20   Parenthood facility in Colorado Springs.  (*Id.* ¶¶ 48-59.)  These statements, however, do

21   not counter the specific evidence Plaintiffs have presented of past or present harassment

22   by others due to Plaintiffs' associational ties, or of harassment, threats, or violence

1    directed against their organizations; nor does it counter the chilling effect that the threat

2    of such harassment or violence from others would have upon Plaintiffs' exercise of their

3    constitutional rights.[9]

4            Instead, Mr. Daleiden argues that if Plaintiffs wished to keep their identities secret,

5    "they should have dealt with a private laboratory rather than a state university that is

6    subject to the [PRA]."  (Resp. at 8.)  He asserts that "the solution to [Plaintiffs'] problems

7    is . . . to shift one's business from a state laboratory to a private entity that isn't subject

8    to these types of disclosure requirements."  (*Id.*)  This argument simply begs the question.

9    If disclosure of Plaintiffs' personally identifying information violates their constitutional

10   rights, then the PRA does not require or permit such disclosure.  *See Anderson*, 2015 WL

11   4724739, at *3 ("The PRA, by design, cannot violate the Constitution, and constitutional

12   protections . . . are necessarily incorporated as exemptions, just like any other express

13

_____

14       [9] The other Defendants also do not present evidence that undermines Plaintiffs' position.

15   Mr. Freeman states that he "disputes many of the facts set forth in the *Motion* at 2-7 and in the
     declarations filed by plaintiffs."  (Freeman Resp. at 2 (italics in original).)  However, he fails to

16   specify which facts he disputes or offer any evidence that rebuts Plaintiffs' evidence of threats
     and harassment.  (*See id.*)  Mr. Freeman filed a declaration with his responsive memorandum.

17   (Freeman Decl. (Dkt. # 48).)  His declaration does not discuss or dispute the facts in Plaintiffs'
     declarations.  (*See generally* Freeman Decl.)  Mr. Freeman's declaration merely states that he

18   "made the public records request at issue in the case in [his] capacity as an agent for the [Family
     Policy Institute of Washington]" (*id.* ¶ 2), and attaches email correspondence between himself
     and a Washington State Assistant Attorney General concerning the request (*id.* ¶ 3., Ex. A).

19       UW admits that "Plaintiffs have shown a substantial likelihood that their protected First
     and/or Fourteenth Amendment rights under the United States [sic] (and their privacy rights under

20   the Washington State Constitution) would be negatively impacted by the release of their names
     and other personally identifiable information."  (UW Resp. at 7.)  "As such, [UW] supports a

21   preliminary injunction barring the disclosure, at lease at this stage in the proceedings, of the
     names as well as other personally identifiable information of individuals involved in fetal

22   research contained in [UW] records, including the names of UW and lab employees, employees
     of tissue donation partners, and other researchers who use donated tissue in their research."  (*Id.*)

1   exemption enumerated in the PRA.").  The court agrees that the public has an interest in

2   understanding and obtaining information about the types of research and other work in

3   which UW engages with public funds, but releasing Plaintiffs' personally identifying

4   information would do little, if anything, to advance that interest.  The First Amendment

5   does not allow state law to force individual Plaintiffs to choose between (1) facing

6   threats, harassment, and violence for engaging in or associating with research at a public

7   institution, and (2) foregoing engagement with that public institution to avoid disclosure

8   of personally identifying information and the related harassment and threats that such

9   disclosure is likely to bring.  This is exactly the kind of "chilling effect" that the

10   Constitution forbids.  *See id.* at *3 (citing *Dream Palace*, 384 F.3d at 1012).[10]  The court,

11   therefore, concludes that Plaintiffs are likely to succeed on the merits of their claim that

12   disclosure of their personally identifying information would render them and those

13

14   _____

15   [10] The court is not persuaded by the case authority that Mr. Daleiden cites.  The majority
    of the cases he cites do not address the issue of privacy rights in public records cases and
    therefore have little, if any, bearing here.  *See, e.g.*, *City of Ontario, Cal. v. Quon*, 560 U.S. 746

16   (2010) (rejecting a police officer's unreasonable search and seizure challenge to a city's review
    of sexually explicit messages sent on a pager issued to the officer by the city); *In re Grand Jury
    Subpoena, JK-15-029*, No. 15-35434, 2016 WL 3745541, at *3 (9th Cir. July 13, 2016) (finding

17   a grand jury subpoena "unreasonably overbroad" and "an unreasonable search under the Fourth
    Amendment" where it would include emails from personal accounts that the petitioner would

18   reasonably expect to remain private).  The cases that Mr. Daleiden cites that do concern privacy
    rights in PRA requests fail to support his position.  *See Koenig v. City of Des Moines*, 142 P.3d

19   162, 168 (Wash. 2006) (refusing to uphold the exemption of entire records simply because they
    were responsive to a request that sought records related to a specific person, but upholding the

20   redaction of identifying information of a sexual assault victim in the records before they were
    released); *Bainbridge Island Police Guild v. City of Puyallup*, 259 P.3d 190, 196-97 (Wash.

21   2011) (redacting the name of a police officer, even though it had already been publicly disclosed
    in other records, because the context of the documents—an investigation of an unsubstantiated

22   sexual misconduct investigation—would be highly offensive to a reasonable person).

1  similarly situated "uniquely vulnerable to harassment, shaming, stalking, or worse,"

2  *Anderson*, 2015 WL 4724739, at *1, and in this context, would violate their constitutional

3  rights of privacy and association.  Thus, the court also concludes that Plaintiffs are likely

4  to succeed on the merits of their claim that their personally identifying information is

5  exempt from disclosure under the PRA.

6        **3.   The Remaining Factors**

7        The court has found that Plaintiffs are likely to succeed on their claims that the

8  disclosure of their personally identifying information in response to Defendants' PRA

9  requests will violate their constitutional rights to privacy and association.  *See supra*

10 § III.B.2.  The denial of First Amendment freedoms "unquestionably constitutes

11 irreparable injury" supporting the issuance of a preliminary injunction.  *Doe v. Harris*,

12 772 F.3d 563, 583 (9th Cir. 2014) (citing *Associated Press v. Otter*, 682 F.3d 821, 826

13 (9th Cir. 2012), and *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Klein v. City of San*

14 *Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).  Plaintiffs have, therefore,

15 demonstrated that they will suffer irreparable harm in the absence of a preliminary

16 injunction.

17       Next, the court considers whether a preliminary injunction will serve the public

18 interest.  The court has recognized that the public has an interest in obtaining information

19 concerning the scientific research conducted by UW.  *See supra* § III.B.2.  However,

20 redacting Plaintiffs' personally identifying information from the documents responsive to

21 Defendants' PRA requests will do little, if anything, to undermine this interest.  On the

22 other hand, the Ninth Circuit has "consistently recognized the significant public interest

1    in upholding First Amendment principles." *Harris*, 772 F.3d at 583 (quoting

2    *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).  The court

3    concludes that disclosure of Plaintiffs' personally identifying information would run

4    contrary to the public interest because it would do little to further the PRA's purposes of

5    ensuring government accountability, while exposing Plaintiffs to the threat of violence or

6    harassment and chilling First Amendment associational rights.  The court concludes that

7    the public interest factor weighs in favor of issuing the preliminary injunction.

8         As for the balance of equities, the court recognizes that the public, Mr. Freeman,

9    and Mr. Daleiden have an interest in the production of documents responsive to the PRA

10   requests.  Furthermore, as noted above, the public has an interest in obtaining information

11   concerning research conducted by UW.  *See supra* § III.B.2.  However, as also noted

12   above, obtaining Plaintiffs' personally identifying information would contribute little, if

13   anything, to the public's interest in understanding and being informed about the types of

14   research UW conducts.  *See id.*  Moreover, both Mr. Freeman and Mr. Daleiden have

15   disavowed any interest in obtaining Plaintiffs' personally identifying information.

16   (Freeman Resp. at 1 (stating that Mr. Freeman "has no objection to the redaction of

17   personally identifying information or contact information"); Daleiden Resp. at 2

18   ("Daleiden and Freeman have agreed to a redaction of the plaintiffs' personal identifying

19   information.").)[11]  Thus, a preliminary injunction that precludes disclosure of Plaintiffs'

20

21   _____

22   [11] Defendants' disavowal of any interest in Plaintiffs' personally identifying information
     does not include the eight names Mr. Daleiden specifically identified in his PRA request.

1    personally identifying information will cause Defendants little, if any, hardship.  On the

2    other hand, Plaintiffs have demonstrated that, absent the preliminary injunction, there is a

3    likelihood that their First Amendment rights will be impinged.  Thus, the court concludes

4    that the balance of the equities tips sharply in Plaintiffs' favor.

5          All of the *Winter* factors favor imposing a preliminary injunction that prohibits the

6    disclosure of Plaintiffs' personally identifying information in response to Defendants'

7    PRA requests.

8          **4. The Bond Requirement is Waived**

9          The court may issue a preliminary injunction "only if the movant gives security in

10   an amount the court considers proper to pay costs and damages sustained by any party

11   found to have been wrongfully . . . restrained."  Fed. R. Civ. P. 65(c).  However, a district

12   court "may dispense with filing of a bond when it concludes there is no realistic

13   likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v.*

14   *Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  The only prejudice to Mr. Daleiden and

15   Mr. Freeman is the minimal burden caused by delay due to the time UW will need to

16   redact Plaintiffs' personally identifying information.  Further, no Defendant requested the

17   imposition of a bond or responded to the portion of Plaintiffs' motion asking the court to

18   waive the bond requirement.  (*See generally* UW Resp.; Daleiden Resp.; Freeman Resp.)

19   Accordingly, the court finds that any potential costs to Defendants are de minimis and

20   declines to impose a bond.

21

22   (Daleiden Resp. at 5.)  The court addresses this issue in the section of this order pertaining to the
     scope of the preliminary injunction.  *See infra* § III.B.5.

### 5.  Scope of the Preliminary Injunction

The final issue that the court must resolve is the scope of the preliminary injunction.  The August 3, 2016, TRO restrained UW "from releasing, altering, or disposing of the requested documents or disclosing the personal indentifying information of Plaintiffs pending further order of this court."  (TRO at 7.)  Mr. Daleiden argues that the TRO is overbroad because Plaintiffs did not ask the court to enjoin the release of the documents—only the release of their identities and personally identifying information. (Daleiden Resp. at 11-12; *see*  PI Mot. at 16 ("An order should be entered enjoining . . . UW from releasing the Documents unless . . . Plaintiffs' identities and/or other personal identifying information are redacted."), 9-10 ("Plaintiffs do not ask the Court to order the nondisclosure of any such substantive information with regard to the programs themselves or their implementation.").)  The court agrees.  The preliminary injunction shall enjoin UW from releasing the documents responsive to Mr. Daleiden's and Mr. Freeman's PRA requests unless Plaintiffs' identities and other personally identifying information are first redacted from those documents.

The parties, however, differ as to the scope of the phrase "personally identifying information."[12]  Mr. Daleiden, for example, appears to interpret this phrase to encompass

_____

[12] Mr. Daleiden asserts that Plaintiffs' motion for a preliminary injunction is moot because he has already agreed to allow UW to redact "the personal contact information" for all individuals identified in the requested records and the names of all individuals identified in the record, except for the eight individuals he identifies in his PRA request.  (Daleiden Resp. at 4-5.) However, because Plaintiffs the redaction of more than just "personal contact information" and because Plaintiffs do not agree that the eight names identified by Mr. Daleiden should not be redacted, Plaintiffs' motion is not moot.

1   only names and contact information.  (Daleiden Resp. at 9.)  As UW points out, however,

2   "[p]ersonally identifiable information is logically a broader category than just names and

3   contact information" and should include "any information from which a person's identity

4   could be derived with reasonable certainty."  (UW Resp. at 2 n.2.)  Indeed, Plaintiffs

5   argue that "personally identifying information" should be "understood to include a broad

6   range of information that (a) identifies or provides the location of specific individuals, (b)

7   would allow individuals to be identified or located, and (c) would allow individuals to be

8   contacted."  (Pltf. Reply at 5.)  The court agrees.  The preliminary injunction will not be

9   effective in protecting Plaintiffs' constitutional rights unless it includes these broader

10  categories of information.

11          Mr. Daleiden and Mr. Freeman also insist that the eight names that Mr. Freeman

12  identified in his PRA request to UW should not be redacted from the documents.  (*See*

13  Daleiden Resp. at 5; Daleiden Decl. ¶ 26; Freeman Resp. at 2.)  Mr. Daleiden argues that

14  these names should not be redacted because they "are already widely publicly identified

15  with the [UW Birth Defects Research Lab], fetal tissue processing, and abortion."

16  (Daleiden Decl. ¶ 26.)  Plaintiffs assert that disclosure of these eight names would still

17  violate these individuals' rights.  (Pltf. Reply at 4.)

18          Plaintiffs reply upon *Bainbridge Island Police Guild v. City of Puyallup*, 259 P.3d

19  190 (Wash. 2011).  (Pltf. Reply at 4.)  In that case, the Court considered whether internal

20  investigative reports of "unsubstantiated" sexual misconduct should be released under the

21  PRA and whether the name of the officer involved should be redacted under the former

22  PRA exemption for personal information.  *Bainbridge* Island, 259 P.3d at 192 (citing

1    RCW 42.56.230(2) (2010)).  The Court concluded that the reports should be released, but

2    the officer's identity should be redacted despite widespread media coverage that included

3    the officer's name.  *Id.* at 192, 196-97.

4        The Court was "not persuaded that a person's right to privacy, as interpreted under

5    the PRA, should be forever lost because of media coverage."  *Id.* at 196-97.  The Court

6    reasoned as follows:

> Under the PRA, [the officer] maintains his right to privacy in his identity,
> regardless of the media coverage of this unsubstantiated allegation.  An
> agency should look to the contents of the document, and not the knowledge
> of third parties when deciding if the subject of a report has a right to
> privacy in their identity.  Even though a person's identity might be redacted
> from a public record, the outside knowledge of third parties will always
> allow some individuals to fill in the blanks.  But just because some
> members of the public may already know the identity of the person in the
> report, it does not mean that an agency does not violate the person's right to
> privacy by confirming that knowledge through its production.

*Id.* at 197.  The Court also relied on the practical effect on the disclosing agency if it held

that the officer had no right to privacy in his identity.  *Id.*  The Court noted that agencies

would be required to engage in an analysis of not just the contents of the report but the

degree and scope of media coverage regarding the incident or subject.  *Id.*  Agencies

would be faced with making fact-specific inquiries with uncertain guidelines on exactly

how much media coverage is required before an individual loses his or her right to

privacy.  *Id.*

*//*

*//*

*//*

ORDER- 24

1    The court concludes that the *Bainbridge Island* analysis applies here too.[13] Mr.

2    Daleiden's ability to find certain publicly available information about eight individuals

3    that he believes will be named in the records at issue is irrelevant to the right of those

4    individuals to claim a valid exemption under the PRA based on their constitutional rights.

5    UW may not confirm whatever public knowledge Mr. Daleiden has obtained elsewhere

6    through production under the PRA without redaction of the eight Plaintiffs' names. *See*

7    *id.* In addition, the court declines to impose on UW the burden of performing an

8    intractable fact-specific inquiry concerning the level of media coverage each individual at

9    issue has received. *See id.*

10   Accordingly, the court grants Plaintiffs' motion for a preliminary injunction, but

11   narrows the scope of the preliminary injunction as compared to the TRO. The court

12   preliminarily enjoins UW from releasing the requested documents without first redacting

13   all personally indentifying information or information from which a person's identity

14   could be derived with reasonable certainty for all individuals. Such information includes

15   but not limited to (a) information that identifies or provides the location of an individual,

16   (b) information that would allow an individual to be identified or located, (c) information

17   that would allow an individual to be contacted, (d) names of individuals, (e) phone

18

19   ---

20   [13] The court has also examined *Doe No. 1 v. Reed*, 697 F.3d 1235, 1239-40 (9th Cir.
     2012), in which the court found that the plaintiffs' claim seeking an injunction preventing the
     State from publicly releasing certain referendum petitions was moot because the petitions were

21   already widely available on the internet. That case is distinct because here the actual documents
     have not been released and are not widely available. The court concludes that this case is more
     like *Bainbridge Island*, and for that reason, the court applies the *Bainbridge Island* Court's

22   analysis.

1    numbers, (f) facsimile numbers, (g) email and mailing addresses, (h) social security or tax

2    identification numbers, and (i) job titles.

3        The court is uncertain of the number of documents involved or the time required to

4    appropriately redact the documents.  The court, therefore, instructs counsel for the parties

5    to work together to establish reasonable and protocols for redaction and timelines for

6    production.  If counsel are unable to come to agreement on these items, counsel may

7    contact the court to schedule a telephonic hearing to resolve any outstanding issues.

8                        **IV.  CONCLUSION**

9        Based on the foregoing, the court GRANTS Plaintiffs' motion for a preliminary

10    injunction (Dkt. # 2) as more fully described above.  The court also DENIES as moot

11    UW's motion for leave to file a one-page supplemental pleading in response to Plaintiffs'

12    motion for a preliminary injunction (Dkt. # 58).

13        Dated this 13th day of November, 2016.

14

15

16                      _____

17                      JAMES L. ROBART
                        United States District Judge

18

19

20

21

22

ORDER- 26