UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOES 1-10, et al., | CASE NO. C16-1212JLR |
| Plaintiffs, | ORDER GRANTING MOTION |
| v. | FOR CLASS CERTIFICATION |
| UNIVERSITY OF WASHINGTON, et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court is Plaintiffs Jane Does 1-10 and John Does 1-10's (collectively, "Doe Plaintiffs") motion for class certification. (MCC (Dkt. # 16).) Defendant David Daleiden opposes the motion. (Resp. (Dkt. # 63).) The court has considered the motion, Mr. Daleiden's response, all other submissions filed in support of and opposition to the motion (*see, e.g.*, Reply (Dkt. # 66); Supp. Reply (Dkt. # 144); Supp. Resp. (Dkt. # 149);

//

Doe Supp. Br. (Dkt. # 164); Def. Supp. Br. (Dkt. # 166)), and the applicable law.  Being fully advised,[1] the court GRANTS the motion as described below.

## II.  BACKGROUND

**A.    The PRA Requests**

On February 9, 2016, Mr. Daleiden sent a written request to Defendant University of Washington ("UW") under Washington State's Public Records Act ("PRA"), RCW ch. 42.56, to "inspect or obtain copies of all documents that relate to the **purchase, transfer, or procurement of human fetal tissues**, human fetal organs, and/or human fetal cell products at the [UW] Birth Defects Research Laboratory from **2010 to present**."  (Power Decl. (Dkt. # 5) ¶ 4, Ex. C (bolding in original).)  On February 10, 2016, Defendant Zachary Freeman issued a similar PRA request to UW.[2]  (*Id*. ¶ 6, Ex. E.)  Among other documents, these PRA requests sought communications between UW or its Birth Defects Research Laboratory ("the Lab"), on the one hand, and Cedar River Clinics ("Cedar River"), Planned Parenthood of Greater Washington and North Idaho, or certain individuals or employees of Cedar River and Planned Parenthood of Greater Washington and North Idaho, on the other hand.  (*Id*. ¶ 6, Ex. E at 1; *see also id*. ¶ 4, Ex. C at 1-2.)

//

//

---

[1] Mr. Daleiden requests oral argument.  (*See* Resp. at 1.)  However, as noted above, the parties have provided the court with extensive briefing on Doe Plaintiffs' motion for class certification.  The court, therefore, does not consider oral argument to be necessary and denies the request.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided . . . without oral argument.").

[2] On December 27, 2016, the court entered a stipulated order dismissing Mr. Freeman from the lawsuit.  (Stip. Order (Dkt. # 105).)

Mr. Daleiden's PRA request specifically lists the names of eight such individuals. (*Id.* ¶ 4, Ex. C at 1-2.)

On July 21, 2016, UW notified Doe Plaintiffs that absent a court order issued by August 4, 2016, UW would provide documents responsive to Mr. Daleiden's PRA request without redaction at 12:00 p.m. on August 5, 2016.[3] (Does 1, 3-4, 7-8 Decls. (Dkt. ## 6, 8-9, 12-13) ¶ 3, Ex. A; Doe 5 Decl. (Dkt. # 10) ¶ 3; Doe 6 Decl. (Dkt. # 11) ¶ 5, Ex. A.) On July 26, 2016, UW issued a similar notice to Doe Plaintiffs regarding Mr. Freeman's request and indicated that, absent a court order, UW would provide responsive documents without redaction on August 10, 2016. (Does 1, 3-4 Decls. ¶ 4, Ex. B.)[4]

**B.    Doe Plaintiffs File Suit**

On August 3, 2016, Doe Plaintiffs filed a complaint on behalf of a putative class seeking to enjoin UW from issuing unredacted documents in response to the PRA requests. (Compl. (Dkt. # 1).)[5] Doe Plaintiffs object to disclosure of the requested

---

[3] Under RCW 42.56.540, "[a]n agency has the option of notifying persons named in the record or to whom a record specifically pertains" prior to disclosure.

[4] Jane Doe 2 omitted exhibits from her declaration, but the other Doe declarations sufficiently demonstrate that UW issued similar letters to the individuals implicated in the relevant PRA request.

[5] Doe Plaintiffs also filed an amended complaint and a second amended complaint on August 3, 2016. (*See* FAC (Dkt. # 22); SAC (Dkt. # 23).) Doe Plaintiffs' amended complaint amends allegations concerning jurisdiction and venue. (*Compare* Compl. ¶¶ 17-18 (alleging jurisdiction under RCW 2.08.010 and RCW 4.28.020 and venue under RCW 42.56.540), *with* FAC ¶¶ 17-18 (alleging jurisdiction under 28 U.S.C. § 1331 and venue under 28 U.S.C. § 1391(b)(2)).) Doe Plaintiffs' second amended complaint corrects what appear to be typographical errors in paragraph 18 of the amended complaint relating to venue. (*Compare* FAC ¶ 18, *with* SAC ¶ 18.)

documents in unredacted form because the documents include personally identifying information such as direct work phone numbers, work emails, personal cell phone numbers, and other information. (*See* TAC (Dkt. # 77) at 2 ("Doe Plaintiffs . . . seek to have their personal identifying information withheld to protect their safety and privacy."); *see also, e.g.*, Doe 5 Decl. ¶¶ 4-5 ("Any email contacts I had with [the Lab] would have highly personal information such as my name, email address, and phone number. . . . My name, email address, and phone number are information that I try to keep private when related to where I work.").) On the same day that they filed suit, Doe Plaintiffs filed a motion seeking both a temporary restraining order ("TRO") and a preliminary injunction against disclosure of the requested documents.[6] (*See* TRO/PI Mot. (Dkt. # 2).)

In addition, Doe Plaintiffs filed the present motion for class certification. (*See* MCC (Dkt. # 16).) In their original motion, Doe Plaintiffs ask the court to certify a class consisting of "[a]ll individuals whose names and/or personal identifying information (work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by UW that are related to fetal tissue research or donations." (*Id.* at 2.)

## C.    Initial TRO and Preliminary Injunction

On August 3, 2016, the court granted Doe Plaintiffs' motion for a TRO but set the TRO to expire on August 17, 2016, at 11:59 p.m. (TRO (Dkt. # 27) at 7.) The court

//

---

[6] On the same day, Doe Plaintiffs also filed a motion to proceed in pseudonym. (MTPP (Dkt. # 15).) Defendants did not oppose the motion (*see generally* Dkt.), and the court granted it on August 29, 2016 (8/29/16 Order (Dkt. # 68)).

restrained UW "from releasing, altering, or disposing of the requested documents or disclosing the personal identifying information of Plaintiffs pending further order from this court." (*Id*. at 7.) On August 17, 2016, the court extended the TRO "until such time as the court resolves [Doe] Plaintiffs' pending motion for a preliminary injunction." (8/17/16 Order (Dkt. # 54) at 2.)

On November 11, 2016, the court granted Doe Plaintiffs' motion for a preliminary injunction.[7] (PI (Dkt. # 88).) The court concluded that Doe Plaintiffs were likely to succeed on the merits of their claim that disclosure of their personally identifying information would render them and those similarly situated uniquely vulnerable to harassment, shaming, stalking, or worse, and in this context, would violate their First Amendment rights to freedom of expression and association. (*Id*. at 18-19.) Thus, the court also concluded that Doe Plaintiffs were "likely to succeed on the merits of their claim that their personally identifying information is exempt from disclosure under the PRA." (*Id*. at 19.) After finding that the remaining factors—irreparable injury, the public interest, and the balance of equities—also favored preliminary injunctive relief,

---

[7] Before the court could resolve Doe Plaintiffs' motion for a preliminary injunction, Mr. Daleiden filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (*See* MTD (Dkt. # 49).) On October 4, 2016, the court granted Mr. Daleiden's motion and dismissed Doe Plaintiffs' second amended complaint without prejudice for lack of subject matter jurisdiction. (10/4/16 Order (Dkt. # 76) at 12-14.) The court also granted Doe Plaintiffs leave to file a third amended complaint that remedied the jurisdictional deficiencies identified in the court's order. (*Id*. at 14-18.) Doe Plaintiffs timely filed their third amended complaint on October 18, 2016 (*see* TAC), and the court concluded that Doe Plaintiffs' third amended complaint satisfied the directives of its October 4, 2016, order with respect to subject matter jurisdiction (*see* PI (Dkt. # 88) at 5). Doe Plaintiffs' third amended complaint also added Defendant Perry Tapper, who is a records compliance officer in UW's Office of Public Records and Open Meetings ("OPR"). (*See* TAC ¶ 12; Supp. Tapper Decl. (Dkt. # 121) ¶ 2.) The court refers to UW and Mr. Tapper collectively as "UW."

the court granted Doe Plaintiffs' motion but narrowed the scope of the preliminary

injunctive relief as compared to the relief granted in the TRO. (*See id.* at 19-22, 25.)

In the preliminary injunction, the court did not prohibit the release of the

documents at issue but rather enjoined UW from releasing the requested documents

without first redacting all personally identifying information or information for Doe

Plaintiffs from which a person's identity could be derived with reasonable certainty. (*Id.*

at 19-21, 25.) Specifically, the court held that UW must redact all personally identifying

information, including but not limited to (a) information that identifies or provides the

location of an individual, (b) information that would allow an individual to be identified

or located, (c) information that would allow an individual to be contacted, (d) names of

individuals, (e) phone numbers, (f) facsimile numbers, (g) email and mailing addresses,

(h) social security or tax identification numbers, and (i) job titles. (*Id.* at 25-26.)

**D.     Mr. Daleiden's First Appeal**

On December 15, 2016, Mr. Daleiden appealed the district court's grant of a

preliminary injunction. (*See* Not. of App. (Dkt. # 98).) On January 4, 2017, this court

stayed proceedings at the district court level, including Doe Plaintiffs' motion for class

certification, pending the resolution of Mr. Daleiden's appeal.[8] (1/4/17 Min. Entry.) On

August 14, 2017, the Ninth Circuit reversed and remanded the court's preliminary

injunction order but nevertheless left the preliminary injunction in place for 120 days "to

//

---

[8] The stay did not apply to the court's enforcement and administration of the
preliminary injunction. (*See* 1/4/17 Min. Entry (Dkt. # 109).)

allow the district court to enter the necessary findings of fact and conclusions of law supporting injunctive relief."  (USCA Order at 4.)

In its August 14, 2017, order, the Ninth Circuit stated that "[t]o prevail on the First Amendment claim, . . . Doe Plaintiffs must show that particular individuals or groups of individuals were engaged in activity protected by the First Amendment and 'show "a reasonable probability that the compelled disclosure of personal information will subject"' those individuals or groups of individuals 'to threats, harassment, or reprisals' that would have a chilling effect on that activity."  (USCA Order at 3 (citing *John Doe No. 1 v. Reed*, U.S. 186, 200 (2010) and quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976) (brackets omitted) (footnote omitted).)  The Ninth Circuit agreed "that there may be a basis for redaction where disclosure would likely result in threats, harassment, and violence," but determined that "the [district] court's order did not address how the Doe Plaintiffs have made the necessary clear showing with specificity as to the different individuals or groups of individuals who could be identified in the public records."  (*Id.*) The Ninth Circuit also determined that this court "made no finding that specific individuals or groups of individuals were engaged in activity protected by the First Amendment and what that activity was."  (*Id.* at 3-4.)  Accordingly, the court remanded the proceeding "to address how disclosure of specific information would violate the constitutional or statutory rights of particular individuals or groups."  (*Id.* at 4.)

The Ninth Circuit also referenced the pending motion for class certification and noted that this court "may choose to rule on that motion before revisiting the preliminary injunction if creating sub-classes would be useful and appropriate."  (*Id.* at 3, n.1.)  The

Ninth Circuit stated that "[c]onsiderations of commonality under Federal Rule of Civil Procedure 23 may bear some similarity to those related to particular individuals' entitlement to a preliminary injunction." (*Id.*) The Ninth Circuit counseled, however, that "the timing of these decisions" was within the district court's discretion and "that a class-certification ruling [wa]s not a predicate to reissuing the preliminary injunction." (*Id.*)

**E.     Reissuing the Preliminary Injunction**

Following the Ninth Circuit's remand, the court issued an order directing the parties to submit supplemental briefing and other materials responding to the Ninth Circuit's guidance on Doe Plaintiffs' motion for a preliminary injunction. (*See generally* 8/22/17 Order (Dkt. # 114).) In addition, the court noted the Ninth Circuit's guidance concerning Doe Plaintiffs' motion for class certification, but left to Doe Plaintiffs "decisions concerning the re-noting, timing, and substance of their motion for class certification." (*Id.* at 4, n.3.)

After receiving the parties' supplemental materials on Doe Plaintiffs' motion for a preliminary injunction,[9] and hearing the argument of counsel,[10] the court reissued the preliminary injunction on November 30, 2017.[11] (2d PI (Dkt. # 130).) In their opening

---

[9] (*See* Doe Supp. PI Br. (Dkt. # 119); UW Supp. PI Br. (Dkt. # 120); Def. Supp. PI Br. (Dkt. # 122); Doe Supp. PI Reply (Dkt. # 123); Doe Not. Supp. Auth. (Dkt. # 124); UW Supp. Privacy Br. (Dkt. # 126); Doe Supp. Privacy Br. (Dkt. # 127); Def. Supp. Privacy Br. (Dkt. # 128).)

[10] (11/29/17 Min. Entry (Dkt. # 129).)

[11] The court reissued the preliminary injunction "consistent with the scope of its prior order." (2d PI at 44 (citing PI at 25-26).) However, in response to Mr. Daleiden's motion

supplemental preliminary injunction brief, Doe Plaintiffs identified three groups for purposes of analyzing their engagement in First Amendment protected activity:  (1) "[a]dvocates, [p]ractitioners, and [s]taff . . . who advocate through speech or conduct, for organizations and/or entities that provide abortions and/or make available fetal tissue for medical research, including individuals who in fact participate in the procurement of fetal tissue for medical research purposes and/or arrange for the delivery of fetal tissue to the Lab, and staff associated with the same"; (2) "[l]ab staff," which includes both current and former employees of the Lab, "who facilitate[] the collection and/or dissemination of fetal tissue for medical research purposes, and staff associated with the same"; and (3) "[r]esearchers and [s]taff . . . whose efforts contribute to medical research that uses fetal tissue obtained from the Lab, and staff associated with the same."  (Doe Supp. PI Br. at 3.)  In addition, Doe Plaintiffs also implicitly identified another subgroup within each of the foregoing groups, consisting of the administrative or other staff members of each of the organizations engaged in advocacy or scientific research at issue here.  (*See id.* at 8.) Doe Plaintiffs also stated that they "anticipate[d] renewing their motion for class certification after the [c]ourt rules on the validity of the preliminary injunction," and they "intend[ed] to update their delineation of the class in line with the [sub]groups" they had now identified.  (*Id.* at 3, n.2.)

*//*

---

seeking clarification (Mot. to Clarify (Dkt. # 131)), on March 8, 2018, the court clarified that "neither the preliminary injunction nor the reissued preliminary injunction require redaction of non-personal corporate information, including corporate names, the domain portion of work email addresses, and corporate physical addresses."  (3/8/18 Order (Dkt. # 159) at 5 (footnotes omitted).)

In its November 30, 2017, order reissuing the preliminary injunction, the court largely adopted Doe Plaintiffs' proposed three sub-groups for purposes of analyzing the First Amendment issues. (*See* 2d PI at 12-24.) The court agreed that those individuals in group one—employees of organizations that advocate for continued access to abortion and women's reproductive rights and/or the continued ability to conduct fetal tissue research—were likely to succeed on their claim that they engaged in First Amendment-protected activity. (*See id*. at 15-17.) The court also agreed that plaintiffs in groups one, two, and three were likely to succeed on their claim that they engaged in lawful activities critical to the conduct of fetal tissue research, and that the First Amendment also protects such research activity. (*See id*. at 17-20.) Finally, the court agreed that staff members in the three groups who worked for organizations engaged in either fetal tissue research and/or advocacy for women's reproductive health services were likely to succeed on their claim that they are entitled to the same First Amendment protections as the organizations that employ them because staff members are inevitably associated with the work of those organizations. (*See id.* at 20-24.)

In addition to concluding that Doe Plaintiffs in all of the identified subcategories were likely to succeed on their claim that they were entitled to First Amendment protection of their personally identifying information, the court also concluded that Doe Plaintiffs were likely to succeed on their claim that they have a constitutionally protected expectation of privacy in their personally identifying information based on article 1, section 7 of the Washington State Constitution. (*Id*. at 35-41.) Specifically, the court concluded that Doe Plaintiffs were likely to succeed on the merits of their claim that this

right to privacy requires UW to redact their personally identifying information from the documents Mr. Daleiden requested under the PRA. (*Id.* at 40-41.) After concluding that Doe Plaintiffs were likely to succeed on the merits of both their First Amendment and privacy claims, the court also found that Doe Plaintiffs had met their burden with respect to the other preliminary injunction factors and reissued the same preliminary injunction consistent with scope of its prior order. (*Id.* at 41-44.)

## F.     Motion for Class Certification

On December 14, 2017, Doe Plaintiffs filed (1) a notice renoting their motion for class certification, and (2) a motion seeking leave to file a supplemental reply memorandum in support thereof. (Not. (Dkt. # 133); MFL (Dkt. # 134).) Defendants did not file a response to Doe Plaintiffs' motion (*see* Dkt.), and on December 27, 2017, the court granted the motion (12/27/17 Order (Dkt. # 143)).[12] On December 28, 2017, Doe Plaintiffs filed their supplemental reply memorandum in support of their motion for class certification. (*See* Supp. Reply.) In their supplemental reply, Doe Plaintiffs narrowed their class definition to include "all individuals whose names and/or personal identifying information (e.g., work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by [UW] that relate to the

//

_____

[12] On January 2, 2018, Mr. Daleiden filed his second notice of appeal in this proceeding. (2d Not. of App. (Dkt. # 147).) In his second appeal, Mr. Daleiden again challenges the court's original preliminary injunction and also challenges the court's reissuance of the preliminary injunction. (*See id.* at 1 (citing PI and 2d PI).) On January 17, 2018, the court issued an order stating that it continued to have jurisdiction over Doe Plaintiffs' motion for class certification despite Mr. Daleiden's appeal of the preliminary injunction and that it would decide the motion "in due course." (*Id.* at 4.)

purchase, transfer, or procurement of human fetal tissues, human fetal organs, and/or human fetal cell products at [the Lab] from 2010 to present."  (*Id.* at 1-2.)

Doe Plaintiffs, however, did not modify their motion to include any subclasses. (*See generally id.*)  Mr. Daleiden filed a response noting in particular that, although Doe Plaintiffs had identified three subgroups in their briefing in support of the reissuance of the preliminary injunction, Doe Plaintiffs did not address these subgroups in their supplemental class certification briefing.  (*See* Supp. Resp. at 1-2.)  On March 14, 2018, the court ordered Doe Plaintiffs and Mr. Daleiden to provide supplemental briefing on the issue of subclasses.  (3/14/18 Order (Dkt. # 160).)  The parties filed their responses on March 26, 2018.  (*See* Doe Supp. Br.; Def. Supp. Br.)

In their response, Doe Plaintiffs argue that, despite their earlier representation that they would identify subclasses to the district court following remand, they now believe that "there is no inherent or realistic danger of conflict, confusion, or tension between the putative class members," and so "a single class may be certified."  (Doe Supp. Br. at 4.) Nevertheless, they also alternatively propose modifying their previous overarching class definition by including subclasses for each group identified in their earlier preliminary injunction briefing and the court's November 30, 2017, order reissuing the preliminary injunction.  (*See id.* at 4-9.)  Doe Plaintiffs' alternate proposal delineating subclasses is as follows:

> All individuals whose names and/or personal identifying information (e.g., work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by the University of Washington that relate to the purchase, transfer, or procurement of human fetal tissues, human fetal organs, and/or human fetal cell products at the

University of Washington Birth Defects Research Laboratory from 2010 to present, and who:

1) are associated with entities that provide abortions and/or make available fetal tissue to the Birth Defects Research Laboratory;

2) are associated with the Birth Defects Research Laboratory; or

3) are associated with medical researchers who use fetal tissue obtained from the Birth Defects Research Laboratory.

(*Id.* at 4-5.)  Mr. Daleiden argues that creating subclasses in this instance does not solve the underlying problems of class certification, and he also argues that the parties should conduct discovery prior to the creation of any subclasses.  (*See generally* Def. Supp. Br.)

The court now considers Doe Plaintiffs' motion for class certification.

## III.  ANALYSIS

**A.  Standard for Class Certification**

"Class certification is governed by Federal Rule of Civil Procedure 23."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party seeking certification must first demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(a)'s four subparts are generally referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation, respectively.  These four requirements "effectively limit the class to those fairly encompassed by the named plaintiff's claims."  *Dukes*, 564 U.S. at 349.

Next, the party seeking certification must demonstrate that the proposed class satisfies at least one of the three requirements listed in Rule 23(b). *Id*. Doe Plaintiffs rely on Rule 23(b)(2) to justify class certification in this instance, which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted.*" Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (quotation marks omitted).

"The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015); *see also Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 321 (C.D. Cal. 2015) ("More than a pleading standard, Rule 23 requires the party seeking class certification to affirmatively demonstrate compliance with the rule[.]") (internal citation, ellipsis, and quotation marks omitted). The court may grant certification only after "a rigorous analysis . . . [determining] that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350-51. Nevertheless, a court ruling on class certification "is merely to decide a suitable method of adjudicating the case" and "should not turn class certification into a mini-trial on the merits." *Edwards*, 798 F.3d at 1178 (internal citation and quotation marks omitted).

Under Rule 23(c)(5), "a class may be divided into subclasses that are each treated as a class under [Rule 23]." Fed. R. Civ. P. 23(c)(4)(B). Doe Plaintiffs bear the burden of showing that each subclass "independently meet[s] the requirements for the

maintenance of a class action." *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982).

**B.     Rule 23(a) Prerequisites**

Of the four Rule 23(a) prerequisites, Mr. Daleiden challenges only commonality and typicality.  (*See* Resp. at 3-10; Supp. Resp. at 2; Def. Supp. Br. at 2-4, 7-9.)  The court nevertheless discusses whether Doe Plaintiffs have met their burden with respect to numerosity and adequacy of representation as well.  *See Ellis*, 657 F.3d at 980 ("When considering class certification under Rule 23, district courts . . . must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Dukes*, 564 U.S. at 351)).

1.     <u>Numerosity</u>

As noted above, Mr. Daleiden does not challenge the numerosity prerequisite.  *See* Fed. R. Civ. P. 23(a)(1); (*see generally* Resp.; Supp. Resp.; Def. Supp. Br.).  Initially, UW reported that it sent notices to at least 150 persons that their personally identifying information was contained in the records at issue in this case.  (Tapper Decl. (Dkt. # 46) ¶¶ 6-7.)  UW ultimately reported that notices were sent to between 500 and 600 people.  (Legarreta Decl. (Dkt. # 122-1) ¶ 4, Ex. A at 24.)  Although "satisfaction of the numerosity requirement is not dependent upon any specific number of proposed class members, . . . 'where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met.'"  *Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015) (quoting *Int'l Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461

(N.D. Cal. 1983)); *see also Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493 RSM, 2014 WL 3694231, at *6 (W.D. Wash. July 23, 2014) ("Courts generally find that classes of at least 40 members are sufficiently numerous to satisfy [numerosity]."); *Novella v. Westchester Cty.*, 661 F.3d 128, 143 (2d Cir. 2011) (reciting the view of many district courts that classes of 40 or more generally meet the numerosity requirement). Accordingly, the court concludes that Doe Plaintiffs have adequately established numerosity for the class as a whole.

Doe Plaintiffs, however, must also establish numerosity for each of the subclasses. This task is complicated because Doe Plaintiffs' counsel is aware of the identity and subclass membership of only a small number of putative class members. (*See* Plf. Supp. Br. at 5.) Further, although UW knows who received notices under the PRA, UW "is not well-positioned to independently determine which persons . . . belong in which subclass." (*Id.*)

"Where a plaintiff seeks 'only injunctive and declaratory relief,'" however, "the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that the number of unknown and future members is sufficient to make joinder impracticable.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017) (quoting *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017) (internal quotation marks, alterations, and citation omitted)). Similarly, "a court may draw a reasonable inference of class size from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d

1098 (9th Cir. 1985); *see also In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG SSX, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013) ("Plaintiffs are also not required to establish the precise number of class members, as long as common sense and reasonable inferences from the available facts show that the numerosity requirement is met.").

Here, Doe Plaintiffs argue that, by drawing reasonable inferences from the facts before it, the court can conclude that each subgroup contains substantially more than 40 people. For example, the evidence before the court indicates that 75% of Doe Plaintiffs belong to putative subclass one; 12.5% belong to putative subclass two; and 25% belong to putative subclass three.[13] (*See* 2d PI at 12-13 (noting that group one consists of John Doe 1 and Jane Does 3-7; group two consists of Jane Doe 2; and group three consists of Jane Does 7 and 8). Considering a class of 500-600 people, and using these same percentages, putative subclass one would consist of approximately 375-450 people; putative subclass two would consists of approximately 63-75 people; and putative subclass three would consist of 125-150 people. The court agrees that these calculations are reasonably drawn from the facts before the court. Indeed, the fact that the court cannot determine the exact number of persons in the putative class and subclasses does not preclude class certification. *See Rank*, 604 F. Supp. at 36.

//

---

[13] The putative subclasses overlap. In particular, Jane Doe 7 belongs to both subclasses two and three. (*See* 2d PI at 12-13.) As a result, the combined percentages of each putative subclass add up to more than 100%. Doe Plaintiffs assert in their briefing that subclass one consisted of 62.5% of the class (Pl. Supp. Br. at 7), but this is an apparent error in calculation.

Moreover, in determining numerosity, the court also considers whether "individual claimants would have difficulty filing individual lawsuits out of fear of retaliation, exposure, and/or prejudice, such that it is unlikely that individual class members would institute separate suits." *Buttino v. F.B.I.*, No. C-90-1639, 1992 WL 12013803, at *2 (N.D. Cal. Sept. 25, 1992) (finding numerosity in a class action where an unknown number of gay Federal Bureau of Investigation employees worked under anti-gay policies and were unlikely to come forward individually); *see also O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 351 (N.D.Ill.2001) (finding numerosity met by a 30–person class seeking overtime in part because "a very important concern is the fear of retaliation for individual employees required to file individual claims"). Here, the issues presented demonstrate that individual suits are unlikely since the very protection Doe Plaintiffs seek from an injunction is to be shielded from exposure. Accordingly, the court concludes that Doe Plaintiffs have adequately met their burden of demonstrating numerosity—not only for the overall class but for each of the subclasses as well.

2. <u>Commonality</u>

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although the Ninth Circuit construes this requirement "permissively," it is insufficient to merely allege any common question. *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "Rather, "[w]hat matters to class certification is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal citations omitted). Not all questions of law and fact, however, need to be

common to satisfy the rule; "[n]or does common mean 'complete congruence.'"

*Rodriguez v. Hayes*, 594 F.3d 1105, 1122 (9th Cir. 2010) (quoting *In re First Alliance*

*Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006)). Indeed, "all that Rule 23(a)(2) requires is

"a single *significant* question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731

F.3d 952, 957 (9th Cir. 2013) (italics in original) (quoting *Mazza v. Am. Honda Motor*

*Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

      Here, there are numerous, significant common questions of law and fact that

encompass the entire class and all subclasses. All class members have personally

identifying information in the documents at issue and assert that that their First

Amendment and privacy rights will be violated if this information is released in response

to the PRA requests that are at the heart of this litigation. Indeed, the ultimate legal

question in this case—whether an exemption to the PRA prohibits the release of

unredacted documents that contain Doe Plaintiffs' personally identifying information—

applies to all members of the proposed class and subclasses and its answer drives this

litigation.

      Mr. Daleiden argues Doe Plaintiffs fail to demonstrate commonality because the

relationship of each putative class member to UW's fetal tissue research is unique and the

risk of harm to each from disclosure varies. (*See* Resp. at 3-10; *see, e.g.*, Def. Supp. Br.

at 4 ("This is not a group of people who all share a similar factual relationship to fetal

tissue research, all have similar information at stake, or are all at similar risk of harm

from disclosure.").) For example, Mr. Daleiden argues that the severity of the harm

differs because some individuals' involvement with fetal tissue research is substantial and

has been previously publicized whereas others may be only copied on an email that addresses several topics. (Resp. at 5-6.) He also argues that commonality is undermined because putative class members are employed by different entities—both public and private (*id.* at 8, 10), and some of the documents at issue may not contain "matters concerning the private life" of a class member (*id.* at 9).

The court agrees with Doe Plaintiffs, however, that none of the perceived differences Mr. Daleiden raises bear on Doe Plaintiffs' claims that (1) UW proposes to release personally identifying information about each putative class member in response to Mr. Daleiden's PRA request, (2) given the current political landscape concerning abortion and fetal tissue research, any individual publicly disclosed to be associated at any level with this research—irrespective of the nature of his or her position—faces a significant risk of harassment and violence, and (3) the PRA does not mandate the disclosure of personally identifying information in this specific context and in the face of such harm. (*See* Reply at 2-3; *see generally* TAC.) Indeed, the question of the severity of potential harm to an individual class member might be relevant to class certification if (1) Doe Plaintiffs sought damages; (2) the variation in Doe Plaintiffs' places of employment might make a difference if Doe Plaintiffs needed to demonstrate uniform employment by a particular entity; and (3) whether certain documents contained personally identifying information might matter if Plaintiffs needed to prove that every document subject to disclosure required redaction. However, Doe Plaintiffs do not seek damages; their claims do not depend on uniformity of employment but rather their association with organizations conducting or supporting fetal tissue research or providing

of abortion services; and whether certain documents may require no redactions is irrelevant to their claims.[14]  (*See generally id.*)

In any event, as noted above, "common" does not mean "complete congruence." *Rodriguez v. Hayes*, 591 F.3d 1105 1122 (9th Cir. 2010).  "[E]ven a single common question will do," *Dukes*, 564 U.S. at 359 (internal quotation marks, brackets, and citation omitted), so long as it generates a common answer that "drive[s] the resolution of the litigation," *id.* at 350.  Doe Plaintiffs identify more than one significant legal question common both to the overarching class and each of the three subclasses, and thus, the court concludes that they have adequately demonstrated commonality.  Further, creating

---

[14] Mr. Daleiden makes similar arguments with respect to the subclasses.  (Def. Supp. Br. at 6-9.)  Specifically, he argues that inducing practitioners, advocates, and staff in subclass one and both researchers and staff in subclass three undermines commonality and cohesion because these putative subclass members' duties are so disparate.  (*Id.* at 7.)  However, it is not the nature of the putative subclass members' duties or their positions that is relevant to the court's analysis of commonality; rather, it is the putative class members' mere association with or employment by the advocacy or research organization—irrespective of their individual duties or positions— that is relevant to the court's analysis.  After all, when these organizations are bombed, victimized by arson, or threatened with mass gun violence, for example, the entire organization, and everyone employed by or associated with it, is threatened as a result of the organizations' advocacy or research—not just those in high level or high profile positions.  (*See* Gertzog Decl. (Dkt. # 3) ¶ 3 (noting that, according to the National Abortion Federation, since 1977 there have been 42 bombings and 185 arsons, among other incidents of criminal activity, directed at abortion facilities in the United States); *id.* ¶ 7 (describing harassment as perpetrated not only against physicians, but also "staff in other roles and even vendors who provide Planned Parenthood with supplies have . . . been targeted"); *see also id.* ¶ 14 ("Planned Parenthood employees experience harassment due to their employment . . . ."); Contrell Decl. (Dkt. # 4) ¶ 3 ("Cedar River Clinics has been confronted with the dreadful decision to either barricade ourselves in our clinics while waiting for law enforcement to arrive or risk fleeing the building before a gunman arrives to carry out his threat to kill *everyone* in the clinics.") (italics added); *see also id.* ¶ 7 ("For their personal safety and privacy, medical researchers, employees of reproductive health clinics, and their families, must not be placed in the cross-hairs of individuals who are fanatically opposed to fetal tissue research and abortion simply because they interact with a public agency.").)  Accordingly, the court rejects Mr. Daleiden's argument that including employees at all levels of the advocacy or research organizations at issue undermines commonality or cohesion.

subclasses around operative common factual traits dispels any doubts concerning commonality due to factual differences between class members.[15]  *See e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 956 (9th Cir. 2003) ("conclud[ing] that "the district court was within its discretion to find the commonality requirement of Rule 23(a)(2) met in this case," but adding that "[t]he district court in all likelihood could, also without abusing its discretion, have declined to certify the overall class in favor of certifying discrete sub-classes, so as to assure commonality"); *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 584 (W.D. Wash. 2008) ("The Court has addressed this argument [that commonality is not satisfied due to differences in the class] by dividing the proposed class into subclasses for each plan.").

### 3.  Typicality

"The test of [Rule 23(a)(3)] typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *see also* Fed. R. Civ. P. 23(a)(3).  The court notes that in addition to identifying eight putative representative Doe Plaintiffs, Doe Plaintiffs also demonstrate that each of the three proposed subclasses has at least one Doe Plaintiff putative representative.  (*See* 2d PI at 12-13 (identifying John Doe 1 and Jane Does 3-7 as members of group or

---

[15]  The court agrees with Doe Plaintiffs that a subclass for staff members of the organizations at issue is not needed.  Although some class members may perform only clerical or administrative tasks for their respective employers or organizations, the court's analysis of their First Amendment or privacy rights remains the same.  (*See* 2d PI at 20-24; *see also supra* n.14.)

1  subclass one; Jane Doe 2 as a member of group or subclass two, and Jane Does 7 and 8 as

2  members of group or subclass three).

3      In his response to Doe Plaintiffs' motion for class certification, Mr. Daleiden

4  briefly argues that Doe Plaintiffs fail to meet the typicality prerequisite because putative

5  class representatives who are employed by a public agency may be "preoccupied with

6  defenses to [them]," namely a statutory exception to the PRA found in RCW

7  42.56.230(3).[16]  (Resp. at 10 (quoting *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D.

8  625, 631 (W.D. Wash. 2011)).)  The court is not persuaded.

9      "Under [Rule 23(a)'s] permissive standards, representative claims are 'typical' if

10  they are reasonably co-extensive with those of absent class members; they need not be

11  substantially identical."  *Hanlon*, 150 F.3d at 1120.  Here, the "broad composition of the

12  representative parties," *id.*, which includes Does Plaintiffs employed by both public and

13  private entities (*see generally* Doe 1-8 Decls.), "vitiates any challenge founded on

14  typicality," *Hanlon*, 150 F.3d at 1120.

15      Second, the existence of a unique defense defeats typicality only where that

16  defense is likely to cause "absent class members to suffer."  *Hanon*, 976 F.2d at 508

17  (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

18  903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v.*

19  *Baker*, --- U.S. ---, 137 S. Ct. 1702 (2017)); *see also Rodriguez*, 591 F.3d at 1124

20

21      [16] The statutory exception at issue provides that "[p]ersonal information in files
   maintained for employees, appointees, or elected officials of any public agency to the extent that
   disclosure would violate their right to privacy" is "exempt from public inspection and copying"
22  under the PRA.  RCW 42.56.230(3).

("Defenses unique to a class representative counsel against class certification only where they threaten to become the focus of the litigation."). There is no indication that any putative class members will suffer because the statutory exception may apply to the personally identifying information of some publicly-employed Doe Plaintiffs or that the statutory exception threatens to become the focus of the litigation. Doe Plaintiffs represent a broad cross section of putative class members, from both public and private employers, who have personally identifying information contained in the documents at issue and fear harassment or physical harm if UW releases this information. (*See generally* Doe 1-8 Decls.) Because Doe Plaintiffs collectively represent the factual and legal issues that could arise among all members of the proposed class, and there is at least one Doe Plaintiff in each subclass, the court concludes that Doe Plaintiffs have adequately demonstrated the typicality prerequisite necessary for class and subclass certification.

### 4. Adequacy of Representation

Finally, the court may only grant class certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 24(a)(4). This prerequisite has two parts: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Mr. Daleiden does not challenge the adequacy of representation. (*See generally* Resp.; Supp. Resp.; Def. Supp. Br.)

*//*

Doe Plaintiffs seek declaratory and injunctive relief applicable to the entire class. (*See* TAC.) Individual damages are not at issue. Thus, there is little, if any, possibility of conflicting interests between Doe Plaintiffs and members of the class or respective subclass that would preclude Doe Plaintiffs from making decisions that benefit the entire class or respective subclass. Further, counsel for the putative class are serving pro bono and thus have no financial interest in the outcome of the case. (Edwards Decl. (Dkt. # 17) ¶ 7; Bowman Decl. (Dkt. # 18) ¶ 5; Ainsworth Decl. (Dkt. # 165) ¶ 4.) Finally, Doe Plaintiffs' counsel has significant experience in litigation involving the PRA and complex class action litigation. (*See, e.g.*, Edwards Decl. ¶¶ 3, 5; Bowman Decl. ¶¶ 2-3.) The court concludes that Doe Plaintiffs met their burden of demonstrating the adequacy of representation.

In sum, the court concludes that Doe Plaintiffs meet their burden of demonstrating all four Rule 23(a) class certification prerequisites. *See* Fed. R. Civ. P. 23(a)(1)-(4). Accordingly, the court now considers the requirements for certification of the putative class under Rule 23(b)(2).

**C.      Rule 23(b)(2) Criteria**

Doe Plaintiffs seek certification under Rule 23(b)(2), which applies whenever "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to [Rule 23](b)(2) is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class

members or as to none of them." *Dukes*, 564 U.S. at 360. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

This case arises from UW's decision that—absent a court order to the contrary—it would release documents responsive to Mr. Daleiden's PRA request without redacting the putative class members' personally identifying information. (*See generally* TAC.) The court concludes that a single declaration that the disclosure of the putative class members' personally identifying information is exempt under the PRA and a single injunction requiring UW to redact that information will equally impact all members of the proposed class and subclasses.[17] Indeed, the preliminary injunction the court already issued functions in precisely this way. (*See generally* 2d PI.)

Nevertheless, Mr. Daleiden challenges Rule 23(b)(2) certification on grounds that parallel his challenges to commonality. He argues that the court "cannot simply enter a single injunction that applies equally to all class members" because "each putative class member's claim will depend on an individualized and fact-specific balancing of interests that will differ—often significantly—from person to person." (Resp. at 11-12.) For many of the same reasons that the court rejected this argument when considering commonality, the court rejects it here as well. *See supra* § III.B.2 & n.14.

In any event, Mr. Daleiden's argument "miss[es] the point" of Rule 23(b)(2) certification, which requires only that "the primary relief sought is declaratory or

---

[17] Each subclass satisfies Rule 23(b)(2) because all of the putative class members seek the same injunction regardless of subclass. (*See* TAC; *see also* Pl. Supp. Br. at 9.)

injective." *See Rodriguez*, 591 F.3d at 1125 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)). In other words, "[t]he rule does not require [the court] to examine the viability or bases of class members' claims for declaratory or injunctive relief, but only to look at whether members seek uniform relief from a practice applicable to all of them." *Id.* The Ninth Circuit emphasizes that "'it is sufficient' to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Id.* (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)); *see also Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (emphasizing that although "the claims of individual class members may differ factually," certification under Rule 23(b)(2) is a proper vehicle for challenging "a common policy"). Doe Plaintiffs seek an order enjoining the release of all personally identifying information in the documents at issue here as exempt from production under the PRA. Despite factual differences among various putative class members due to differing employers or job positions, the uniform injunctive and declaratory relief sought by all putative class members satisfies the requirements of Rule 23(b)(2).

Mr. Daleiden also argues that an injunction would require "separate review of every document" in order to ensure proper redaction of personally identifying information and would require an individualized "assess[ment of] the degree to which such information would enable a third party to divine the identity of participants in the communications." (Resp. at 12.) Mr. Daleiden misses the mark with this argument too because "questions of manageability and judicial economy are irrelevant to [Rule]

23(b)(2) class actions." *Rodriguez*, 591 F.3d at 1125 (ellipsis and citation omitted). In any event, the court presumes that virtually every PRA document production requires a review of each document for information that requires redaction. (*See* Tapper Decl. ¶ 3 ("As a Public Records Compliance Officer, my responsibilities include . . . reviewing records for exemptions permitted under RCW [ch.] 42.56.").) Although the parties may dispute whether particular content constitutes personally identifying information, such theoretical disputes do not defeat the availability of Rule 23(b)(2) certification. *See, e.g.*, *John Doe # 1 v. Veneman*, 380 F.3d 807, 812 (5th Cir. 2004) (upholding certification of Rule 23(b)(2) class in "reverse-FOIA" action seeking to prohibit the government from disclosing information in requested documents "that would allow the recipient to obtain or deduce the identity of [certain ranchers]"). In sum, the court concludes that Doe Plaintiffs adequately demonstrate the requirements of Rule 23(b)(2).

**D.     Discovery**

In both his original response to Doe Plaintiffs' class certification motion and in his more recent supplemental briefing, Mr. Daleiden asks the court to defer ruling on the motion "until after discovery 'to investigate precisely how much the putative class members' situations vary, . . . [to] address with even greater specificity the reasons why class certification is improper.'" (Def. Supp. Br. at 9 (quoting Resp. at 15); *see also* Supp. Resp. at 2.) He contends that he needs discovery into (1) the specific information Doe Plaintiffs claim should be redacted from the documents at issue, (2) the varying situations of the members of the putative class and the suitability of putative class representatives, and (3) the information contained in the documents. (Resp. at 14-15.)

"District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)). The court denies Mr. Daleiden's request to delay its decision on Doe Plaintiffs' class certification for the following reasons.

First, Mr. Daleiden has had sufficient opportunity to conduct class discovery, but he has failed to detail any such efforts. Although the court stayed his matter during Mr. Daleiden's first appeal (Min. Entry (Dkt. # 109)), it lifted the stay on August 22, 2017 (8/22/17 Order at 1 n.1). Further, the court clarified in its January 17, 2018, order that the parties were to engage in discovery despite Mr. Daleiden's second appeal of the court's preliminary injunction to the Ninth Circuit. (1/17/18 Order (Dkt. #153) at 5 (stating that "there is now both time and opportunity for the parties to engage in previously neglected discovery").) In that same order, the court also clarified its jurisdiction over Doe Plaintiffs' motion for class certification and indicated its intention to rule on the motion "in due course." (*Id.* at 4.) More than two months later, Mr. Daleiden renewed his request for discovery prior to the court's determination of Doe Plaintiffs' class certification motion. (Def. Supp. Br. at 9.) Although Mr. Daleiden asserts that Doe Plaintiffs "have produced nowhere near enough information," Mr. Daleiden fails to state what, if any, specific class discovery he has sought or what responses may be outstanding. (*See id.* at 9-10.) Without any evidence that he has even attempted to conduct class discovery or failed to receive timely responses, the court is not inclined to

1   grant him further time to conduct such discovery prior to ruling on Doe Plaintiffs'

2   motion.

3          In any event, the court is permitted to reexamine class certification during the

4   course of this litigation should additional discovery indicate that such reexamination is

5   warranted.  Indeed, Rule 23(c)(1)(C) expressly provides that the court's class certification

6   decision "may be altered or amended before final judgment."  Fed. R. Civ. P.

7   23(c)(1)(C); *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A

8   district court may decertify a class at any time."); *Dukes v. Wal-Mart, Inc.*, 509 F.3d

9   1168, 1176 (9th Cir. 2007) ("Rule 23 provides district courts with broad discretion to

10  determine whether a class should be certified, and to revisit that certification throughout

11  the legal proceedings before the court."), *overruled on other grounds by Dukes*, 564 U.S.

12  336.  If developments in these proceedings disprove Doe Plaintiffs' contentions

13  concerning class certification, the court is not precluded from modifying or decertifying

14  the class or subclasses or adding subclasses.  Thus, if Mr. Daleiden discovers information

15  subsequent to this order that impacts court's class certification ruling, he is not precluded

16  from raising that information with the court in a manner that is consistent with his

17  obligations under Federal Rule of Civil Procedure 11(b).  *See* Fed. R. Civ. P. 11.

18                     **IV.    CONCLUSION**

19         In sum, the court concludes that Doe Plaintiffs have met their burden of

20  demonstrating that their amended proposed class and three subclasses meet the Rule

21  23(a) prerequisites.  Furthermore, the amended proposed class and subclasses seek

22  injunctive and declaratory relief that, if granted, would be appropriate respecting the class

and subclasses as a whole.  As such, the court concludes that Doe Plaintiffs have also met their burden of demonstrating the requirements of Rule 23(b)(2).  Accordingly, the court GRANTS Doe Plaintiffs' motion for class certification (Dkt. # 16).

The court hereby CERTIFIES this matter as a class action.  The class and subclasses are defined as follows:

> All individuals whose names and/or personally identifying information (e.g., work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by the University of Washington that relate to the purchase, transfer, or procurement of human fetal tissues, human fetal organs, and/or human fetal cell products at the University of Washington Birth Defects Research Laboratory from 2010 to present, and who:

> (1) are associated with entities that provide abortions and/or make available fetal tissue to the Birth Defects Research Laboratory;

> (2) are associated with the Birth Defects Research Laboratory; or

> (3) are associated with medical researchers who use fetal tissue obtained from the Birth Defects Research Laboratory.

Finally, the court hereby APPOINTS Doe Plaintiffs as class representatives, and further APPOINTS (1) John Doe 1 and Jane Does 3-7 as representatives of subclass one; (2) Jane Doe 2 as the representative of subclass two; and (3) Jane Does 7 and 8 as representatives of subclass three.  The court also APPOINTS Doe Plaintiffs' counsel as class counsel.

Dated this 23rd day of April, 2018.

JAMES L. ROBART
United States District Judge