1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

JANE DOES 1-10, et al.,

11
                                    Plaintiffs,
              v.
12

UNIVERSITY OF WASHINGTON,
13    et al.,

14
                                    Defendants.

CASE NO. C16-1212JLR

FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND
ORDER GRANTING
PLAINTIFFS' MOTION AND
REINSTATING THE
PRELIMINARY INJUNCTION
AS TO DOE PLAINTIFFS 1, 2,
AND 6

15
16

## I.   INTRODUCTION

17

       Before the court is Plaintiffs Jane Does 1-10 and John Does 1-10's (collectively,

18    "Doe Plaintiffs") motion to reinstate the preliminary injunction as to Doe Plaintiffs 1, 2,

19    and 6.  (*See* Mot. (Dkt. # 206).)  Doe Plaintiffs' motion follows the Ninth Circuit Court of

20    Appeal's reversal and vacatur of this court's preliminary injunction as to these three Doe

21    Plaintiffs based on insufficient evidentiary grounds.  (*See* (3/25/20 9th Cir. Mem. (Dkt.

22    # 197) at 4.)  Defendant David Daleiden opposes the motion.  (Daleiden Resp. (Dkt.

# 211).)  Defendants University of Washington and Perry Tapper (collectively, "UW") do not take a substantive position on Doe Plaintiffs' motion but seeks guidance from the court concerning its obligations following the court's resolution of Doe Plaintiffs' motion.  (*See generally* UW Resp. (Dkt. # 210).)  The court has considered the motion, Mr. Daleiden's and UW's responses, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Doe Plaintiffs' motion and reinstates a preliminary injunction regarding Doe Plaintiffs 1, 2, and 6 based on their more substantial evidentiary showing as more fully described below.[2]

//

//

//

//

---

[1] Mr. Daleiden asks for oral argument.  (*See* Daleiden Resp. at title page.)  The parties have fully briefed both the factual and legal issues.  (*See* Mot.; UW Resp.; Daleiden Resp.; Reply (Dkt. # 212).)  Further, as described herein, the court has considered the issues surrounding the preliminary injunction multiple times.  *See infra* § II.A.  As a result, the court does not consider oral argument to be helpful to its disposition of Doe Plaintiffs' motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES Mr. Daleiden's request.

[2] In accordance with Federal Rules of Civil Procedure 52(a) and 65(d), this order shall constitute the court's findings of fact and conclusions of law setting forth the grounds for the reissuance of the preliminary injunction as to Doe Plaintiffs 1, 2, and 6.  *See* Fed. R. Civ. P. 52(a); Fed. R. Civ. P. 65(d); *see also A. H. R. v. Wash. State Health Care Auth.*, No. C15-5701JLR, 2016 WL 98513, at *1 n.4 (W.D. Wash. Jan. 7, 2016).  Although the court has not labeled paragraphs specifically as findings of fact or conclusions of law, such labels are not necessary.  The nature of the findings and conclusions that follow is apparent.  *See Tri–Tron Int'l v. A.A. Velto*, 525 F.2d 432, 435-36 (9th Cir. 1975) ("We look at a finding or a conclusion in its true light, regardless of the label that the district court may have placed on it. . . . [T]he findings are sufficient if they permit a clear understanding of the basis for the decision of the trial court, irrespective of their mere form or arrangement") (citations omitted); *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir. 1982) ("The fact that a court labels determinations 'Findings of Fact' does not make them so if they are in reality conclusions of law.").

ORDER - 2

## II.   BACKGROUND

**A.   Procedural Background**

The procedural background proceeding Doe Plaintiffs' present motion is intricate and involves multiple appeals.  The court recounts the procedural background of this case below.

On February 9, 2016, Mr. Daleiden issued a request to UW under Washington State's Public Records Act ("PRA"), RCW ch. 42.56, seeking to "inspect or obtain copies of all documents that relate to the purchase, transfer, or procurement of human fetal tissues, human fetal organs, and/or human fetal cell products at the [UW] Birth Defects Research Laboratory from 2010 to present."  (Power Decl. (Dkt. # 5) ¶ 4, Ex. C (bolding omitted).)  On February 10, 2016, Defendant Zachary Freeman issued a similar PRA request to UW.[3]  (*Id.* ¶ 6, Ex. E.)  Among other documents, these PRA requests sought communications between UW or its Birth Defects Research Laboratory ("BDRL" or "the Lab"), on the one hand, and Cedar River Clinics ("Cedar River"), Planned Parenthood of Greater Washington and North Idaho, or certain individuals or employees of Cedar River and Planned Parenthood of Greater Washington and North Idaho, on the other hand.  (*Id.* at 1; *see also id.* ¶ 4, Ex. C at 1-2.)  Mr. Daleiden's PRA request specifically lists the names of eight such individuals.  (*Id.* ¶ 4, Ex. C at 1-2.)

On July 21, 2016, UW notified Doe Plaintiffs that absent a court order issued by August 4, 2016, UW would provide documents responsive to Mr. Daleiden's PRA

---

[3] On December 27, 2016, the court entered a stipulated order dismissing Mr. Freeman from the lawsuit.  (Stip. Ord. of Dismissal (Dkt. # 105).)

request without redaction at 12:00 p.m. on August 5, 2016.  (Does 1, 3-4, 7-8 Decls. (Dkt.

## 6, 8-9, 12-13) ¶ 3, Ex. A; Doe 5 Decl. (Dkt. # 10) ¶ 3; Doe 6 Decl. (Dkt. # 11) ¶ 5, Ex.

A.)  On July 26, 2016, UW issued a similar notice to Doe Plaintiffs regarding Mr.

Freeman's request and indicated that, absent a court order, UW would provide responsive

documents without redaction on August 10, 2016.[4]  (Does 1, 3-4 Decls. ¶ 4, Ex. B.)[5]

On August 3, 2016, Doe Plaintiffs filed a complaint on behalf of a putative class

seeking to enjoin UW from issuing unredacted documents in response to the PRA

requests.  (Compl. (Dkt. # 1).)   Doe Plaintiffs object to disclosure of the requested

documents in unredacted form because the documents include personally identifying

information such as direct work phone numbers, work emails, personal cell phone

numbers, and other information.  (*See* TAC (Dkt. # 77) at 2 ("Doe Plaintiffs . . . seek to

have their personal identifying information withheld to protect their safety and

privacy.");[6] *see also*, *e.g.*, Doe 5 Decl. ¶¶ 4-5 ("Any email contacts I had with [the Lab]

would have highly personal information such as my name, email address, and phone

---

[4] Under RCW 42.56.540, "[a]n agency has the option of notifying persons named in the record or to whom a record specifically pertains" prior to disclosure.

[5] Jane Doe 2 omitted exhibits from her declaration, but the other Doe declarations sufficiently demonstrate that UW issued similar letters to the individuals implicated in the relevant PRA request.  (*See* Doe 2 Decl. (Dkt. # 7).)

[6] Doe Plaintiffs also filed an amended complaint and a second amended complaint on August 3, 2016.  (*See* FAC (Dkt. # 22); SAC (Dkt. # 23).)  Doe Plaintiffs' amended complaint amends allegations concerning jurisdiction and venue.  (*Compare* Compl. ¶¶ 17-18 (alleging jurisdiction under RCW 2.08.010 and RCW 4.28.020 and venue under RCW 42.56.540), *with* FAC ¶¶ 17-18 (alleging jurisdiction under 28 U.S.C. § 1331 and venue under 28 U.S.C. § 1391(b)(2)).)  Doe Plaintiffs' second amended complaint corrects what appear to be typographical errors in paragraph 18 of the amended complaint relating to venue.  (*Compare* FAC ¶ 18, *with* SAC ¶ 18.)

number. . . . My name, email address, and phone number are information that I try to keep private when related to where I work.").)

On the same day that they filed suit, Doe Plaintiffs filed a motion seeking both a temporary restraining order ("TRO") and a preliminary injunction against disclosure of the requested documents.[7]  (*See* TRO/PI Mot. (Dkt. # 2).)  In addition, Doe Plaintiffs filed a motion for class certification.  (*See* MFCC (Dkt. # 16).)  Doe Plaintiffs asked the court to certify a class consisting of "[a]ll individuals whose names and/or personal identifying information (work addresses, work or cell phone numbers, email addresses) are contained in documents prepared, owned, used, or retained by UW that are related to fetal tissue research or donations."  (*Id.* at 2.)

On August 3, 2016, the court granted Doe Plaintiffs' motion for a TRO but set the TRO to expire on August 17, 2016, at 11:59 p.m.  (TRO (Dkt. # 27) at 7.)  The court restrained UW "from releasing, altering, or disposing of the requested documents or disclosing the personal identifying information of [Doe] Plaintiffs pending further order from this court."  (*Id.* at 7.)  On August 17, 2016, the court extended the TRO "until such time as the court resolves [Doe] Plaintiffs' pending motion for a preliminary injunction."  (8/17/16 Order (Dkt. # 54) at 2.)

//

//

//

---

[7] On the same day, Doe Plaintiffs also filed a motion to proceed in pseudonym. (MTPP (Dkt. # 15).)  Defendants did not oppose the motion (*see generally* Dkt.), and the court granted it on August 29, 2016 (8/29/16 Order (Dkt. # 68)).

On November 11, 2016, the court granted Doe Plaintiffs' motion for a preliminary injunction.[8]  (PI Ord. (Dkt. # 88).)  The court concluded that Doe Plaintiffs were likely to succeed on the merits of their claim that disclosure of their personally identifying information would render them and those similarly situated uniquely vulnerable to harassment, shaming, stalking, or worse, and in this context, would violate their First Amendment rights to freedom of expression and association.  (*Id*. at 18-19.)  Thus, the court also concluded that Doe Plaintiffs were "likely to succeed on the merits of their claim that their personally identifying information is exempt from disclosure under the PRA."  (*Id*. at 19.)  After finding that the remaining factors—irreparable injury, the public interest, and the balance of equities—also favored preliminary injunctive relief, the court granted Doe Plaintiffs' motion but narrowed the scope of the injunctive relief it granted as compared to the relief granted in the TRO.  (*See id*. at 19-22, 25.)

In the preliminary injunction, the court did not prohibit the release of the documents at issue but rather enjoined UW from releasing the requested documents without first redacting all personally identifying information or information for Doe

---

[8] Before the court could resolve Doe Plaintiffs' motion for a preliminary injunction, Mr. Daleiden filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.  (*See* MTD (Dkt. # 49).)  On October 4, 2016, the court granted Mr. Daleiden's motion and dismissed Doe Plaintiffs' second amended complaint without prejudice for lack of subject matter jurisdiction.  (10/4/16 Order (Dkt. # 76) at 12-14.)  The court also granted Doe Plaintiffs leave to file a third amended complaint that remedied the jurisdictional deficiencies identified in the court's order.  (*Id*. at 14-18.)  Doe Plaintiffs timely filed their third amended complaint on October 18, 2016 (*see* TAC), and the court concluded that Doe Plaintiffs' third amended complaint satisfied the directives of its October 4, 2016, order with respect to subject matter jurisdiction (*see* PI Order at 5).  Doe Plaintiffs' third amended complaint also added Defendant Perry Tapper, who is a records compliance officer in UW's Office of Public Records and Open Meetings ("OPR").  (*See* TAC ¶ 12; Supp. Tapper Decl. (Dkt. # 121) ¶ 2.)  As noted above, the court refers to UW and Mr. Tapper collectively as "UW."

1    Plaintiffs from which a person's identity could be derived with reasonable certainty.  (*Id.*

2    at 19-21, 25.)  Specifically, the court held that UW was required to redact all personally

3    identifying information, including but not limited to (a) information that identifies or

4    provides the location of an individual, (b) information that would allow an individual to

5    be identified or located, (c) information that would allow an individual to be contacted,

6    (d) names of individuals, (e) phone numbers, (f) facsimile numbers, (g) email and mailing

7    addresses, (h) social security or tax identification numbers, and (i) job titles.  (*Id.* at 25-

8    26.)

9        Pursuant to the court's preliminary injunction, UW produced redacted records to

10   Mr. Daleiden in two stages and completed its production on September 8, 2017.  (*See*

11   Supp. Tapper Decl. ¶¶ 3-14.)  Stage 1 of the production of documents consisted of 1,678

12   pages, and stage 2 consisted of 3,489 pages.  (*Id.* ¶¶ 5, 14.)

13       On December 15, 2016, Mr. Daleiden filed a notice appealing "the district court's

14   grant of a preliminary injunction prohibiting disclosure of 'all personally identifying

15   information or information from which a person's identity could be derived with

16   reasonable certainty.'"  (*See* 8/14/17 9th Cir. Mem. (Dkt. # 113) at 2 (quoting PI Order at

17   25); *see also* 12/15/16 Not. of App. (Dkt. # 98).)  On January 4, 2017, this court stayed

18   proceedings at the district court level, except for purposes of enforcing and administering

19   the preliminary injunction, pending the resolution of Mr. Daleiden's appeal.  (1/4/17 Min.

20   Entry (Dkt. # 109).)

21       On August 14, 2017, the Ninth Circuit reversed and remanded the court's

22   preliminary injunction order but nevertheless left the preliminary injunction in place for

1   120 days "to allow the district court to enter the necessary findings of fact and

2   conclusions of law supporting injunctive relief." (8/14/17 9th Cir. Mem. at 4.) In its

3   order, the Ninth Circuit stated that "[t]o prevail on the First Amendment claim, . . . Doe

4   Plaintiffs must show that particular individuals or groups of individuals were engaged in

5   activity protected by the First Amendment and 'show "a reasonable probability that the

6   compelled disclosure of personal information will subject"' those individuals or groups

7   of individuals 'to threats, harassment, or reprisals' that would have a chilling effect on

8   that activity." (8/14/17 9th Cir. Mem. at 3 (citing *John Doe No. 1 v. Reed*, U.S. 186, 200

9   (2010) and quoting *Buckley v. Valeo*, 424 U.S. at 1, 74 (1976) (brackets omitted))

10  (footnote omitted).) The Ninth Circuit agreed "that there may be a basis for redaction

11  where disclosure would likely result in threats, harassment, and violence," but determined

12  that "the [district] court's order did not address how the Doe Plaintiffs have made the

13  necessary clear showing with specificity as to the different individuals or groups of

14  individual who could be identified in the public records." (*Id.*) The Ninth Circuit also

15  determined that this court "made no finding that specific individuals or groups of

16  individuals were engaged in activity protected by the First Amendment and what that

17  activity was." (*Id.* at 3-4.) Accordingly, the court remanded the proceeding "to address

18  how disclosure of specific information would violate the constitutional or statutory rights

19  of particular individuals or groups." (*Id.* at 4.)

20          On August 22, 2017, the court lifted its prior stay and ordered Doe Plaintiffs, UW,

21  and Mr. Daleiden to file supplemental memoranda responding to the Ninth Circuit's

22  guidance. (*See* 8/22/17 Order (Dkt. # 114) at 1 n.1, 4-5.) After receiving the parties'

1  supplemental submissions, on November 30, 2017, the court reissued the preliminary

2  injunction as to all Doe Plaintiffs based on guidance in the Ninth Circuit's August 14,

3  2017, ruling.  (*See* 2d PI Order (Dkt. # 130).)

4        On December 7, 2017, Mr. Daleiden filed a motion seeking clarification that the

5  preliminary injunction did not require the redaction of non-personal corporate

6  information.  (Mot. to Clarify (Dkt. # 131).)  On December 14, 2017, Doe Plaintiffs filed

7  a notice re-noting their motion for class certification and a motion for summary judgment

8  and entry of a permanent injunction.  (12/14/17 Notice (Dkt. # 133); MSJ (Dkt. # 135).)

9  Before the parties could fully brief these motions, however, Mr. Daleiden filed a second

10 notice of appeal to the Ninth Circuit.  (2d Not. of App. (Dkt. # 147).)  On January 17,

11 2018, the court issued an order staying its consideration of Doe Plaintiffs' motion for

12 summary judgment pending Mr. Daleiden's appeal but allowing the parties to engage in

13 discovery and further indicating that it intended to rule on Doe Plaintiffs' motion for class

14 certification as well as Mr. Daleiden's motion for clarification of the preliminary

15 injunction.  (1/17/18 Order (Dkt. # 153).)

16       On February 26, 2018, the court granted Mr. Daleiden's motion to clarify the

17 preliminary injunction.  (*See* 2/26/28 Order (Dkt. # 155).)  Specifically, the court clarified

18 "that neither the preliminary injunction nor the reissued preliminary injunction require[d]

19 the redaction of non-personal corporate information, including corporate names, the

20 domain portion of work email addresses, and corporate physical addresses."  (*Id.* at 5

21 (footnote omitted).)

22 *//*

1      On April 24, 2018, the court granted Doe Plaintiffs' motion for class certification

2  under Federal Rule of Civil Procedure 23(b)(2), which applies whenever "the party

3  opposing the class has acted or refused to act on grounds that apply generally to the class,

4  so that the final injunctive relief or corresponding declaratory relief is appropriate

5  respecting the class as a whole." (*See* 4/24/18 Order (Dkt. # 172)); *see also* Fed. R. Civ.

6  P. 23(b)(2).  Ultimately, the court certified a class and three subclasses as follows:

7      All individuals whose names and/or personally identifying information (e.g.,
       work addresses, work or cell phone numbers, email addresses) are contained
8      in documents prepared, owned, used, or retained by the University of
       Washington that relate to the purchase, transfer, or procurement of human
9      fetal tissues, human fetal organs, and/or human fetal cell products at the
       University of Washington Birth Defects Research Laboratory from 2010 to
10     present, and who:

11     (1) are associated with entities that provide abortions and/or make available
       fetal tissue to the Birth Defects Research Laboratory;
12
       (2) are associated with the Birth Defects Research Laboratory; or
13
       (3) are associated with medical researchers who use fetal tissue obtained
14     from the Birth Defects Research Laboratory.

15  (4/24/18 Order at 31.)

16     On August 31, 2018, the parties stipulated to a second stay of the case pending the

17  conclusion of the appeal, and the court granted the stay.  (8/31/18 Stip. (Dkt. # 191);

18  9/4/18 Stay Order (Dkt. # 192).)

19     On March 25, 2020, the Ninth Circuit issued an order affirming in part, reversing

20  in part, and vacating in part the court's November 30, 2017, order reissuing the

21  preliminary injunction.  (3/25/20 9th Cir. Mem. (Dkt. # 197).)  The Ninth Circuit held

22  that "[t]o prevail on their First Amendment claim, . . . Doe Plaintiffs must show that

1   particular individuals or groups of individuals were engaged in activity protected by the

2   First Amendment and a reasonable probability that the compelled disclosure of personal

3   information will subject those individuals or groups of individuals to threats, harassment,

4   or reprisals that would have a chilling effect on that activity." (*Id.* at 3 (citing *John Doe*

5   *No. 1 v. Reed*, 561 U.S. 186, 200 (2010) and *Buckley v. Valeo*, 424 U.S. 1, 74 (1976))

6   (internal quotation marks omitted).) The Ninth Circuit further held that this court did not

7   err in concluding that Doe Plaintiffs 3, 4, and 5 "were engaged in activity protected by

8   the First Amendment, as they each took part in or were associated with advocacy for

9   reproductive rights." (*Id.* at 4 (citing *NAACP v. Alabamam ex rel. Patterson*, 357 U.S.

10  449, 462 (1958)).) In addition, the Ninth Circuit held that this court "did not err in

11  concluding that whether the research activities of Doe[ Plaintiffs] 7 and 8 constituted

12  First Amendment protected activity posed a serious question that goes to the heart of

13  [Doe Plaintiffs'] claims." (*Id.* (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265,

14  312 (1978)).)

15      However, the Ninth Circuit held that this court "clearly erred in determining that

16  Doe[ Plaintiffs] 1, 2, and 6 were engaged in activity protected by the First Amendment."

17  (*Id.*) Accordingly, the Ninth Circuit "reverse[d] and vacate[d] the preliminary injunction

18  with respect to Doe[ Plaintiffs] 1, 2, and 6," but "affirmed in all other respects." (*Id.*) In

19  so ruling with respect to Doe Plaintiffs 1, 2, and 6, the Ninth Circuit stated that "the court

20  relied solely on the exceedingly thin and generalized declarations of these Doe

21  [P]laintiffs, which fail to allege a particularized, personal link between the declarant and

22  a claimed protected activity." (*Id.*) Thus, the Ninth Circuit reversed this court with

respect to its ruling on Doe Plaintiffs 1, 2, and 6 solely on the basis of Doe Plaintiffs 1, 2, and 6's insufficient evidentiary showing.  (*See id.*)

Following the Ninth Circuit's remand, on June 4, 2020, Doe Plaintiffs filed a motion to reinstate the preliminary injunction as to Doe Plaintiffs 1, 2, and 6.  (*See* Mot.)  Mr. Daleiden opposes Doe Plaintiffs' motion.  (*See* Daleiden Resp.)  UW does not oppose the motion but asks the court for additional guidance following the court's resolution of the motion.  (*See* UW Resp.)  The parties have completed their briefing to the court and Doe Plaintiffs' motion is now ready for the court's disposition.

**B.    New Facts Related to Doe Plaintiffs' Motion to Reinstate the Preliminary Injunction for Doe Plaintiffs 1, 2, and 6**

Along with their motion to reinstate the preliminary injunction as to Doe Plaintiffs 1, 2, and 6, Doe Plaintiffs 1, 2, and 6 filed supplemental declarations.  (*See* Does 1, 2, and 6 Supp. Decls. (Dkt. ## 207-09).)  In their supplemental declarations, Doe Plaintiffs 1, 2, and 6 attempt to fill the evidentiary hole identified by the Ninth Circuit and provide the necessary "particularized, personal link" to "a claimed protected activity," which in this case would be either taking part in or being associated with advocacy for reproductive rights or research activities involving fetal tissue.  (*See* 3/25/20 9th Cir. Mem. at 4.)

**1.    John Doe 1**

In his supplemental declaration, John Doe 1 adds information not contained in his initial declaration.  (*Compare* Doe 1 Decl. *with* Doe 1 Supp. Decl.)  For the first time, he identifies himself as a pediatric pathologist.  (Doe 1 Supp. Decl. ¶ 5.)  He explains that he works with Seattle Children's Hospital Department of Laboratories ("SCH Diagnostic

1   Lab"), which is the regional center for laboratory diagnosis of pediatric disease. (*Id.*)

2   Due to its specialized expertise, SCH Diagnostic Lab performs autopsies of fetuses that

3   died in utero and that outside institutions refer to the SCH Diagnostic Lab. (*Id.* ¶ 6.) For

4   the first time, John Doe 1 explains the "significant research applications in the work that

5   [he] performs." (*Id.* ¶ 7.) For example, he explains that the fetal autopsies he performs

6   attempt "to make a connection between the [fetus's] pathology results and the [fetus's]

7   in-utero studies," such as ultrasound. (*Id.*) John Doe 1 explains that "beyond its benefits

8   in the individual case," his "analysis often . . . can be used longitudinally to inform the

9   diagnosis of that particular malformation in other patients with similar conditions." (*Id.*)

10  He also informs the court for the first time that the data he collects as a pediatric

11  pathologist "is utilized in many clinical studies." (*Id.* ¶ 7.)

12      John Doe 1 also specifically connects his work as a pediatric pathologist to the

13  research performed by and through the UW Birth Defects Research Lab ("UWBDRL")

14  for the first time. (*Id.* ¶ 9.) He attests that the SCH Diagnostic Lab, for which he works,

15  collaborates with UWBDRL when a parent consents to donate fetal tissue. (*Id.* ¶ 10.)

16  Specifically, he attests for the first time that, in his role, he coordinates the distribution of

17  the fetal tissue to UWBDRL after a fetal autopsy is complete. (*Id.*) He states that he

18  recalls 5-6 cases in which a parent has consented both to a fetal autopsy and fetal tissue

19  donation to UWBDRL. (*Id.* ¶ 14.) In these cases, surplus tissue from the autopsy that is

20  not required for diagnosis or other clinically necessary tests is retained for research. (*Id.*)

21  In his supplemental declaration, John Doe 1 informs the court that, if UWBDRL needs

22  and requests particular fetal tissue for its research purposes, he uses his professional

1  judgment in his role as a pediatric pathologist to examine, obtain, and process the fetal

2  tissue specimen for distribution to UWBDRL for its research purposes.  (*Id.*)

3        **2. Jane Doe 2**

4        In her supplemental declaration, Jane Doe 2 adds information not contained in her

5  initial declaration.  (*Compare* Doe 2 Decl. *with* Doe 2 Supp. Decl.)  For example, for the

6  first time, Jane Doe 2 informs the court that, until recently, she was a research scientist at

7  UW and worked at UWBDRL "to facilitate scholarly research using fetal tissue." (Doe 2

8  Supp. Decl. ¶ 5.)  UWBDRL is a laboratory and repository utilized "to collect, identify,

9  process and distribute fetal tissue for research purposes strictly to non-profit, academic

10  facilities around the country," and it works with ten different clinics and hospitals

11  throughout Washington State to collect tissue for research purposes.  (*Id.* ¶¶ 6-7.)  For the

12  first time, Jane Doe 2 informs the court that, in her role, she "worked closely with these

13  participating clinics and hospitals," who "would occasionally call [her] when a patient

14  elected to terminate her pregnancy." (*Id.* ¶ 8.)  Jane Doe 2 also explains that she "would

15  then travel to the site to counsel the patient on the option of fetal tissue donation." (*Id.*)

16  Jane Doe 2 attests for the first time that she "travelled to clinical sites approximately 4-5

17  days a week for the purpose of collecting fetal tissue specimens to bring to the

18  [UW]BDRL for research purposes." (*Id.* ¶ 9.)  She also attests for the first time in her

19  supplemental declaration that, once she was back at UWBDRL, she "was responsible for

20  isolating the specific organs and/or tissue that the researchers required and overseeing the

21  transfer of the tissue to the researchers." (*Id.*)

22

Jane Doe 2 also attests in her supplemental declaration that, in her role, she "provided regular monitoring of the clinical sites to ensure they were in compliance with the requirements of the Federalwide Assurance for the Protection of Human Subjects and ensure[d] that staff members who consented subjects to research had completed either the Collaborative Institutional Training Initiative research ethics and compliance training or the Human Subjects Protections training offered through the [National Institutes of Health ("NIH")] Office of Extramural Research." (*Id.* ¶ 11.)  In addition, she newly informs the court that she "provided regular monitoring of the clinical sites to ensure that clinical staff were trained in the proper handling and processing of fetal tissue for transport to the [UW]BDRL." (*Id.*)

For the first time, Jane Doe 2 also details her role in reviewing application materials for researchers to receive approval as recipients of fetal tissue from the UWBDRL.  (*See id.* ¶¶ 13-14.)  Specifically, when research institutions apply to receive fetal tissue for research purposes from UWBDRL, they "must submit an abstract along with their application materials, providing the [UW]BDRL with the intended goal for the research and how the donated fetal tissue would be utilized in support of that goal." (*Id.* ¶ 13.)  Jane Doe 2 "review[s] the application materials and facilitate[s] the process for the researchers to receive approval as recipients of the fetal tissue." (*Id.* ¶ 14.)  This work includes "assisting with the . . . [NIH] and [UW's Independent Review Board ("IRB")] applications, communicating with investigators regarding lab services, reviewing the feasibility of the study design, and assisting with other institutional requirements (e.g., Material Transfer Agreements)." (*Id.*)

### 3. Jane Doe 6

In her supplemental declaration, Jane Doe 6 adds information not contained in her initial declaration. (*Compare* Doe 6 Decl. *with* Doe 6 Supp. Decl.)  Jane Doe 6 is a genetic counselor in the Maternal Fetal Medicine Department at Evergreen Hospital Medical Center ("Evergreen").  (Doe 6 Supp. Decl. ¶ 3.)  For the first time, she informs the court in her supplemental declaration that she has a bachelor's degree in microbiology and a master's degree in genetic counseling.  (*Id.*)  She also newly informs the court that she "work[s] with patients who have high risk pregnancies, primarily those who have a family history of [a] genetic condition, who have had a test showing a high risk of a genetic condition in the fetus or who have has an ultrasound showing a birth defect.  (*Id.* ¶ 4.)  Jane Doe 6 counsels patients on all of their pregnancy options, including abortion and continuing their pregnancies to term.  (*Id.*)  She coordinates care among a team of medical providers for the remainder of the pregnancy.  (*Id.*)  In addition, if a patient is unable to obtain a pregnancy termination procedure at Evergreen for any reason, Jane Doe 6 is involved in referring the patient to another clinic, usually Cedar River [Clinics][9] or All Women's Care.  (*Id.*)  When patients are transferred to other clinics, she also discusses the option of donating the fetal tissue through those clinics.  (*Id.*)

Jane Doe 6 also informs the court for the first time in her supplemental declaration that if a patient elects to terminate her pregnancy, she coordinates the termination procedure.  (*Id.* ¶ 5.)  If a patient decides to terminate her pregnancy or if a patient suffers

---

[9] Cedar River Clinics is a reproductive health care provider established in 1979.  (Cantrell Decl. (Dkt. # 4) ¶ 2.)

1   a fetal demise, Jane Doe 6 counsels the patient about the option of donating the fetal

2   remains to birth defects research.  (*Id.*)  She "assists the patient in navigating all the

3   options, including discussing how fetal tissue donation may benefit the patient directly

4   for future pregnancies or more broadly, others facing similar circumstances."  (*Id.*)

5   Sometimes these donations are made to UWBDRL and sometimes to a specific

6   researcher who is studying the specific genetic condition in the fetus.  (*Id.*)

7        Jane Doe 6 also newly informs the court that she is one of the authorized providers

8   who may obtain informed consent from patients to donate fetal tissue for research,

9   including for research at UWBDRL.  (*Id.* ¶ 6.)  She is also one of the genetic counselors

10  involved in counseling patients who obtain pregnancy termination procedures through

11  Evergreen's Maternal-Fetal Medicine Department.  (*Id.*)  In her role as a genetic

12  counselor, she also communicates with UWBDRL "to coordinate the collection or

13  transport of fetal tissue to [UWBDRL] for processing."  (*Id.*)

## III.   ANALYSIS

## A.   Standards for Entry of a Preliminary Injunction

16       "A preliminary injunction is 'an extraordinary remedy that may only be awarded

17  upon a clear showing that the plaintiff is entitled to such relief.'"  *Feldman v. Ariz. Sec'y*

18  *of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Winter v. Nat. Res. Def.*

19  *Council*, 555 U.S. 7, 22 (2008)).  To obtain such relief, "[a] plaintiff . . . must establish

20  that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

21  absence of preliminary relief, that the balance of equities tips in his favor, and that an

22  injunction is in the public interest."  *Winter*, 555 U.S. at 20.  "A plaintiff must make a

showing as to each of these elements, although in [the Ninth Circuit] 'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Feldman*, 843 F.3d at 375 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1282, 1291 (9th Cir. 2013)). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1135 (9th Cir. 2001).

**B.    Mr. Daleiden's Request to Strike Doe Plaintiffs' Motion**

In his response, Mr. Daleiden asks the court to strike Doe Plaintiffs' motion.  (*See* Resp. at 8 (citing Local Rules W.D. Wash. LCR 7(g)).)  Mr. Daleiden's objects that both the law of the case doctrine and the rule of mandate preclude Doe Plaintiffs' motion. (Resp. at 7-12.)  In addition, Mr. Daleiden argues, based on out-of-circuit authority, that Doe Plaintiffs' motion is untimely or improperly successive.  The court disagrees on both counts.

**1.    Neither the Law of the Case Doctrine Nor the Rule of Mandate Preclude Doe Plaintiffs' Motion**

In general, "'[t]he law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case.'"  *Al-Safin v. Circuit City Store, Inc*., 394 F.3d 1254, 1258 (9th Cir. 2005) (quoting

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001)).

"However, '[t]he doctrine does not apply to issues not addressed by the appellate court.'"

*Id.* (quoting *Lujan*, 243 F.3d at 1186).  Moreover, for preliminary injunctions, it is the

Ninth Circuit's "general rule" that appellate decisions do not constitute the law of the

case.  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't*

*of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007).  Although any decisions on pure issues of

law are binding, *id.*, the general rule concerning preliminary injunctions recognizes that

"a preliminary injunction decision is just that:  preliminary."  *Ctr. for Biological*

*Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (citing *Ranchers Cattlemen*,

499 F.3d at 1114).  The Ninth Circuit has explained that because a later, more fully

developed factual record may be materially different from the one initially before the

district court, the Ninth Circuit's disposition of an appeal from a preliminary injunction

may provide little guidance later in the same case.  *See Sports Form, Inc. v. United Press*

*Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982); *see also Melendres v. Arpaio*, 695 F.3d 990,

1003 (9th Cir. 2012).  Indeed, where a district court "erroneously" failed to abide by "the

general rule" that the Ninth Circuit's decision on a preliminary injunction appeal was not

the law of the case, the Circuit admonished the lower court that it was "not bound by [the

Circuit's] earlier conclusions."  *Ranchers Cattlemen*, 499 F.3d at 1114.

The Ninth Circuit's conclusions of law in its most recent order include (1) that

Doe Plaintiffs 3, 4, and 5, who "took part in or were associated with advocacy for

reproductive rights," have First Amendment protection against disclosure of their

personally identifying information found in documents subject to production under the

1    PRA, and (2) that Doe Plaintiffs 7 and 8, who engaged in research activities involving

2    fetal tissue, may have the same protection.  (*See* 3/25/20 9th Cir. Mem. at 4.)  With

3    respect to Doe Plaintiffs 1, 2, and 6, however, the Ninth Circuit did not make a pure

4    ruling of law, but rather ruled that the evidence in the record before it and on which this

5    court relied in issuing its preliminary injunction was insufficient to show that Doe

6    Plaintiffs 1, 2, and 6 were engaged in or associated with activity—whether advocacy or

7    research—that is protected by the First Amendment.  (*Id.*)  Specifically, the Ninth Circuit

8    found that Doe Plaintiffs 1, 2, and 6's declarations were too "thin and generalized" to

9    establish the necessary "particularized, personal link between the declarant and a claimed

10   protected activity."  (*Id.*)  Simply put, the Ninth Circuit's evidentiary ruling vacating the

11   court's preliminary injunction with respect to Doe Plaintiffs 1, 2, and 6 is not law of the

12   case.  *See, e.g.*, *Stormans, Inc. V. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015)

13   (ruling that prior Ninth Circuit order vacating district court's grant of a preliminary

14   injunction was not law of the case on later appeal because the issue did not involve one

15   "pure" law but rather a mixed question of fact and law).  Thus, the doctrine does not bar

16   Doe Plaintiffs' present motion asking the court to reissue a preliminary injunction for

17   Doe Plaintiffs 1, 2, and 6 based on a more developed factual record.

18           Likewise, the rule of mandate does not preclude Doe Plaintiffs' motion.  Although

19   the rule requires a district court to "act on the mandate of an appellate court, without

20   variance," *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006), the

21   district court may still "'decide anything not foreclosed by the mandate.'"  *Padgett v. City*

22   *of Monte Sereno*, 722 F. App'x 608, 610-11 (9th Cir. 2018) (quoting *Stacey v. Colvin*,

1    825 F.3d 563, 568 (9th Cir. 2016)).  The Ninth Circuit's May 13, 2020, mandate states

2    that "[t]he judgment of [the Ninth Circuit], entered March 25, 2020, takes effect this

3    date." (Mandate (Dkt. # 199) at 1.)  Thus, as of May 13, 2020, although the Ninth Circuit

4    affirmed this court's preliminary injunction concerning Doe Plaintiffs 3-5, and 7-8, the

5    Ninth Circuit reversed and vacated the preliminary injunction concerning Doe Plaintiffs

6    1, 2, and 6 due to insufficient evidentiary grounding.  (*See* 3/25/20 9th Cir. Mem. at 4.)

7    Thus, pursuant to the Ninth Circuit's mandate and the rule of mandate, there presently is

8    no preliminary injunction in effect covering the personally identifying information of

9    Doe Plaintiffs 1, 2, and 6.  Neither the Ninth Circuit's mandate nor its March 25, 2020,

10   order, however, foreclose this court from accepting and considering additional evidence

11   from Doe Plaintiffs 1, 2, and 6, or from determining whether that evidence is sufficient to

12   reinstate the protection of a preliminary injunction for those Doe Plaintiffs.  Indeed, it

13   would be surprising if the Ninth Circuit's ruling had done so given that discovery is still

14   open and the Ninth Circuit has "repeatedly emphasized the preliminary nature of

15   preliminary injunction appeals."  *See Ctr. for Biological Diversity*, 706 F.3d at 1090.

16   Thus, the court concludes that neither the law of the case doctrine or the rule of mandate

17   precludes Doe Plaintiffs' motion.[10]

18   //

19

20          [10] Mr. Daleiden also argues that the Ninth Circuit's use of the terms "reversed" and
     "vacated" in its March 25, 2020, order somehow reinforces application of the law of the case
     doctrine here.  (*See* Resp. at 10-12.)  The Ninth Circuit, however, implicitly rejected this notion
21   in *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015).  In *Stormans*, the Ninth
     Circuit noted that it had "vacated the district court's grant of a preliminary injunction" during the
     parties' previous appeal.  *See id.*  The Court nevertheless rejected the defendants' argument that
22   the law of the case doctrine applied to its earlier ruling vacating the preliminary injunction.  *Id.*

1          **2.  Doe Plaintiffs' Motion is Not Untimely or Improperly Successive**

2          Mr. Daleiden also relies on out-of-circuit and inapposite authority to argue that

3     Doe Plaintiffs' motion is untimely or improperly successive.  (*See* Resp. at 8-10 (citing

4     *Gill v. Monroe Cty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989); *F.W. Kerr*

5     *Chem. Co. v. Crandall Assoc., Inc.*, 815 F2d 426, 429 (6th Cir. 1987); *Favia v. Ind. Univ.*

6     *of Pa.*, 7 F.3d 332, 337-38 (3d Cir. 1993)).)  As Mr. Daleiden concedes, the decisions he

7     cites all address whether an appeal of an adverse preliminary injunction ruling was timely

8     under Federal Rule of Appellate Procedure 4(a)(1) and therefore whether the circuit court

9     had jurisdiction to consider the appeal.  (*See* Resp. at 9 ("The opinions in *Gill*, Kerr, and

10    *Favia* all deal with whether the circuit court has jurisdiction.").)  As discussed below,

11    these cases have little, if any, application to the circumstances before this court.

12         In general, Federal Rule of Appellate Procedure 4(a)(1) requires a party seeking to

13    appeal an adverse preliminary injunction ruling to file a notice of appeal within 30 days.[11]

14    *See* Fed. R. App. P. 4(a)(1)(A).  In *Gill*, the Second Circuit held that the plaintiffs could

15    not extend their Rule 4(a)(1) time to appeal the district court's order denying their

16    preliminary injunction motion by filing three successive motions—all of which were

17    denied—seeking the same relief.  873 F.2d at 649.  The *Gill* court recognized an

18    exception where "there are changes in fact, law, or circumstance since the previous

19    ruling," but because the new evidence the plaintiffs relied upon in their third motion was

20    //

---

21         [11] "Interlocutory orders . . . granting, continuing, modifying, refusing or dissolving
injunctions, or refusing to dissolve or modify injunctions" are appealable under 28 U.S.C.A.
22    § 1292(a)(1).

1   available to them at the time they filed their first and second motions, the *Gill* court held

2   that the exception did not apply.  *Id.* at 648-49.  Accordingly, the Second Circuit

3   dismissed the appeal because the time constraints of Rule 4(a)(1) are jurisdictional.  *See*

4   *id* at 649.  Likewise, in *Kerr*, the plaintiffs also filed three preliminary injunction

5   motions.  815 F.2d at 426.  Similar to *Gill*, the Sixth Circuit held that the plaintiffs'

6   appeal from the district court's third denial was untimely.  *Id.* at 429.  The *Gill* court held

7   that nothing had changed from the plaintiffs' second motion and therefore the plaintiffs'

8   time to appeal ran from the court's second order denying a preliminary injunction.  *Id.*

9   Because the plaintiffs' appeal was untimely under Rule 4(a)(1), the Sixth Circuit

10   dismissed it.  *Id.*  Finally, *Favia* involved a motion by the defendant to modify a

11   preliminary injunction.  7 F.3d at 334.  The defendant did not appeal the court's order

12   issuing a preliminary injunction.  *Id.* at 336.  Instead, the defendant filed a motion to

13   modify the preliminary injunction several weeks later.  *See id.*  The Third Circuit held

14   that because there was a change in circumstance between when the court entered the

15   preliminary injunction and when the defendant moved to modify the preliminary

16   injunction, the defendants' appeal of the district court's denial of their motion to modify

17   the preliminary injunction was timely and the court had jurisdiction.  *Id.* at 339-40.

18      Taken together, the cases Mr. Daleiden cites stand for the proposition that litigants

19   may not manipulate the use of motions practice to extend their time to appeal an

20   unfavorable preliminary injunction ruling, but the cases have little to do with the

21   circumstances before this court.  None of the cases Mr. Daleiden cites involve multiple

22   appeals by the party aggrieved by a preliminary injunction or multiple orders by the

1    circuit court providing both the parties and the court additional guidance as to the legal

2    issues and factual requirements for imposing such a preliminary injunction.  Further,

3    although the cases Mr. Daleiden cites might have some bearing on the ability of Doe

4    Plaintiffs, as the moving parties, to appeal an adverse ruling on their present motion, the

5    cases would have no bearing on Mr. Daleiden's ability to appeal because he is not the

6    moving party, who might be accused of manipulating motions practice to extend the

7    appeal deadline, but rather the responding party.

8          In any event, the Ninth Circuit's March 25, 2020, order, which provided additional

9    guidance both as to the legal issues before the court as well as the required factual basis

10   for issuing a preliminary injunction, provides the necessary changed circumstances

11   warranting Doe Plaintiffs' present motion.  (*See* 3/25/20 9th Cir. Mem. at 4.)  Indeed,

12   Doe Plaintiffs offer additional evidence concerning Doe Plaintiffs 1, 2, and 6 specifically

13   in response to the Ninth Circuit's March 25, 2020, order.  (*See* Doe 1 Supp. Decl.; Doe 2

14   Supp. Decl.; Doe 6 Supp. Decl.)  There is no question that the court could consider this

15   evidence at trial or when ultimately ruling on the merits in this case.  *See E. Bay*

16   *Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1262 (9th Cir. 2020) ("Our review of

17   district court orders denying or granting preliminary-injunction requests also does not

18   typically become law of the case; the record before a later panel may materially differ

19   from the record before the first panel, such that the first panel's decision eventually

20   provides 'little guidance as to the appropriate disposition on the merits.'") (quoting

21   *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)).

22   Accordingly, the court can see no logical reason why it could not consider this evidence

now on Doe Plaintiffs' motion to reinstate the preliminary injunction for Doe Plaintiffs 1, 2, and 6.  Indeed, "[t]he primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).  As Doe Plaintiffs' argue "one cannot un-ring the bell."  (Reply at 3.)  Here, where the protection of Doe Plaintiffs' identities and personally-identifying information is the very material ultimately at stake in this litigation, consideration of reinstatement of the preliminary injunction—so long as it is consistent with the Ninth Circuit's guidance in its August 14, 2017, and March 25, 2020, orders—is a sound exercise of the court's discretion to preserve the status quo pending the closure of discovery and disposition concerning a permanent injunction.  For all the foregoing reasons, the court DENIES Mr. Daleiden's request to strike Doe Plaintiffs' motion.

## C.      Doe Plaintiffs 1, 2, and 6's Likelihood of Success

The court now turns to the merits of Doe Plaintiffs' motion.  Neither of the Ninth Circuit's orders question the court's conclusions with respect to the last three *Winter* factors—irreparable harm, the balance of the equities, and the public interest—which this court found weighed in favor of issuing the preliminary injunction for all Doe Plaintiffs. (*See generally* 8/14/17 9th Cir. Mem.; *see also* 3/25/20 9th Cir. Mem. at 3 ("Because we agree with the district court that the balance of hardships tips precipitously in favor of . . . Doe [P]laintiffs, we consider whether there is a serious question that goes to the merits."); *see also* PI Order at 19-21 (analyzing remaining *Winter* factors); 2d PI Order at 41-44 (analyzing remaining *Winter* factors.)  Accordingly, the court will not revisit those factors

1  here.  Rather, the infirmities identified by the Ninth Circuit in its second order relate to

2  the sufficiency of the evidence personally connecting Doe Plaintiffs 1, 2, and 6 to

3  activities protected by the First Amendment, and thus, the court's conclusion that Doe

4  Plaintiffs 1, 2 and 6 were likely to succeed on the merits or their claim or at least that they

5  had raised serious questions going to the merits.  (*See* 3/25/20 9th Cir. Mem. at 4.)

6  Specifically, the Ninth Circuit criticized this court for relying "solely on the exceedingly

7  thin and generalized declarations of these Doe [P]laintiffs, which failed to allege a

8  particularized, personal link between the declarant and a claimed protected activity."

9  (*Id.*)  In their present motion, Doe Plaintiffs attempt to correct this factual deficiency by

10  submitting supplemental declarations from Doe Plaintiffs 1, 2, and 6, in which those Doe

11  Plaintiffs attempt to provide the "particularized, personal link" to a First Amendment

12  "protected activity" that the Ninth Circuit previously ruled was missing.  (*See generally*

13  Mot.)  Mr. Daleiden argues that Doe Plaintiffs 1, 2, and 6's supplemental declarations

14  remain deficient and insufficiently connect these Doe Plaintiffs to either "research

15  activities" or "advocacy for reproductive rights."  (*See* Resp. at 12-13.)  The court will

16  consider the supplemental declarations of each Doe Plaintiff in turn.

17       **1.     John Doe 1**

18       In his supplemental declaration, John Doe 1 clarifies that he is pediatric

19  pathologist working for SCH Diagnostic Lab.  (Doe 1 Supp. Decl. ¶ 5.)  As a part of his

20  work, he performs autopsies on fetuses that die in utero as well as fetuses from

21  pregnancies terminated due to fetal malformation.  (*Id.* ¶ 6.)  In his supplemental

22  declaration, he testifies for the first time concerning the "significant research

applications" of his work.  (*Id.* ¶ 7.)  In his work, he attempts to make a connection

between the fetus's in-utero studies through which the patient received a diagnosis of a

fetal abnormality and the fetus's pathology results.  (*Id.*)  Beyond the benefits to the

individual patient, "this analysis often then can be used longitudinally to inform the

diagnosis of that particular malformation in other patients with similar conditions."  (*Id.*)

In addition, the data he collects "is utilized in many clinical studies" and "is integral to

the research being done by and through the [UWBDRL]."  (*Id.* ¶¶ 8-9.)  He also clarifies

that in his role at SCH Diagnostic Lab, he coordinates the distribution of fetal tissue to

the UWBDRL after an autopsy is complete assuming that patient has so consented.  (*Id.*

¶ 10.)  Indeed, if the UWBDRL needs and requests particular fetal tissue, John Doe 1

uses his profession judgment in examining the specimen and obtaining the specific tissue

that the UWBDRL needs.  (*Id.* ¶ 14.)

     Mr. Daleiden tries to minimize these additions to John Doe 1's declarations by

arguing that John Doe 1 is merely a part of the "supply chain" procuring fetal tissue for

the ultimate research being done by the UWBDRL.  (*See* Resp. at 13.)  Although his

initial declaration may have left this impression (*see generally* Doe 1 Decl.), John Doe

1's supplemental declaration clarifies that his work on fetal autopsies has significant

"research applications," including its use to inform fetal abnormality diagnoses, as well

as its use in many clinical studies.  (*See* Doe 1 Supp. Decl. ¶¶ 6-8.)  In addition, John Doe

1 clarifies that his work collecting fetal tissue for UWBDRL requires the use of his

professional judgment in obtaining the correct fetal tissue samples required for

UWBDRL's research, and thus, his work is an integral part of the research itself.  (*See id.*

¶¶ 9-10, 14.)  Based on John Doe 1's supplemental declaration, the court concludes that he has established the "particularized, personal link" between himself and the research activities at issue in this suit that go to the heart of Doe Plaintiffs' claims.  The court, therefore, concludes that John Doe 1 has rectified the evidentiary deficiency identified in the Ninth Circuit's March 25, 2020, order and, on the basis of John Doe 1's supplemental declaration, the court reissues the preliminary injunction as to John Doe 1.

      **2.**     **Jane Doe 2**

In her supplemental declaration, Jane Doe 2 clarifies that at the time the lawsuit was filed and until recently she was a research scientist at the UWBDRL where she facilitated scholarly research using fetal tissue.  (Doe 2 Supp. Decl. ¶¶ 1, 5.)  As a part of her work at UWBDRL, she worked with the UWBDRL's ten participating clinics and hospitals to counsel patients and obtain informed consent on the option of fetal tissue donation for the UWBDRL's research.  (*Id.* ¶¶ 6-8.)  Further, in the UWBDRL lab, she was "responsible for isolating the specific organs and/or tissue" required for particular research.  (*Id.* ¶ 9.)  She also monitored the clinical sites to ensure that those sites complied with certain ethical standards related to research on human subjects and to ensure that the clinical staff was trained in the proper handling and processing of fetal tissue for transport to the UWBDRL.  (*Id.* ¶ 11.)  Finally, in her role at the UWBDRL, she also reviewed researchers' abstracts and application materials as part of the process whereby researchers received fetal tissue for their research projects or studies.  (*Id.* ¶¶ 13-14.)

1    Mr. Daleiden argues that Jane Doe 2's "role remains simply being part of the [fetal

2    tissue] supply chain" (Resp. at 13), but to do so he ignores the foregoing, material

3    evidentiary additions to her supplemental declaration (*see* Doe 2 Supp. Decl. ¶¶ 5, 8-9,

4    11, 13-14.)  As her supplemental declaration demonstrates, Jane Doe 2 was not only a

5    research scientist at the UWBDRL who isolated fetal organs and/or tissue for particular

6    research projects, monitored clinical sites for compliance with various UWBDRL

7    research standards, and reviewed other researchers abstracts and application materials (*id.*

8    ¶¶ 9, 11, 13-14), but she was engaged in advocacy as well when she counseled patients

9    and obtained informed consent about fetal tissue donation after an abortion (*see id.* ¶ 8).

10   Based on Jane Doe 2's supplemental declaration, the court concludes that she has

11   established the "particularized, personal link" between herself and the research and

12   advocacy activities at issue in this suit that go to the heart of Doe Plaintiffs' claims.  The

13   court, therefore, concludes that Jane Doe 2 has rectified the evidentiary deficiency

14   identified in the Ninth Circuit's March 25, 2020, order and, on the basis of Jane Doe 2's

15   supplemental declaration, reissues the preliminary injunction as to Jane Doe 2.

16   **3.      Jane Doe 6**

17   In her supplemental declaration, Jane Doe 6 attests that she is a genetic counselor

18   at Evergreen with a Bachelor's degree microbiology and a Master's degree in genetic

19   counseling.  (Doe 6 Supp. Decl. ¶ 3.)  She adds that she works with patients who have

20   high-risk pregnancies with a family history of a genetic condition or other test results

21   indicating a birth defect or high risk of a genetic condition.  (*Id.* ¶ 4.)  She counsels these

22   patients on all pregnancy options, including abortion.  (*Id.*)  If a patient wants to

1    terminate a pregnancy but cannot do so at Evergreen, she refers the patient to other

2    providers including Cedar River.  (*Id.*)  She also counsels patients on the option of fetal

3    tissue donation, including to the UWBDRL for birth defect research.  (*Id.* ¶¶ 4-5.)  Her

4    counseling of patients includes "how fetal tissue donation may benefit the patient directly

5    for future pregnancies or more broadly, others facing similar circumstances."  (*Id.* ¶ 5.)

6    She is authorized to obtain informed consent from patients for pregnancy termination and

7    for fetal tissue donation.  (*Id.* ¶ 6.)  She also communicates with UWBDRL to coordinate

8    the collection and transportation of fetal tissue to UWBDRL for processing.  (*Id.*)

9        Mr. Daleiden argues that, despite Jane Doe 6's additional testimony, she remains

10   nothing more than a cog in the fetal tissue "supply chain."  (*See* Resp. at 13.)  But Mr.

11   Daleiden's willful blindness to her additional testimony does not render her additional

12   testimony a nullity.  In her role as a genetic counselor, Jane Doe 6 was "engaged in

13   activity protected by the First Amendment, as [she] . . . took part in or [was] associated

14   with advocacy for reproductive rights."  (*See* 3/25/20 9th Cir. Mem. at 4.)  Specifically,

15   she counsels her patients on the option of obtaining an abortion and the potential benefits

16   of fetal tissue donation and research.  (*See* Doe 6 Supp. Decl. ¶¶ 4-6.)  Based on Jane Doe

17   6's supplemental declaration, the court concludes that she has established the

18   "particularized, personal link" between herself and the advocacy activities at issue in this

19   suit that go to the heart of Doe Plaintiffs' claims.  The court, therefore, concludes that

20   Jane Doe 6 has rectified the evidentiary deficiency identified in the Ninth Circuit's March

21   25, 2020, order and, on the basis of Jane Doe 6's supplemental declaration, reissues the

22   preliminary injunction as to Jane Doe 6.

1    **D.    Class Certification and Mr. Daleiden's Requests for Affirmative Relief**

2              In their motion, Doe Plaintiffs include a section in which they discuss the court's

3    order granting class certification, but do not seek any change to that order or and other

4    affirmative relief concerning the class certification order.  (*See* Mot. at 7-10.)  In his

5    response, Mr. Daleiden apparently seeks decertification of the class and an order

6    requiring disclosure of Doe Plaintiffs' identities and compelling the production of

7    documents related to Doe Plaintiffs 1, 2, and 6.  (*See* Resp. at 14-17.)  The court declines

8    to consider these issues as they are not properly before the court at this time.  *See Duong*

9    *c. Ground Enters., Inc.*, NO. 2:19-CV-01333_DMG-MAA, 2020 WL 2041939, at *12

10   (C.D. Cal. Feb. 28, 2020) ("Courts in this and other districts have concluded that a

11   request for affirmative relief is not proper when raised for the first time in an

12   opposition.") (collecting cases); *see also Sumner Plains 84, LLC. v. Anchor Ins. & Sur.,*

13   *Inc.*, No. C18-5260BHS, 2018 WL 4630104, at *2 (W.D. Wash. Sept. 27, 2018) ("[A]

14   cross-motion is normally required for affirmative relief in opposition.").  Further, the

15   discovery Mr. Daleiden seeks would be in apparent violation of the court's reissued

16   preliminary injunction for Doe Plaintiffs 1, 2, and 6.  *See supra* § III.C.  Finally, there is

17   nothing on the record indicating that Mr. Daleiden has conferred in good faith with Doe

18   Plaintiffs concerning the discovery issue he raises as is required by the court's local rules

19   before he may move to compel discovery.  *See* Local Rules W.D. Wash. LCR 37(a)(1)

20   ("Any motion for an order compelling disclosure or discovery must include a certification

21   . . . that the movant has in good faith conferred or attempted to confer with the person or

22   party failing to make disclosure or discovery in an effort to resolve the dispute without

1    court action.").  If, however, Mr. Daleiden would like to raise some or all of these issues

2    in a procedurally proper motion, he may do so.  The court will not consider them

3    otherwise.

4    **E.      UW's Response Seeking Clarification**

5          In its response to Doe Plaintiffs' motion, UW took "no substantive position" but

6    asked the court for clarification concerning the Ninth Circuit's order and its obligations

7    concerning document production.  (*See generally* UW Resp.)  Specifically, UW stated

8    that because Doe Plaintiffs are proceeding pseudonymously, if Doe Plaintiffs' motion

9    was denied, without more information, UW would be unable to determine which names

10   should be unredacted and produced to comply with the Ninth Circuit's order.  (UW Resp.

11   at 3.)  UW also stated that it was uncertain concerning the status of class certification

12   following the Ninth Circuit's March 25, 2020, order.  (*See id.*)  Because the court has

13   granted Doe Plaintiffs' motion and reissued the preliminary injunction based on Doe

14   Plaintiffs 1, 2, and 6's supplemental declarations and has declined to consider any

15   modifications to the class certification order in the absence of a motion seeking such

16   relief, UW's concerns have not materialized and the court need not address them.

17                              **IV.  CONCLUSION**

18         Based on the foregoing analysis and Doe Plaintiffs 1, 2, and 6's supplemental

19   declarations (Dkt. ## 207-09), the court GRANTS Doe Plaintiffs' motion (Dkt. # 206)

20   and reinstates the preliminary injunction for Doe Plaintiffs 1, 2, and 6 that it initially

21   //

22   //

1  imposed on November 16, 2016, reissued on November 30, 2017, and clarified on

2  February 26, 2018 (*see* Dkt. ## 88, 130, 155).

3      Dated this 20th day of July, 2020.

4

5

6      JAMES L. ROBART
       United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22