1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   JANE DOES 1-10, et al.,                          CASE NO. C16-1212JLR

11                               Plaintiffs,          ORDER DENYING MOTION
                                                      FOR CLASS DECERTIFICATION
12              v.

13   UNIVERSITY OF WASHINGTON,
     et al.,

14
                                 Defendants.
15

16                               **I.   INTRODUCTION**

17          Before the court is Defendant David Daleiden's motion to decertify or narrow that

18   class and subclasses that the court previously approved.  (MTD (Dkt. # 215); *see also* CC

     Order (Dkt. # 172).)  Plaintiffs John and Jane Does 1-8 (collectively, "Doe Plaintiffs")
19
     oppose Mr. Daleiden's motion.  (Does Resp. (Dkt. # 219).)  Defendants Perry Tapper and
20
     University of Washington (collectively, "UW") take no position on Mr. Daleiden's
21
     motion.  (UW Resp. (Dkt. # 218) at 1.)  The court has considered Mr. Daleiden's motion,
22

ORDER - 1

1    the parties' submissions filed in support of and in opposition to Mr. Daleiden's motion,

2    the relevant portions of the record, and the applicable law.  Being fully advised,[1] the

3    court DENIES Mr. Daleiden's motion.

4                              **II.   BACKGROUND**

5           This case involves a dispute over written requests Mr. Daleiden and a former

6    Defendant, Zachary Freeman,[2] sent to UW under Washington State's Public Records Act

7    ("PRA"), RCW ch. 42.56, to "inspect or obtain copies of all documents that relate to the

8    **purchase, transfer, or procurement of human fetal tissues,** human fetal organs, and/or

9    human fetal cell products at the [UW] Birth Defects Research Laboratory [("BDRL")]

10   from **2010 to present**."  (Power Decl. (Dkt. # 5) ¶ 4, Ex. C; *see also id.* ¶ 6, Ex. E.)  Doe

11   Plaintiffs filed a class action lawsuit seeking to enjoin UW from producing documents in

12   response to the PRA requests without first redacting their personally identifying

13   information.  (*See* TAC (Dkt. # 77) at 2 ("Doe Plaintiffs . . . seek to have their personal

14   identifying information withheld to protect their safety and privacy.").)  The court set

15   forth the factual and procedural background of this case in its recent order reinstating the

16   court's preliminary injunction for Doe Plaintiffs 1, 2, and 6 (*see* 7/20/20 Order (Dkt.

17   //

18   //

19          [1] Mr. Daleiden requests oral argument on his motion.  (*See* MTDC at title page; Reply
20   (Dkt. # 220) at title page.)  The court, however, does not consider oral argument to be helpful to
     its disposition of this motion, and accordingly, denies the request.  *See* Local Rule W.D. Wash.
21   LCR 7(b)(4).

            [2] On December 27, 2016, the court entered a stipulated order dismissing Mr. Freeman
22   from the lawsuit.  (Stip. Order (Dkt. # 105).)

1   # 213)) and does not repeat that history here except as it pertains specifically to Mr.

2   Daleiden's present motion.

3          Following a remand from the Ninth Circuit Court of Appeals, on November 30,

4   2017, the court reissued its preliminary injunction as to all Doe Plaintiffs.  (*See* 2d PI

5   Order (Dkt.  #130).)  In the preliminary injunction, the court did not prohibit the release

6   of the documents at issue but rather enjoined UW from releasing the requested

7   documents without first redacting all personally identifying information or information

8   for Doe Plaintiffs from which a person's identity could be derived with reasonable

9   certainty.  (*Id*. at 19-21, 25.)  Mr. Daleiden appealed.  (2d Not. of App. (Dkt. # 147).)

10         On March 25, 2020, the Ninth Circuit Court of Appeals issued its second decision

11  addressing the preliminary injunction in this case.  (*See* 3/25/20 9th Cir. Order (Dkt.

12  # 197).)  The Ninth Circuit affirmed in part, reversed in part, and vacated in part the

13  court's November 30, 2017, order reissuing the preliminary injunction.  (*See id.* at 4; *see*

14  *also* 2d PI Order (Dkt. # 130).)  The Ninth Circuit stated that "[t]o prevail on their First

15  Amendment claim, . . . Doe Plaintiffs must show that particular individuals or groups of

16  individuals were engaged in activity protected by the First Amendment and a reasonable

17  probability that the compelled disclosure of personal information will subject those

18  individuals or groups of individuals to threats, harassment, or reprisals that would have a

19  chilling effect on that activity."  (3/25/20 9th Cir. Order at 3 (citing *John Doe No. 1. v.*

20  *Reed*, 561 U.S. 186, 200 (2010), and *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)) (internal

21  quotation marks omitted)  The Ninth Circuit affirmed this court's conclusion that Doe

22  Plaintiffs 3, 4, and 5 "were engaged in activity protected by the First Amendment, as they

ORDER - 3

1    each took part in or were associated with advocacy for reproductive rights." (*Id.* at 4

2    (citing *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*,

3    357 U.S. 449, 462 (1958)).)  In addition, the Ninth Circuit affirmed this court's

4    conclusion "that whether the research activities of Doe[] [Plaintiffs] 7 and 8 constituted

5    First Amendment protected activity posed a serious question that goes to the heart of

6    [Doe Plaintiffs'] claims." (*Id.* (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265,

7    312 (1978)).)

8           However, the Ninth Circuit held that this court "clearly erred in determining that

9    Doe[] [Plaintiffs] 1, 2, and 6 were engaged in activity protected by the First

10   Amendment," and accordingly the Ninth Circuit "reverse[d], and vacate[d] the

11   preliminary injunction with respect to Doe[] [Plaintiffs] 1, 2, and 6," but "affirm[ed] in

12   all other respects." (*Id.*)  In so ruling on Doe Plaintiffs 1, 2, and 6, the Ninth Circuit

13   stated that "the court relied solely on the exceedingly thin and generalized declarations of

14   these Doe [P]laintiffs, which fail to allege a particularized, personal link between the

15   declarant and a claimed protected activity." (*Id.*)  Thus, the Ninth Circuit's reversed this

16   court on its ruling on Doe Plaintiffs 1, 2, and 6 solely based on Doe Plaintiffs 1, 2, and

17   6's insufficient evidentiary showing. (*See id.*)

18          On June 4, 2020, Doe Plaintiffs filed a motion to reinstate the preliminary

19   injunction as to Doe Plaintiffs 1, 2, and 6 (*see* MTR (Dkt. # 206)), along with

20   supplemental declarations from Doe Plaintiffs 1, 2, and 6 (*see* Supp. Doe 1 Decl. (Dkt.

21   # 207); Supp. Doe 2 Decl. (Dkt. # 208); Supp. Doe 6 Decl. (Dkt. # 209))  On July 20,

22   //

1   2020, the court granted Doe Plaintiffs' motion and once again reinstated the preliminary

2   injunction as to all Doe Plaintiffs.  (*See* 7/20/20 Order).

3          On April 24, 2018, while Mr. Daleiden's second appeal was pending, the court

4   granted Plaintiffs' motion for class certification under Federal Rule of Civil Procedure

5   23(b)(2) (*see* CC Order (Dkt. # 172)), which applies whenever "the party opposing the

6   class has acted or refused to act on grounds that apply generally to the class, so that the

7   final injunctive relief or corresponding declaratory relief is appropriate respecting the

8   class as a whole," Fed. R. Civ. P. 23(b)(2).  The court certified a class and three

9   subclasses as follows:

> All individuals whose names and/or personally identifying information (e.g.,
> work addresses, work or cell phone numbers, email addresses) are contained
> in documents prepared, owned, used, or retained by the University of
> Washington that relate to the purchase, transfer, or procurement of human
> fetal tissues, human fetal organs, and/or human fetal cell products at the
> University of Washington Birth Defects Research Laboratory from 2010 to
> present, and who:
>
> (1) are associated with entities that provide abortions and/or make available
> fetal tissue to the Birth Defects Research Laboratory;
>
> (2) are associated with the Birth Defects Research Laboratory; or
>
> (3) are associated with medical researchers who use fetal tissue obtained
> from the Birth Defects Research Laboratory.

18   (CC Order at 31.)  The court appointed Does 1, 3-7 as class representatives for subclass

19   1; Doe 2 as the class representative for subclass 2; and Does 7-8 as the class

20   representatives of subclass 3.  (*Id.*)

21          In response to Doe Plaintiffs' motion to reinstate the preliminary injunction, Mr.

22   Daleiden made many of the same arguments that he makes in his present motion.  (*See*

ORDER - 5

1   Daleiden Resp. to MTR (Dkt. # 211) at 14-17.)  He argued that the Ninth Circuit's March

2   25, 2020, order required decertification of the class.  (*See id.*)  In its order reinstating the

3   preliminary injunction for Doe Plaintiffs 1, 2, and 6, the court declined to consider the

4   issues Mr. Daleiden raised because they were not properly before the court.  (7/20/20

5   Order at 31.)  Instead, the court informed Mr. Daleiden that he could raise his concerns

6   concerning class certification in a procedurally proper motion.  (*See id.* at 32.)  In

7   response to the court's invitation, Mr. Daleiden filed his present motion to decertify or

8   narrow the class on July 23, 2020.  (*See* MTD.)  The court now considers Mr. Daleiden's

9   motion.

10               **III.   ANALYSIS**

11  **A.   Standard**

12          An order certifying a class "may be altered or amended before final judgment."

13  Fed. R. Civ. P. 23(c)(1)(C).  The standard of review for decertification is the same as the

14  standard for class certification:  the court considers "whether the Rule 23 requirements

15  are met."  *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 927 (N.D. Cal.

16  2017) (citation omitted).  "The burden of proof remains on the plaintiff."  *Id.* (citing

17  *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011)).[3]

18  _____

19  [3] The court notes that some district courts within the Ninth Circuit Court of Appeals have
    determined that the party seeking decertification bears the burden of demonstrating that the
    elements of Rule 23 have not been established.  *See, e.g.*, *Zakaria v. Gerber Prods. Co.*, NO.
20  LACV1500200JAKEX, 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x
    623 (9th Cir. 2008).  However, although the Ninth Circuit has not expressly ruled that the burden
21  of proof for decertification remains on the plaintiff, in *Marlo*, the Ninth Circuit stated that the
    district court, in its order decertifying the class, "properly placed the burden on [the plaintiff] to
22  demonstrate that Rule 23's class-certification requirements had been met."  639 F.3d at 947.
    Accordingly, this court determines that the burden remains on Doe Plaintiffs.

1    "Class certification is governed by Federal Rule of Civil Procedure 23."

2    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party

3    seeking certification must first demonstrate that:

4    (1) the class is so numerous that joinder of all members is impracticable;
     (2) there are questions of law or fact common to the class;

5    (3) the claims or defenses of the representative parties are typical of the
     claims or defenses of the class; and

6    (4) the representative parties will fairly and adequately protect the interests
     of the class.

7    Fed. R. Civ. P. 23(a).  Rule 23(a)'s four subparts are generally referred to as the

8    requirements of numerosity, commonality, typicality, and adequacy of representation,

9    respectively.  These four requirements "effectively limit the class to those fairly

10   encompassed by the named plaintiff's claims."  *Dukes*, 564 U.S. at 349.

11   Next, the party seeking certification must demonstrate that the proposed class

12   satisfies at least one of the three requirements listed in Rule 23(b).  *Id.*  Doe Plaintiffs rely

13   on Rule 23(b)(2) to justify class certification, which applies when "the party opposing the

14   class has acted or refused to act on grounds that apply generally to the class, so that the

15   final injunctive relief or corresponding declaratory relief is appropriate respecting the

16   class as a whole."  Fed. R. Civ. P. 23(b)(2).  "[T]he key to the (b)(2) class is the

17   indivisible nature of the injunctive or declaratory remedy warranted."  *Ellis v. Costco*

18   *Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (quotation marks omitted).

19   **B.    Class Certification**

20   Mr. Daleiden argues that the Ninth Circuit's recent order undermines this court's

21   conclusion that Doe Plaintiffs meet the requirements of Rule 23(a) and Rule 23(b)(2) for

22

1  class certification, and the court must either narrow the classes it previously certified—to

2  only those associated with advocacy for reproductive rights and to scientific

3  researchers—or decertify the classes altogether.  (*See* MTD at 9-11.)  Mr. Daleiden

4  argues that the Ninth Circuit's order permits certification of only two groups:  (1) those

5  who are associated with advocacy for reproductive rights, and (2) scientific researchers.

6  (*See* MTD at 7-8.)  In so arguing, Mr. Daleiden misapprehends the Ninth Circuit's order

7  by reading requirements into the order that are not there and ignoring other portions of

8  the order that do not mesh with his view.  In addition, he misconstrues the law concerning

9  class certification under Rule 23(b)(2).  The court will address these issues in turn.

10        1.  The Ninth Circuit's March 25, 2020, Order

11        In interpreting the Ninth Circuit's March 25, 2020, order, Mr. Daleiden focuses on

12  the Ninth Circuit's statement that this court erred in concluding that Does 1, 2, and 6

13  were engaged in First Amendment protected activity when the court relied on Does 1, 2,

14  and 6's original declarations that "failed to allege a particularized, personal link between

15  the declarant and a claimed protected activity."  (*See id.* at 10; *see also* 3/25/20 9th Cir.

16  Order at 4.)  Mr. Daleiden interprets this phrase—"a particularized, personal link"—as

17  meaning that an individual's employment by an advocacy or research organization alone

18  is insufficient to merit First Amendment protection.  (*See* MTD at 10 (stating that "[t]he

19  [c]ourt may not rely on 'the putative class members' mere association with or

20  employment by the advocacy or research organization'").)  Mr. Daleiden's interpretation,

21  of course, ignores the Ninth Circuit's ruling that this court "did not err in concluding that

22  Does 3, 4, and 5 were engaged in activity protected by the First Amendment, as each took

1    part in *or were associated with* advocacy for reproductive rights."[4]  (3/25/20 9th Cir.

2    Order at 4 (italics added).)

3        Indeed, the fallacy of Mr. Daleiden's interpretation is evident when one examines

4    Doe 3's declaration, which the Ninth Circuit ruled was sufficient to support this court's

5    conclusion that a preliminary injunction should issue to provide First Amendment

6    protection.  (*See id.* at 4; *see also* Doe 3 Decl. (Dkt. # 8).)  Although Doe 3 identifies

7    herself as a Planned Parenthood of Greater Washington and Northern Idaho ("PPGWNI")

8    employee, who received a notice from UW concerning Mr. Daleiden's PRA request, and

9    although she generally attests that PPGWNI "partners with [the BDRL] to collect fetal

10   tissue for research purposes" (Doe 3 Decl. (Dkt. # 8) ¶¶ 1-6), she never specifically

11   discusses her role or identifies her duties at PPGWNI (*see generally id.*).  Indeed, she

12   limits her discussion to the "range of duties" associated with unidentified PPGWNI

13   "[s]taff members" relating to the BDRL fetal tissue donation program.[5]  (*Id.* ¶ 7.)  Thus,

14   the only "particularized, personal link" Doe 3 supplies between herself and a claimed

15   protected activity is her employment by PPGWNI (*see id.* ¶ 1); she provides no other link

16   //

---

17       [4] Mr. Daleiden also ignores the Ninth Circuit's statement that the court could make
     findings that "groups of individuals were engaged in activity protected by the First Amendment."
18   (*See* 3/25/20 9th Cir. Order at 3 (stating that "[t]o prevail on their First Amendment claim, [Doe
     Plaintiffs] must show that 'particular individuals or groups of individuals were engaged in
19   activity protected by the First Amendment and 'a reasonable probability that the compelled
     disclosure of personal information will subject' those individuals or groups of individuals 'to
20   threats, harassment, or reprisals' that would have a chilling effect on that activity") (quoting *John
     Doe No. 1 v. Reed,* 561 U.S. at 186, 200 (2010)).

21       [5] The remainder of Doe 3's declaration is devoted to the threats and violence that
     PPGWNI employees have endured over the years and the steps they have taken to try to ensure
22   their safety.  (*See id.* ¶¶ 8-16.)

1   at all (*see generally id.*).  Yet, the Ninth Circuit found Doe 3's declaration to be sufficient

2   to warrant First Amendment protection of her identity.  (*See* 3/25/20 9th Cir. Order at 4.)

3   Thus, the court cannot conclude, as Mr. Daleiden does, that a declarant's mere

4   employment by an advocacy or research organization is insufficient to demonstrate a

5   "particularized, personal link" to or association with First Amendment activity that merits

6   protection of that individual's identity.  The Ninth Circuit implicitly found such

7   employment alone sufficient in the case of Doe 3.

8        The demarcation line between the necessity of providing "a particularized,

9   personal link" with a protected activity and the sufficiency of being "associated with" a

10  protected activity is easily understood when one examines the Doe declarations that the

11  Ninth Circuit found deficient.  For example, in the original Doe 2 declaration, Doe 2

12  identifies herself as an employee of UW (Doe 2 Decl. (Dkt. # 7) ¶ 1), and she describes

13  the work of the BDRL (*id.* ¶¶ 5-12).  However, unlike Doe 3, who identified herself as an

14  employee of an entity who advocates for reproductive rights, Doe 2 never states that she

15  worked for the BDRL nor provides "a particularized, personal link" between her UW

16  employment and the work of the BDRL (*see generally id.*)  Thus, she never demonstrated

17  her association with the First Amendment protected activities of the BDRL.

18       Doe 2 corrects these deficiencies in her supplemental declaration by specifically

19  identifying herself as a research scientist working at the BDRL.  (*See, e.g.*, Supp. Doe 2

20  Decl. ¶ 5 (identifying herself as a "research scientist" working at the BDRL "to facilitate

21  scholarly research using fetal tissue"); *id.* ¶ 9 ("I was responsible for isolating the specific

22  organs and/or tissue that the researchers required and overseeing the transfer of the tissue

1    to the [BDRL] researchers.").)  Thus, in her supplemental declaration, Doe 2 provides

2    that "particularized, personal link" that associates herself with the First Amendment

3    protected activity of the BDRL.  Further, since Doe 2 never identified herself,

4    specifically, as a BDRL employee in her original declaration, the court cannot conclude

5    that Doe 2's employment at the BDRL alone—irrespective of her status as a research

6    scientist—is insufficient to warrant First Amendment protection of her identity.  Indeed,

7    based on her supplemental declaration, Doe 2 would appear to qualify for First

8    Amendment protection of her identity by virtue of her employment at BDRL alone—

9    similar to the way the Ninth Circuit implicitly found that Doe 3 is associated with First

10   Amendment protected activity based solely on her employment at PPGWNI.

11          Accordingly, the court does not conclude, as Mr. Daleiden urges, that a putative

12   class member's employment alone is always insufficient to confer First Amendment

13   protection for his or her identity.  (*See* MTD at 10.)  As discussed above, the Ninth

14   Circuit has implicitly held that such employment at a Planned Parenthood clinic is

15   enough to confer First Amendment protection of the employee's identity.  (*See* 3/25/20

16   9th Cir. Order at 4; *see also* Doe 3 Decl.)  Further, Mr. Daleiden's interpretation of the

17   Ninth Circuit's order would place the order at odds with Supreme Court precedent.  In

18   *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, the Supreme Court found

19   that First Amendment protection for association with the Socialist Worker's Party

20   extended not only to campaign contributors, but to recipients of campaign expenditures

21   who "enter[ ] into . . . transaction[s] . . . purely for commercial reasons," and "lack any

22   ideological commitment to the [cause at issue]."  459 U.S. 87, 98 (1982).  The court

1    reasoned that such "individual[s] may well be deterred from providing services by even a

2    small risk of harassment," *id*., and noted that "[s]hould their involvement be publicized,

3    these persons would be as vulnerable to threats, harassment, and reprisals as are

4    contributors whose connection with the party is solely financial," *id*. at 97.  Further, the

5    Supreme Court reasoned that just like those sharing an ideological commitment to the

6    organization, these individuals "may be deterred by the public enmity attending

7    publicity" and "[c]ompelled disclosure of the names of such [organizational associates]

8    could therefore cripple [the organization's] ability to operate effectively.  *Id.*

9          Likewise here, even employees of the BDRL and organizations like Planned

10   Parenthood, who may not share a commitment to the organizations' advocacy or research

11   purposes but are employed there for their own commercial or economic reasons, may

12   nevertheless be "deterred" from such employment "by the public enmity attending

13   publicity" and the "compelled disclosure" of their names could "cripple" the

14   organizations' "ability to operate effectively."  *See id.*  Thus, the court rejects Mr.

15   Daleiden's overly narrow interpretation of the Ninth Circuit's March 25, 2020, order, and

16   his argument that the order requires either decertification or a narrowing of the court's

17   class certification order.

18         Unlike Doe 3 or Doe 2, however, Does 1 and 6 are not employed by organizations

19   directly or primarily engaged in advocacy for reproductive rights or fetal tissue research.

20   (*See* Supp. Doe 1 Decl. ¶ 1 ("I am an employee of Seattle Children's Hospital.").); Supp.

21   Doe 6 Decl ¶ 1 (I am an employee of Evergreen Hospital Medical Center.").)  Thus, their

22   employment status alone is insufficient to provide "a particularized, personal link" to a

1    claimed protected activity.  Instead, their work for other organizations connects them to

2    the claimed First Amendment activity of the BDRL—fetal tissue research—or to the First

3    Amendment advocacy work of Planned Parenthood clinics like PPGWNI and other

4    similar clinics.  Although Does 1 and 6's original declarations were insufficient to

5    provide the necessary "particularized, personal link," like Doe 2, their supplemental

6    declarations correct this deficiency.  For example, in Doe 6's original declaration, she

7    identifies herself as an employee of Evergreen Hospital Medical Center ("Evergreen")

8    (Doe 6 Decl. (Dkt. # 11)), and she describes Evergreen's collaboration with BDRL in

9    BDRL's collection of fetal tissue for research and the fact that she had communications

10   with BDRL regarding the same (*id.* ¶ 4), but she never provides a "particularized,

11   personal link" associating her work at Evergreen with the advocacy or research activities

12   of the BDRL (*see generally id.*).  Doe 6 corrects this deficiency in her supplemental

13   declaration.  (*See* Supp. Doe 6 Decl. ¶ 4 ("I counsel patients on all their pregnancy

14   options, including abortion . . . . I discuss with the patient the option of donating the fetal

15   tissue . . . ."); *id.* ¶ 5 ("I . . . discuss[] how fetal tissue donation may benefit the patient

16   directly for future pregnancies or more broadly, others facing similar circumstances.

17   Most often, the donation is made to the [BDRL] . . . .").)  Thus, Doe 6 provides the

18   necessary "particularized, personal link" that associates her work at Evergreen with the

19   First Amendment protected activity of the BDRL.

20          Similarly, in Doe 1's original declaration, he identifies himself as an employee of

21   Seattle Children's Hospital ("SCH") who works with SCH's Department of Laboratories

22   ("SCH Diagnostic Lab").  (Doe 1 Decl. (Dkt. # 6) ¶¶ 1, 5.)  He also describes the work of

1    the SCH Diagnostic Lab and its connection with the BDRL (*id.* ¶¶ 5-12), but he never

2    identifies himself as a pediatric pathologist or identifies a "particularized, personal link"

3    associating his work with advocacy or research activities of the BDRL (*see generally id.*).

4    Like Doe 6, Doe 1 corrects this deficiency in his supplemental declaration.  (*See, e.g.*,

5    Supp. Doe 1 Decl. ¶ 5 ("I am a pediatric pathologist."); *id.* ¶ 7 ("There are significant

6    research applications in the [autopsy] work that I perform."); *id.* ¶ 9 ("[M]y work is

7    integral to the research being done by and through the [UW's BDRL]."); *id.* ¶ 10 ("The

8    SCH Diagnostic Lab collaborates with the BDRL when a patient (the parent) has

9    consented to donate fetal tissue.  In my role, I coordinate the distribution of the fetal

10   tissue to the BDRL after the autopsy is complete.").)  Like Doe 6, in Doe 1's

11   supplemental declaration, he provides that "particularized, personal link" that associates

12   his work as a pediatric pathologist at the SCH Diagnostic Lab with the First Amendment

13   protected activity of the BDRL.[6]

14          Thus, to the extent that Does 1, 2, and 6 initially failed to provide the required

15   "particularized, personal link" required to associate their work with First Amendment

16   protected activities, that deficiency is now resolved in their supplemental declarations.

17   (*See also* 7/20/20 Order at 25-20.)  Nevertheless, there is no doubt that a more intensive

18   factual inquiry may be required to determine whether class members—who are not

19   employed by Planned Parenthood or a similar reproductive rights clinic or an

20

21          [6] To the extent that Mr. Daleiden asserts that the court may not consider Does 1, 2, and
     6's supplemental declarations under the law of the case doctrine or the rule of mandate (*see*
22   MTD at 6), the court addressed these arguments and rejected them in its recent order reissuing
     the preliminary injunction for Does 1, 2, and 6 (*see* 7/20/20 Order at 18-21).

1    organization devoted to fetal tissue research such as the BDRL, but whose work

2    nevertheless provides a "particularized, personal link" to the First Amendment activities

3    of these organizations—are entitled to protection of their identities.  As discussed below,

4    however, the fact that some class members may require a more intensive factual inquiry

5    does not defeat class certification under Rule 23(b)(2).  *See infra* § III.B.2.b.

6         Nonetheless, due to the more intensive factual showing that may be necessary for

7    class members situated similarly to Does 1 and 6, the court ORDERS the parties to

8    consider whether these class representatives should be in their own subclass—separate

9    from Does 2-5, and 7, all of whom are employed directly either by a Planned Parenthood

10   or similar type of clinic or the BDRL.  *See Santillan v. Gonzales*, 388 F. Supp. 2d 1065,

11   1072 (N.D. Cal. 2005) ("A court may divide a class into subclasses on motion of either

12   party, or *sua sponte*."); *Murray v. Local 2620, Dist. Council 57, Am. Fed'n of State, Cty.,*

13   *& Mun. Employees, AFL-CIO*, 192 F.R.D. 629, 635 (N.D. Cal. 2000) ("The court may

14   [consider the creation of subclasses *sua sponte*] . . . during the pendency of the case in

15   response to factual developments that take place.").  The court further ORDERS the

16   parties to provide briefing on the merits of creating such a subclass by dividing the class

17   representatives of subclass 1 into two groupings as described above, how such a subclass

18   should be described, whether the subclass independently meets the requirements of Rule

19   23, whether the addition of such a subclass will render the class action more manageable,

20   and any other issues that the parties believe merit the court's attention concerning the

21   creation of such a subclass.  The court details the required briefing schedule in the

22   conclusion of this order.

2.  Rules 23(a) and 23(b)(2)

Mr. Daleiden also misapprehends the nature of class certification under Rule 23(b)(2).  In his motion, Mr. Daleiden makes three argument concerning the Ninth Circuit's March 25, 2020.  First, he argues that the Ninth Circuit's order undermines the Rule 23(a) numerosity requirement.  (MTD at 8-9.)  Second, he argues jointly that the order undermines the commonality and typicality requirements of Rule 23(a) and the indivisibility requirement of Rule 23(b)(2).  (*See* MTD at 9-11.)  Finally, he argues that the order creates conflicts between Does 1, 2, and 6, and Does 3-5 and 7-8 that undermines the Rule 23(a) adequacy requirement.  The court addresses each argument in turn.

a.  *Numerosity*

Mr. Daleiden's argument concerning numerosity assumes that his interpretation of the Ninth Circuit's March 25, 2020, order as requiring a narrowing of the classes to only those who (1) engage in "abortion advocacy," and (2) engage in First Amendment-protected scientific research is correct.  (*See* MTD at 8-9.)  Indeed, he asserts without any evidentiary or analytical underpinning that "there is no way of knowing how many people are in the new subclasses . . . , and thus numerosity fails unless Plaintiffs can demonstrate otherwise with sufficient definiteness."  As discussed above, however, his analysis of the Ninth Circuit's order is flawed.  *See supra* § III.B.1. As such, he fails to undermine the court's prior numerosity analysis and those findings and conclusions remain.  (*See* CC Order at 15-18.)  Indeed, where, like here, "a plaintiff seeks 'only injunctive and declaratory relief, the numerosity requirement is relaxed and

1   plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that

2   the number of unknown and future members is sufficient to make joinder

3   impracticable.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *aff'd*

4   *sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (quoting *Civil*

5   *Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*,

6   867 F.3d 1093 (9th Cir. 2017) (internal quotation marks, alterations, and citation

7   omitted)).  Mr. Daleiden fails to acknowledge this standard and offers no evidence

8   eroding the court's prior findings.  (*See generally* MTD.)  Indeed, he did not challenge

9   Doe Plaintiffs' original showing on numerosity.  (*See* CC Order at 15 ("Mr. Daleiden

10  does not challenge the numerosity prerequisite.").)  In sum, Mr. Daleiden fails to

11  undermine Doe Plaintiffs' original showing concerning numerosity or the court's

12  conclusion that Doe Plaintiffs' showing was adequate to meet their burden on class

13  certification.

14                    *b.  Commonality, Typicality, and Indivisibility*

15          In addition to his flawed interpretation of the Ninth Circuit's order, which the

16  court rejects, *see supra* § III.B.1., Mr. Daleiden argues that "[Doe] Plaintiffs will have to

17  establish the nature and extent of each and every absent class member's *personal*

18  activities in relation to abortion advocacy or research," and "[t]he factual burden to

19  establish that involvement is not insubstantial . . . ."  (MTD at 10-11.)  Thus, Mr.

20  Daleiden asserts that the class "cannot meet commonality, typicality, and indivisibility."

21  (*Id.* at 11.)  As discussed above, for many absent class plaintiffs, their employment by

22  either an organization involved with advocacy for reproductive rights, like Planned

1    Parenthood or similar clinic, or an organization involved with fetal tissue research, like

2    the BDRL, will be sufficient to confer First Amendment protection against the release of

3    their identifying information.  *See supra* § III.B.1.  However, even if closer scrutiny is

4    required for absent class members, such as Does 1 and 6, whose employment alone may

5    not be sufficient to provide the required "particularized, personal link" to warrant First

6    Amendment protection, such additional scrutiny does not defeat class certification under

7    Rule 23(b)(2).  Indeed, the flaw in Mr. Daleiden's legal argument is that he blurs the Rule

8    23(a) requirements of commonality and typicality, and the Rule 23(b)(2) indivisibility

9    requirement and confuses all of those with the predominance requirement of Rule

10   23(b)(3), which is entirely inapplicable here.

11         As the court has previously explained, the commonality requirement is construed

12   "permissively," and it is sufficient for Doe Plaintiffs to allege one common question—the

13   answer to which is "apt to drive the resolution of the litigation."  (CC Order at 18

14   (quoting *Ellis*, 657 F.3d at 981, and *Dukes*, 564 U.S. at 350 (internal citations omitted)).)

15   The fact that there may be individual questions, as Mr. Daleiden suggests, goes to

16   predominance under Rule 23(b)(3) and does not undermine Rule 23(a) commonality.  *See*

17   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (stating that "the

18   individualized issues raised go to preponderance under Rule 23(b)(3), not to whether

19   there are common issues under Rule 23(a)(2)")); *see also Z.D. ex rel. J.D. v. Grp. Health*

20   *Co-op.*, No. C11-1119RSL, 2012 WL 1977962, at *3 n.1 (W.D. Wash. June 1, 2012)

21   (stating "arguably, individual questions are not even relevant as to commonality").  All

22   class members have personally identifying information in the documents at issue and

1    assert that their First Amendment and privacy rights will be violated if this information is

2    released in response to the PRA requests that are at the heart of this litigation.  Further,

3    all class members are entitled to an assessment of whether the release of their personally

4    identifying information in response to the PRA requests will violate their First

5    Amendment rights and whether their name should be redacted from the documents prior

6    to production.  The court sees no change in those circumstances.  Thus, Doe Plaintiffs

7    have met their burden on commonality, and Mr. Daleiden fails to establish a basis for

8    decertification based on the Rule 23(a) requirement of commonality.

9         The court also concludes that Mr. Daleiden's contention that proving the claims on

10   a class-wide basis may carry a substantial factual burden does not defeat typicality either.

11   "Typicality focuses on the class representative's claims—but not the specific facts from

12   which the claim arose—and ensures that the interests of the class representative 'aligns

13   with the interests of the class.'"  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir.

14   2017) (citation omitted).  Thus, the typicality requirement is "permissive" meaning that a

15   class representative's claims are "'typical' if they are reasonably coextensive with those

16   of absent class members; they need not be substantially identical."  *Id.* (quoting *Parsons*

17   *v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).  Thus, "[m]easures of typicality include

18   'whether other members have the same or similar injury, whether the action is based on

19   conduct which is not unique to the named plaintiffs, and whether other class members

20   have been injured by the same course of conduct.'"  *Id.* (citations omitted).  Thus, even if

21   there are individual questions related to class members who are similarly-situated to Does

22   1 and 6 and whose employment alone may not be sufficient to provide the

1    "particularized, personal link" necessary to warrant First Amendment protection, this fact

2    does not undermine the court's conclusion that Doe Plaintiffs have adequately

3    demonstrated typicality.

4         Finally, Mr. Daleiden's contention that proving the claims on a class-wide basis

5    may require a substantial factual burden does not undermine the indivisibility

6    requirement of Rule 23(b)(2).  Indeed, Mr. Daleiden seems to have "miss[ed] the point of

7    Rule 23(b)(2)."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  A Rule

8    23(b)(2) class may be certified even where "some class members may have suffered no

9    injury or different injuries from the challenged practice."  *Id.* (citing *Walters v. Reno*, 145

10   F.3d 1032, 1047 (9th Cir. 1998)).  In *Rodriguez*, a class of individuals detained without

11   bond hearings pending immigration proceedings moved to certify a class under Rule

12   23(b)(2).  591 F.3d at 1111.  Specifically, the plaintiffs sought injunctive relief providing

13   individual bond hearings to all class members, in which the government would bear the

14   burden of proof.  *Id.*  The defendants argued that Rule 23(b)(2) certification was

15   inappropriate because some class members might not be entitled to a bond hearing under

16   mandatory detention rules and other class members were subject to regulations governing

17   the burden of proof.  *Id.* at 1125.  As such, individual class members would have different

18   bases for relief, be entitled to different levels of relief, and potentially be ineligible for

19   relief altogether.  *Id.*  In rejecting the defendants' argument, the Ninth Circuit clarified

20   that Rule 23(b)(2) certification was appropriate even though some class members might

21   not be entitled to any relief and the legally detained class members might not have

22   actually suffered a cognizable injury.  *See id.* at 1125-26.  The Ninth Circuit explained

1    that Rule 23(b)(2) does not require the court "to examine the viability or bases of class

2    members' claims for declaratory and injunctive relief, but only to look at whether class

3    members seek uniform relief from a practice applicable to all of them." *Id.* at 1125.

4    Focusing on the requested relief from a uniform practice, the Ninth Circuit concluded that

5    Rule 23(b)(2) class certification was appropriate. *See id.* at 1125-26.

6        Like the *Rodriquez* defendants, Mr. Daleiden contends that Rule 23(b)(2) class

7    certification is inappropriate because some class members may not be entitled to relief or

8    may not have suffered a cognizable injury. (*See* MTD at 11 ("And it is indisputable that

9    some significant number of absent class members are not involved in either research or

10   abortion advocacy.").) Yet, "[t]he fact that some class members may have suffered no

11   injury or different injuries from the challenged practice does not prevent the class from

12   meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125; *see also*

13   *Walters*, 145 F.3d at 1047 ("Even if some class members have not been injured by the

14   challenged practice, a [Rule 23(b)(2)] class may nevertheless be appropriate."). Instead,

15   the court examines whether Doe Plaintiffs "seek uniform relief from a practice applicable

16   to" the entire class. *See id.* Mr. Daliden may be correct that some class members do not

17   have viable claims because they cannot establish a "particularized, personal link" to First

18   Amendment protected activity. That does not, however, vitiate the operative fact that the

19   proposed classes challenge the uniform policy of releasing unredacted documents that

20   contain Doe Plaintiffs' personally identifying information in response to a Public Records

21   Act request. As in *Rodriguez*, Doe Plaintiffs "complain of a pattern or practice that is

22   generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. This is

1  sufficient to satisfy the indivisibility requirement of Rule 23(b)(2).[7]  *See also In re Yahoo*

2  *Mail Litig.*, No. 13-CV-04980-LHK, 308 F.R.D. 577, 598-600 (N.D. Cal. 2015)

3  (applying similar analysis to uphold Rule 23(b)(2) class certification, which the

4  defendants had challenged because some class members might not be entitled to relief or

5  may not have suffered a cognizable injury).  Thus, the court denies Mr. Daleiden's

6  motion to decertify the class or subclasses on grounds that Doe Plaintiffs are unable to

7  adequately demonstrate the Rule 23(a) requirements of commonality and typicality or the

8  Rule 23(b)(2) requirement of indivisibility.

9      *c.  Adequacy*

10  Finally, Mr. Daleiden contends that, as a result of the Ninth Circuit's order, Doe

11  Plaintiffs can no longer adequately represent the class and subclasses.  (MTD at 11-12.)

12  Specifically, Mr. Daleiden's contends that Doe Plaintiffs 1, 2, and 6 had an interest in

13  appealing the Ninth Circuit's March 25, 2020, order, while the remaining Doe Plaintiffs

14  did not.  (*See id.*)  As a result, Mr. Daleiden contends that a conflict of interest exists

15  between the groups of Doe Plaintiffs such that can no longer serve as class

16  representatives.  (*See id.*)

17  //

18

19  [7] Mr. Daleiden also argues that Doe 2 should be excluded as a class representative
because she is no longer employed by the BDRL and therefore does not "presently engage in any
First Amendment-protected abortion advocacy or research."  (MTD at 11.)  The court rejects this
argument.  In her declaration, Doe 4 testified that she "was until recently an employee of Planned
Parenthood Federation of America ('PPFA')."  (Doe 4 Decl. (Dkt. # 9) ¶ 1.)  Despite the fact that
she was no longer employed by the PPFA, the Ninth Circuit found that this court "did not err in
concluding that [she] . . . w[as] engaged in activity protected by the First Amendment . . . ."
(3/25/20 9th Cir. Order at 4.)  Accordingly, the court concludes that the fact that Doe 2 is no
longer employed by the BDRL does not disqualify her from serving as a class representative.

ORDER - 22

1    The Ninth Circuit applies a two-pronged test to determine whether representation

2    meets the Rule 23(a) adequacy requirement:  "(1) do the named plaintiffs and their

3    counsel have any conflicts of interest with other class members and (2) will the named

4    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*,

5    657 F.3d at 985.  Yet, "not every conflict of interest between a class representative and

6    class members prevents satisfaction of the adequacy prong; instead, only a fundamental

7    conflict that goes to the heart of the litigation prevents certification, and speculative

8    conflicts must be disregarded at the certification stage."  *Horosny v. Burlington Coat*

9    *Factory of Cal., LLC*, No. CV 10-1061-PHX-SRB, 2016 WL 10586285, at *5 (C.D. Cal.

10   Oct. 27, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (19917)).

11   Here, Mr. Daleiden has not described a fundamental conflict that goes to the heart

12   of the adequacy prong.  Counsel's decision to proceed with the litigation by returning to

13   the district court and to correct the evidentiary deficiency identified by the Ninth

14   Circuit's March 25, 2020, order—rather than by appealing the Ninth Circuit's March 25,

15   2020, order—was a tactical decision that did not go to the heart of Doe Plaintiffs' claims.

16   In any event, as Doe Plaintiffs point out, the evidentiary deficiency identified by the

17   Ninth Circuit has since been corrected by the submission of additional evidence, and the

18   court reinstated of the preliminary injunction as to Doe Plaintiffs 1, 2, and 6.  Thus, the

19   interests of all Doe Plaintiffs remain aligned.  The court concludes that Mr. Daleiden's

20   arguments do not undermine the court's original determination that Doe Plaintiffs'

21   sufficiently demonstrated Rule 23(a)'s adequacy requirement—a showing that Mr.

22   Daleiden did not challenge.  (*See* CC Order at 24.)

1

## IV.   CONCLUSION

2          Based on the foregoing analysis, the court DENIES Mr. Daleiden's motion to

3   decertify or narrow the class and subclasses that the court previously approved (Dkt.

4   # 215).

5          However, as discussed above, the court ORDERS the parties to provide briefing

6   on the merits of creating an additional subclass out of the current subclass 1, how such a

7   subclass should be described, whether the proposed subclass independently meets the

8   requirements of Rule 23, whether the addition of such a subclass will render the class

9   action more manageable, and any other issues that the parties believe merit the court's

10  attention concerning such a subclass.  Plaintiffs shall file an opening memorandum

11  concerning the possible subclass no later than September 28, 2020, and shall limit their

12  opening memorandum to no more than fifteen (15) pages.  Defendants shall file

13  responsive memoranda no later than October 12, 2020, and shall limit their responsive

14  memoranda to no more than fifteen (15) pages.  Plaintiffs shall file a reply memorandum,

15  if any, no later than October 19, 2020, and shall limit it to no more than seven (7) pages.

16         Dated this 15th day of September, 2020.

17

18

19                                          JAMES L. ROBART
                                            United States District Judge
20

21

22